# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 07-459 (RBK) |
| | : | |
| MOHAMAD IBRAHIM SHNEWER, | : | |
| DRITAN DUKA, | : | |
|   a/k/a "Distan Duka," | : | |
|   a/k/a "Anthony Duka," | : | |
|   a/k/a "Tony Duka," | : | |
| ELJVIR DUKA, | : | |
|   a/k/a "Elvis Duka," | : | |
|   a/k/a "Sulayman," | : | |
| SHAIN DUKA, and | : | |
| SERDAR TATAR | : | |

---

**GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTIONS TO TERMINATE ADMINISTRATIVE DETENTION
AND FOR ALTERNATIVE RELIEF**

---

CHRISTOPHER J. CHRISTIE
United States Attorney
WILLIAM E. FITZPATRICK
Deputy United States Attorney
MICHAEL A. HAMMER
Assistant U.S. Attorney
401 Market Street, 4th Floor
Camden, New Jersey 08101
(856) 757-5026

## <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT.........................................................................................1

II.     DEFENDANTS' PLACEMENT IN THE SHU IS LAWFUL
        AND APPROPRIATE.......................................................................................................3

        A.      The Defendants' Designation Is Proper
                under 28 C.F.R. § 541.22(a)(3).............................................................................5

                1.      The Nature of the Charges and the
                        Character of the Evidence.............................................................................6

                2.      The Defendants' Conduct While
                        in the SHU.....................................................................................................8

                        a.      Letter Written by Eljvir Duka...........................................................8

                        b.      Defendant Shnewer Provided Al Qaeda
                                Recruitment Video to Another Inmate.............................................9

        B.      The FDC Has Satisfied the Remaining Elements
                of 28 C.F.R. § 541.22.........................................................................................11

III.    THE FDC HAS AFFORDED THE DEFENDANTS REASONABLE
        ACCESS TO THEIR DISCOVERY...............................................................................13

        A.      Access to Electronic Discovery...........................................................................13

        B.      Special Measures Taken by the FDC for the Defendants......................................14

        C.      Defendants' Access to Electronic Discovery
                and Trial Preparation
Materials.................................................................................16

IV.     DEFENDANTS' MOTIONS FOR ALTERNATIVE
        RELIEF MUST BE DENIED.........................................................................................21

V.      CONCLUSION.............................................................................................................22

i

## **TABLE OF AUTHORITIES**

**Cases**

Bell v. Wolfish, 441 U.S. 520 (1979)..................................................................................4

Connecticut Board of Pardons v. Dumschat, 452 U.S. 458 (1981)..................................5

Covino v. Vermont Dep't of Corr., 933 F.2d 128 (2d Cir. 1991)...................................12

Hewitt v. Helms, 459 U.S. 460 (1983).........................................................................3, 4, 5

Meacham v. Fano, 427 U.S. 215 (1976).........................................................................3-4

Wolff v. McDonnell, 418 U.S. 539 (1974).......................................................................3

**Statutes and Regulations**

18 U.S.C. § 1117...............................................................................................................6

18 U.S.C. § 3142.....................................................................................................2, 3, 6, 21

28 C.F.R. § 541.22..........................................................................1, 3, 4-5, 6, 7, 8, 11-12, 13

# I. **PRELIMINARY STATEMENT**

The Government respectfully submits this brief and attached exhibits in opposition to the defendants' motions to terminate their administrative status and for alternative relief.  All defendants have joined in the motion.  Additionally, although defendants Mohamed Shnewer, Serdar Tatar, and Dritan Duka have separately briefed their applications, the defendants' arguments are quite similar.  The defendants' motions raise two issues.  First, the defendants contest their placement in the Special Housing Unit ("SHU") of the Federal Detention Center ("FDC") in Philadelphia.  The defendants argue, in sum, that there is no justification for placing them in the SHU.  Second, the defendants contend that their ability to prepare for trial in this matter is unduly hampered by placement in the SHU.  For those reasons, the defendants seek to be released into the FDC's general population.  In the alternative, the defendants seek to be released from incarceration pending the result of the trial.

For the reasons set forth below, and as the Government will demonstrate at the December 20, 2007 hearing, the defendants' arguments must fail.  First, there is strong support for the FDC Warden's decision that the defendants present grave security concerns meriting their placement in the SHU.  Putting aside the Warden's broad discretion to make this determination under federal caselaw and 28 C.F.R. § 541.22, the determination finds ample justification in the nature and gravity of the charges against the defendants, and the defendants' conduct within the FDC since their incarceration began.

Second, the defendants' contention that their placement in the SHU is unduly limiting their ability to prepare for trial is arrant sophistry.  The Government will show that the FDC has put in place for the defendants a system that effectively balances the competing concerns of

1

institutional security with the defendants' right to access their discovery and prepare for trial. The defendants have had full access to counsel since they were first incarcerated.  And since the arrival of the defendants' discovery at the FDC, the FDC has afforded the defendants ample opportunity to review it and to meet with their counsel.  Indeed, the FDC has undertaken measures, several of which are unique to this case and to these defendants, specifically to ensure that the defendants are able to review the electronic discovery, access the law library, and have a full and fair opportunity to prepare for trial.

Finally, the Government respectfully submits that the defendants' motions to be released on bail must be denied for many of the same reasons meriting their placement in the SHU.  The defendants present a substantial threat of harm to the community.  A Magistrate Judge and a grand jury separately found probable cause that the defendants intended to attack military installations and murder United States military personnel as well as related weapons offenses. At trial, the Government will present overwhelming evidence, including witness testimony and recorded conversations of the defendants, to support those charges.  Given that evidence and the defendants' exposure to lengthy periods of incarceration, only pre-trial detention under 18 U.S.C. § 3142 will adequately ensure that the defendants do not present a continued risk of harm to the community or of flight.

For those reasons, the Government respectfully submits that the Court should deny the defendants' applications in their entirety.

## II. <u>DEFENDANT'S PLACEMENT IN THE SHU IS LAWFUL AND APPROPRIATE</u>

The defendants contend that the basis for their detention in the SHU is deficient, that the segregation amounts to punishment, and that the defendants should be placed in the FDC's general population.  <u>See</u>, <u>e.g.</u>, Defendant Dritan Duka's Moving Brief at 2; Defendant Mohamed Shnewer's Moving Brief at 10-11.  The defendants' arguments fail for two reasons.  First, the defendants ignore the substantial deference that federal courts must give to prison officials in designating an inmate for administrative segregation under 18 C.F.R. § 541.22.  Second, there is overwhelming support, including the nature of the charges against the defendants, the evidence of their radical jihadist beliefs, and their conduct in the FDC, for the security concerns underlying their placement in the SHU.

A correctional institution's decision to place a pre-trial inmate in administrative segregation is not protected by the Due Process Clause.  <u>Hewitt v. Helms</u>, 459 U.S. 460, 468 (1983).  However, the government can create a liberty interest by enacting a mandatory statutory or regulatory scheme that governs administrative segregation.  <u>Id.</u> at 471-72.  In this case, 28 C.F.R. § 541.22 governs the defendants' administrative segregation.

The Supreme Court has instructed that prison officials must be accorded substantial discretion over the institutions they manage and the inmates they house, because "the administration of a prison is 'at best an extraordinarily difficult undertaking.'"  <u>Hewitt</u>, 459 U.S. at 467 (quoting <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974)).  <u>See also</u> <u>Meacham v. Fano</u>, 427 U.S. 215, 225 (1976) ("[T]o hold . . . that *any* substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary functions that traditionally have been the

business of prison administrators rather than of the federal courts.").

The wide deference that federal courts give prison officials must include the designation of an inmate for administrative segregation. Hewitt, 459 U.S. at 468. Even where procedural guidelines exist to govern administrative segregation and thereby create a liberty interest, as 28 C.F.R. § 541.22 does here, the requirements of that interest must bend to the circumstances. Id. at 472 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Under 28 C.F.R. § 541.22, the FDC Warden may place an inmate in administrative detention

> when the inmate's continued presence in the general population poses a serious threat to life, liberty, property, self, staff, other inmates or to the security and orderly running of the institution and when the inmate:
>
> . . . .
>
> (3) Is pending investigation or trial for a criminal act.

28 C.F.R. § 541.22(a)(3).

Section 541.22 requires that when an inmate is placed in administrative segregation under § 541.22(a)(3), the Warden shall issue an order explaining the basis for the designation, and provide a copy to the inmate if institutional security allows for it. Id. § 541.22(b). Section 541.22 also requires prison officials, in the form of a Segregation Review Official ("SRO"), to engage in a weekly review of the inmate's administrative-segregation designation. Id. § 541.22(c)(1). Every thirty days, the SRO must conduct a formal review of the inmate's status,

and the inmate has the right to be present for that review.  Id.  Additionally, prison officials are required to conduct monthly psychiatric or psychological assessment of the inmate in administrative segregation.  Id.  An inmate in administrative segregation is entitled to the same general privileges as inmates housed in the general population, but only to the extent consistent with available resources and the need to maintain a safe and secure environment.  Id. § 541.22(d).  In this case, the FDC has not merely satisfied each of the foregoing requirements; it has exceeded them.

### A.      The Defendants' Designation Is Proper under 28 C.F.R. § 541.22(a)(3)

The FDC Warden's determination to place the defendants in administrative segregation is based on the concern that the defendants' presence in the general population would constitute a serious threat to themselves and to the safety and security of the remaining prison population and staff.[1]  In exercising his broad discretion in this area, the Warden may reasonably consider, among other things, the nature of the charged offenses, the evidence against the defendants, and their conduct while incarcerated.

### 1.      The Nature of the Charges and The Character of the Evidence

---

[1]Defendant Dritan Duka contends that "there is no evidence to point to or suggest that Mr. Duka's presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution."  This contention misses the mark entirely.  The Supreme Court has made clear that absent constitutional injury, the Warden's designation of an inmate for administrative segregation must be afforded extremely wide deference.  Hewitt, 459 U.S. at 468.  Indeed, the determination may rest on considerations broader than specific evidence, including "'purely subjective evaluations and on predictions of future behavior'" not merely by that inmate, but by other inmates and the institution as a whole.  Id. at 474 (quoting Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 464 (1981)).  In short, the Warden must consider not merely the inmate to be designated, but the entire institution.  Because there is no showing in this case that the designation has unduly interfered with the defendants' constitutional rights, such as meaningful access to the courts and counsel, the Government respectfully submits that there is no basis to impinge on the Warden's discretion.

First, the Indictment alleges, and the Government will prove at trial, that the defendants planned to launch an armed paramilitary attack against United States military personnel and other government officers and employees.  The nature and existence of this conspiracy has been established, by a probable cause standard, to a United States Magistrate Judge at the time the criminal complaints were issued against the defendants, and to a federal grand jury at the time the pending indictment was returned.[2]  In addition, following a hearing on May 15, 2007, a United States Magistrate Judge ruled that pretrial detention was appropriate under 18 U.S.C. § 3142(f), given the serious nature of the charges against the defendants, the strength of the Government's case, the possibility of lifetime imprisonment, and the likelihood that the defendants would flee if released.  United States v. Mohamad Shnewer, Mag. No. 07-2045 (JS), May 15, 2007, Order of Detention Pending Trial, Attachment A.[3]  These findings serve as a reasonable basis for the Warden to begin his assessment of the threat these defendants pose to themselves, other inmates, and FDC staff.

Second, the Indictment alleges, and the affidavits in support of the criminal complaints substantiate, that these defendants were inspired by al Qaeda, a foreign terrorist organization, to violently strike at American interests by attacking and killing military personnel and other civilian employees.  Inside the FDC, the guards, case managers, and other civilian employees are the only representatives of the government these defendants are charged with conspiring to attack.   Thus, it is entirely appropriate for the Warden to impose reasonable administrative measures to ensure the safety of the men and women who work at the FDC.  In fact, when one

---

[2] The defendants are, of course, presumed innocent of all charges.

[3] The Court applied the same reasoning and conclusion to defendants Tatar, Dritan Duka, Eljvir Duka, and Shain Duka.

considers the nature of the evidence, even only that evidence currently made public, the only responsible conclusion is that these defendants must be incarcerated in a manner designed to limit the possibility of violence.

Third, the evidence, made public to date, clearly establishes that during the course of the conspiracy, the defendants collected and/or reviewed numerous videos and DVDs which advocated armed attacks against the United States and, in particular, American military personnel.  These videos, many of which are produced by al Qaeda and prominently feature Usama Bin Ladan, Sheik Abdul Rahman, and other radical Islamic clerics, attempt to inspire the viewer to attack American interests, promote martyrdom for the cause of jihad, and seek to teach the viewer the methods of terror attacks that inflict the most death and the greatest suffering. These videos are nothing less than a call to arms against the United States.

The defendants were videotaped firing weapons in a secluded location in rural Pennsylvania.  The style and manner in which the defendants fired these weapons may reasonably be interpreted to mirror the types of terrorist training exercises depicted on the videos seized from many of the defendants.   The defendants also engaged in several paint ball exercises in southern New Jersey, which they deemed to be "training."  Finally, on May 7, 2007, the clear and present danger posed by the defendants was further demonstrated when Shain Duka and Dritan Duka took possession of, and Mohamad Shnewer and Eljvir Duka intended to take possession of, seven powerful weapons of war, namely, four fully-automatic M-16 machine guns and three semi-automatic AK-47 assault rifles.

The defendants took other affirmative steps to plan their deadly attack.  For example, defendant Shnewer conducted covert surveillance operations of several military and civilian

7

facilities, including the United States Army Base at Fort Dix.  In addition, defendant Tatar provided a map of Fort Dix to CW-1 and Tatar's fellow co-conspirators in an effort to further their murderous plan.

Given the charges against the defendants, and the nature of the portion of the Government's case outlined herein, the Warden's determination under § 541.22(a)(3) to place and keep the defendants in the SHU, is hardly an abuse of discretion.

## 2. The Defendants' Conduct While in the SHU

The defendants conduct in the SHU to date, supports the Warden's conclusion that their continued detention in administrative segregation is reasonable, appropriate, and necessary. Specifically, the conduct of defendants Eljvir Duka and Mohamad Shnewer further establish their commitment to jihad, the violent nature the charged conspiracy, the defendants willingness to die as martyrs, and, one may reasonably conclude, an attempt to recruit other inmates to their cause.

### a. Letter Written by Eljvir Duka

In early August 2007, a defendant who was incarcerated in the SHU with the defendants provided officials with a piece of paper that contained a running correspondence between himself and defendant Eljvir Duka.   In the letter, defendant Eljvir Duka stated to the inmate, among other things,  "now you see why we were going to sacrifice all for the sake of allah in jihad . . . fight in the way of allah first with the mouth then with the sword . . . we weren't able to finish."[4]

---

[4] This letter was previously provided to defense counsel in discovery.

8

The letter was signed using defendant Eljvir Duka's alias, "Suleyman." The inmate has advised officials that he and defendant Eljvir Duka corresponded via "kites."[5] The inmate stated that after he sent to Duka the kite attached as Government Exhibit B, Duka responded, on the other side of the same sheet of paper, with the message attached as Government Exhibit A. Security videotape from the FDC, which the Government will produce to the Court upon request, captured the sending of a kite from the vicinity of defendant Eljvir Duka's cell to the other inmate's cell.[6] The inmate's letter notifying FDC officials of the incident is attached hereto as Government Exhibit C.   Moreover, when questioned by FDC guards, defendant Eljvir Duka admitted exchanging messages with the other inmate, but claimed the messages dealt only with issues such as the quality of the food in the SHU.

Although the Government's inquiry into the origin of the letter is continuing, the facts to date certainly justify the Warden's concern over the violent nature of the letter, and support his decision to continue administrative segregation.[7]

> **b.    Defendant Shnewer Provided Al Qaeda Recruitment Video to Another Inmate**

On November 22, 2007, an FDC officer found a DVD hidden inside a book on the second shelf of the law library.  Defendant Dritan Duka began yelling and stated that the DVD was his.

---

[5] Although the process of "kiting," also known as "fishing," is prohibited within the FDC, it is a common method of communication between inmates.  A "kite" is a message attached to a string or piece of linen with weight added to it.  Using the string or linen, the sending inmate slides the message across the hallway and through the cell door of the receiving inmate.

[6] Copies of this video have previously been provided to defense counsel in discovery.

[7] Pursuant to the Court's Order under Federal Rule of Criminal Procedure 17(c), the Government has obtained handwriting exemplars from defendant Eljvir Duka and is awaiting the results of the handwriting analysis.

Dritan Duka also stated that an inmate, identified herein only as Inmate-1, had been reviewing the disk.  The officer kept the DVD so that FDC officials could view the material.  Inmate-1 later notified officers that defendant Mohamad Shnewer had given him the DVD to watch.

The DVD had been provided to each defendant during the discovery process.  The DVD contained one of the many videos that were recovered from defendant Shnewer's laptop computer during the course of the investigation.   The video was produced by Al Qaeda.  The video is slightly more than one hour of clips depicting the plight of Muslims around the world, and of Usama Bin Laden and other Islamic extremists making speeches which call the viewer to join the jihadist movement.   In fact, approximately one minute and five seconds into the video, it states the following in English, "Assahab Foundation For Islamic Media Publication Presents," and then a video of Usama Bin Ladan appears before the words, "[h]ere Salahuddin carrying his sword dripping infidel's blood . . . ."

This video is the same video that, in May 2006, defendant Shnewer gave to CW-1.  Specifically, on May 26, 2006, during a consensually recorded meeting with CW-1, defendant Shnewer gave CW-1 Shnewer's laptop computer and told CW-1 to review particular DVD files on the laptop hard drive.  CW-1 asked Shnewer to write the names of the DVD files Shnewer wanted CW-1 to review, which Shnewer did.  CW-1 provided a business card to FBI and JTTF agents on which Shnewer had identified the DVD files CW-1 was to review.  One file was named "19."   The video identified as "19" is the same video recovered from the FDC's law library.

The fact the defendant Shnewer and, perhaps, his co-conspirators may be spreading jihadist recruitment videos to other inmates clearly raises grave security concerns for the

Warden, and, again, supports the reasonableness of continued administrative detention for these defendants.

**B.**     **The FDC Has Satisfied the Remaining Requirements of 28 C.F.R. § 541.22**

The FDC has satisfied the remaining elements of 28 C.F.R. § 541.22.  The Warden adhered to § 541.22(b) by reducing his determination to an order.  See Govt. Exh. D.  The FDC has complied with § 541.22(c)(1) by conducting a weekly review of each defendant's designation.  See Govt. Exhs. E-I (seven and thirty-day evaluation reports for, respectively, defendants Shnewer, Tatar, Dritan Duka, Eljvir Duka, and Shain Duka).  Additionally, the SRO has conducted a formal review of each defendant's status every thirty days, consistent with the federal regulations.  Id.  Also, prison officials have conducted the required monthly mental evaluations of each defendant.  Id.

Finally, the FDC has labored to ensure that, to the extent possible given staffing resources and security concerns, the defendants receive privileges comparable to those given to inmates in the general population.  As explained below, the defendants' placement in the SHU clearly is not hampering their ability to review discovery and prepare for trial.  To the contrary, the defendants enjoy access to resources that no other inmates have, including laptop computers, a DVD player, and a conference room devoted to their exclusive use.  Moreover, Correctional Counselor Vasthi Roman-Gonzalez is assigned specifically to the SHU, and visits the SHU inmates daily to ensure their needs are met.  Also, the Warden himself tours the SHU weekly and talks to each inmate to determine whether there are any problems.  Additionally, the defendants are allowed recreational time; indeed, the cop-out slips, which are discussed below and attached hereto as Government Exhibit K, reveal that occasionally they have opted for recreational time

11

rather than reviewing their discovery.  Finally, the defendants' housing is comparable to inmates in the general population.[8]

Defendant Mohamed Shnewer relies heavily on <u>Covino v. Vermont Dep't of Corr.</u>, 933 F.2d 128 (2d Cir. 1991).  That case is inapposite.  In <u>Covino</u>, a state correctional facility transferred the inmate from the general population to isolation without any indication of a hearing or justification.  <u>Covino</u>, 933 F.2d at 129.  The district court dismissed the inmate's civil-rights complaint, finding that the move did not violate the inmate's constitutional rights.  <u>Id.</u>  The inmate appealed.

The Second Circuit agreed that the move from general population to isolation did not violate the inmate's constitutional rights.  <u>Id.</u>  The Second Circuit also agreed that transferring an inmate to more restrictive conditions for non-punitive reasons did not, by itself, violate the Due Process Clause.  <u>Id.</u>  However, the Second Circuit noted that the district court had not considered whether a Vermont statute governing segregation applied.  <u>Id.</u> at 130.  Noting that the government can create a protected liberty interest by statute or regulation, the Second Circuit remanded the case to the district court to consider the effect of the Vermont statute.  <u>Id.</u>

The Second Circuit's decision in <u>Covino</u> does not help the defendants' argument.  In this case, the FDC Warden has fully complied with 28 C.F.R. § 541.22.  Additionally, there are

---

[8] Defendant Mohamed Shnewer complains that he is kept in "a closet-like approximately 8x12 foot cell[.]" Defendant Mohamed Shnewer's Moving Brief at 10.  In fact, the total square footage of living space between the general-population cells and the SHU cells is comparable.  The general-population cells have approximately ninety-three square feet of living space with approximately thirty-four square feet of space used for furnishings.  That leaves approximately fifty-four square feet of unencumbered space in a general-population cell.  The SHU cells have approximately eighty-six feet of living space with approximately thirty-three square feet used for furnishings, leaving approximately fifty-four feet of unencumbered space.  The only difference is that SHU cells have showers, which measure approximately seven square feet.

several reasons, described above, supporting the designation.  Finally, given the measures taken

by the FDC to accommodate the defendants' trial preparations and allow them privileges

afforded inmates in general population, the designation clearly is not punitive.

In sum, the FDC has complied fully with each element of § 541.22 for inmates who are in

administrative segregation pursuant to § 541.22(a)(3).  Further, the defendants cannot

demonstrate any infringement on their constitutional rights.  Therefore, the Government

respectfully submits that the defendants' motions for the Court to order their release from the

SHU should be denied.

### III.  THE FDC HAS AFFORDED THE DEFENDANTS REASONABLE ACCESS TO THEIR ELECTRONIC DISCOVERY

### A.    Access to Electronic Discovery

In their moving briefs, the defendants complain that the FDC is restricting their ability to

prepare for trial.  In particular, the defendants contend that their placement in the SHU impedes

their ability to review the electronic discovery provided by that Government.[9]  For example,

defendant Serdar Tatar contends that "the reality is that he and the other defendants are not being

taken out of their cells to review the discovery, despite repeatedly sending out request slips to be

called out of the cells for that purpose."  Brief in Support of Defendant Serdar Tatar's Motion

("Tatar Brief") at 2.  Defendant Tatar further alleges that "[h]e and the other codefendants have

experienced complete indifference to their requests to review discovery."  Id. at 2-3.  Those

complaints resemble claims made by defendants both at the recent status conferences and in

---

[9] The defendants challenge only their access to electronic discovery.  However, it bears noting that FDC officials permit the defendants to maintain and review the thousands of pages of written discovery produced by the Government in their cells.

letters that defendants Dritan Duka and Serdar Tatar addressed directly to the Court.  See November 11, 2007, Letter from Serdar Tatar to Hon. Robert B. Kugler; October 31, 2007, Letter from Dritan Duka to Hon. Robert B. Kugler.

The exhibits and testimony at the December 20, 2007, hearing will make clear that the defendants' contentions are meritless.  Far from denying the defendants the ability to review electronic discovery and otherwise prepare for trial, the FDC has labored to ensure the defendants are able to access the discovery and obtain necessary legal materials, within the security parameters necessary to ensure the safety of the defendants and other inmates at the FDC.

**B.    Special Measures Taken by the FDC for the Defendants**

In or around July 2007, when the defendants began receiving discovery at the FDC, FDC staff specially allocated a meeting room for these defendants to review their discovery and to meet with defense counsel.  The room, which previously was used solely by Bureau of Prisons ("BOP") and FDC staff, now is specifically designated for these defendants to use in reviewing their electronic discovery.  Essentially, the defendants have their own conference room at the FDC in which to prepare for trial, as well as the law library.

Converting the room from BOP-use only to the defendants' electronic discovery room required the FDC to make considerable modifications to the room, including the following:

1.    Removal of the pre-existing solid door and insertion of a windowed door that would allow the FDC staff to see inside the room for security reasons.  In other buildings, that modification might be simple.  However, it is a significant alteration for a federal detention center, because it also required the addition of a wicket to allow inmates to be handcuffed;

2.    Securing exposed conduit pipes and re-routing electrical wiring so the defendants or other inmates could not access or tamper with it.  Those modifications, plus the

14

addition of the wicket, allow the defendants to move freely around the room;

3.      Adding wall-mounted lockers to allow the defendants to secure their discovery when not reviewing it;

4.      Relocating to another area of the institution several 5' x 2' safes that FDC staff use to secure their own confidential files;

5.      Customizing a conference-room table to fit the dimensions of the defendants' meeting room, and securing it to the floor; and

6.      Changing out the door locks so that only the officer-in-charge and that officer's supervisor can access the defendants' meeting room.  The room is locked whenever not in use, so that other inmates cannot access or tamper with the defendants' discovery materials.

The FDC staff also has provided the defendants with electronic hardware to ensure that the defendants can fully access their electronic discovery.  Those devices include: (1) three laptop computers; (2) a digital video disc ("DVD") player; and (3) a television and video cassette recording ("VCR") device.  Significantly, the FDC has designated that equipment <u>exclusively</u> for the defendants' use in preparing for trial.  No other inmates are allowed to use it.

The FDC has also undertaken special measures to ensure that the defendants can communicate with defense counsel.  By letter dated August 2, 2007, a copy of which is attached hereto as Government Exhibit J, FDC Attorney Advisor Darrin Howard told defense counsel that the FDC had set aside specific blocks of time for the defendants to make telephone contact with their counsel.[10]  Specifically, the FDC set aside 1:30 p.m. to 3:00 p.m. on Monday through Friday, and 6:00 p.m. to 7:30 p.m. on Tuesday through Thursday, for the defendants to contact

---

[10] As set forth in Mr. Howard's letter, that telephone contact between a defendant and his counsel is unmonitored and protected by the attorney-client privilege.

15

their counsel.  Mr. Howard asked defense counsel to specify if they had a preference for a particular date and time, so that the FDC could accommodate that request.[11]  As explained in Mr. Howard's letter, the purpose of this accommodation, which also is unique to these defendants, was to avoid missed telephone calls because attorneys are out of the office or otherwise unavailable.   To further telephonic contact between these defendants and their counsel, the FDC staff also has specially designated a telephone exclusively for the defendants' use in contacting their attorneys.  That is yet another accommodation that the FDC has made exclusively for these defendants.

The FDC has taken other measures to accommodate the defendants' preparation for trial. For example, when defendant Dritan Duka requested a copy of Black's Law Dictionary to help him to understand legal terminology, the FDC provided him a copy and allows Duka to keep it in his cell.  Additionally, the Educational Department of the FDC has delivered volumes of the American Jurisprudence series to defendant Dritan Duka's cell on a regular basis.

### C.   Defendants' Access to Electronic Discovery and Trial Preparation Materials

The FDC has established a procedure for allowing the defendants a full and fair opportunity to review their electronic discovery and otherwise prepare for trial, while balancing the sometimes competing interests in maintaining a completely safe and secure environment. The FDC requires the defendants to express, in writing, their desire to review discovery.  The defendants are required to make that request, known within the FDC as "cop outs," either the night before, or the morning of, the time they request to do so.  That procedure allows the FDC

---

[11] As of the writing of this brief, only counsel for defendant Shain Duka had responded to Mr. Howard.

16

staff to prepare to move the defendants to the meeting room safely, and usually as part of the morning routine.[12]

It is clear from the FDC's records of the defendants' requests to use the law library and to review their discovery that the FDC is affording the defendants ample opportunity to do so. Below is a summary of the defendants' activities based on FDC records through November 28, 2007, which are attached hereto as Government Exhibits K (cop-out sheets) and L (law library log).

| **Date** | **Inmate and Activity** |
|---|---|
| 5/18/07: | Dritan Duka — used law library from 8:27 p.m. to 9:30 p.m. (requested on 5/18/07) |
| 5/19/07: | Dritan Duka — used law library from 1:05 p.m. to 3:00 p.m. (requested on 5/18/07) |
| 5/23/07: | Dritan Duka — used law library from 2:35 p.m. to 3:45 p.m. (requested on 5/22/07) |
| 5/29/07: | Serdar Tatar — used law library from 11:00 a.m. to 1:00 p.m. (requested on 5/29/07) |
| 5/30/07: | Dritan Duka — used law library from 2:00 p.m. to 3:00 p.m. (requested on 5/30/07) |
| 6/5/07: | Dritan Duka — used law library from 9:20 a.m. to 10:40 a.m. (requested on 6/5/07) |

---

[12] Defendant Dritan Duka has complained that the FDC has impeded his ability to review discovery because only one inmate at a time is allowed in the meeting room. It is true that unless at least one defense counsel is present, the defendants are not all allowed in the room at once. That precaution is necessary for obvious security reasons. However, the FDC purchased the three separate laptop computers specifically to allow multiple defendants to review electronic discovery at once, albeit in different locations.

Additionally, cellmates are allowed to review the discovery together, including on a laptop computer in their cell. Presently, defendants Dritan Duka and Serdar Tatar are cellmates, as are defendants Eljvir Duka and Shain Duka.

| Date | Inmate and Activity |
|------|---------------------|
| **Date** | **Inmate and Activity** |
| 6/5/07: | Shain Duka — used law library from 11:40 a.m. to 1:30 p.m. (requested on 6/5/07) |
| 6/7/07: | Serdar Tatar — inmate refused opportunity to use law library |
| 6/8/07: | Dritan Duka — inmate refused opportunity to use law library |
| 6/8/07: | Serdar Tatar — inmate refused opportunity to use law library |
| 6/8/07: | Mohamed Shnewer — inmate refused opportunity to use law library |
| 6/8/07: | Eljvir Duka — used law library from 9:00 a.m. to 11:00 a.m. (requested on 6/8/07) |
| 6/8/07: | Agron Abdullahu — used law library from 12:00 p.m. to 1:31 p.m. (requested on 6/8/07) |
| 6/25/07: | Eljvir Duka — inmate refused opportunity to use law library (requested on 6/22/07) |
| 7/2/07: | Eljvir Duka — used law library from 8:20 a.m. to 11:00 a.m. (requested on 7/2/07) |
| 7/18/07: | Eljvir Duka — used law library from 6:15 p.m. to 9:03 p.m. (requested on 7/18/07) |
| 7/25/07: | Shain Duka — used law library from 1:00 p.m. to 2:15 p.m. (requested on 7/25/07) |
| 7/31/07: | Eljvir Duka — used law library from 9:17 a.m. to 9:48 a.m. (requested on 7/31/07) |
| 7/31/07: | Agron Abdullahu — used law library from 1:40 p.m. to 2:38 p.m. (requested on 7/31/07) |
| 8/6/07: | Eljvir Duka — used law library from 1:10 p.m. to 2:45 p.m. (requested on 8/6/07) |
| 8/8/07: | Agron Abdullahu — used law library from 8:00 a.m. to 9:45 a.m. (requested on 8/7/07) |

18

| Date | Inmate and Activity |
|------|---------------------|

**Date**         **Inmate and Activity**

8/9/07:        Agron Abdullahu — used law library from 8:10 a.m. to 10:15 a.m. (requested on 8/8/07)

9/12/07:       Eljvir Duka reviewed discovery from 11:30 a.m. until 4:00 p.m. (requested on 9/7/07)

9/12/07:       Serdar Tatar reviewed discovery.

9/13/07:       Dritan Duka used laptop computer to review discovery from 10:30 a.m. until 4:30 p.m. (requested on 9/11/07)

9/17/07:       Shain Duka reviewed discovery from 9:15 a.m. until 12:15 p.m. (requested on 9/13/07)

9/17/07:       Mohamed Shnewer — used law library from 9:40 a.m. to 12:00 p.m. (requested on 9/17/07)

9/18/07:       Eljvir Duka — used law library from 1:50 p.m. to 4:00 p.m. (requested on 9/18/07)

9/21/07:       Serdar Tatar used computer in law library to review discovery.

9/25/07:       Serdar Tatar reviewed discovery.

9/25/07:       Serdar Tatar — used law library from 1:00 p.m. to 2:30 p.m. (requested on 9/25/07)

9/25/07:       Mohamed Shnewer — 1:00 p.m. to 2:00 p.m. – reviewed discovery on laptop computer in holding cell (requested on 9/25/07)

9/27/07:       Dritan Duka — inmate refused opportunity to use law library

9/27/07:       Mohamed Shnewer — used law library from 8:05 a.m. to 9:35 a.m. (requested on 9/27/07)

10/2/07:       Eljvir Duka reviewed discovery from 12:20 p.m. until 2:30 p.m. (requested on 9/28/07)

10/3/07:       Eljvir Duka reviewed discovery from 10:00 a.m. until 1:00 p.m.

10/9/07:       Mohamed Shnewer refused a legal phone call from Counselor Gonzalez.

19

**Date**          **Inmate and Activity**

10/10/07:        Eljvir Duka reviewed discovery from 8:30 a.m. until 1:30 p.m.

10/16/07:        Eljvir Duka reviewed discovery from 7:51 a.m. until 9:26 a.m. (requested on
                 10/16/07)

10/16/07:        Shain Duka reviewed discovery from 9:29 a.m. until 2:30 p.m (requested on
                 10/15/07)

10/18/07:        Eljvir Duka reviewed discovery from 10:30 a.m. until 3:00 p.m. (requested on
                 10/17/07)

10/22/07:        Shain Duka reviewed discovery from 8:20 a.m. until 1:40 p.m.

10/23/07:        Agron Abdullahu — inmate refused opportunity to use law library or review
                 discovery

10/23/07:        Shain Duka — inmate refused opportunity to use law library or review discovery

10/26/07:        Shain Duka — used law library from 1:05 p.m. to 2:50 p.m. (requested on
                 10/26/07)

10/31/07:        Serdar Tatar — used law library from 11:15 a.m. to 1:00 p.m. (requested on
                 10/31/07)

11/1/07:         Shain Duka — used law library from 9:00 a.m. to 10:15 a.m. (requested on
                 11/1/07)

11/6/07:         Serdar Tatar — used law library from 11:30 a.m. to 2:30 p.m. (requested on
                 11/6/07)

11/9/07:         Serdar Tatar — used law library from 8:30 a.m. to 10:45 a.m. (requested on
                 11/9/07)

11/9/07:         Mohamed Shnewer refused to review discovery (requested on 11/8/07), saying he
                 decided instead to have recreational time.

11/21/07:        Eljvir Duka refused to review discovery (requested on 11/19/07), saying he did
                 not get enough sleep.

11/28/07:        Shain Duka refused to review discovery (requested on 11/26/07), saying he
                 decided instead to have recreational time.

The foregoing summary reflects that to the extent the defendants seek to review their discovery, or use the law library, the FDC has gone to great lengths to allow them to do so, even as the FDC must balance security and staffing concerns.  However, the FDC also has taken additional measures to accommodate the defendants.  For example, Correctional Counselor Vasthi Roman-Gonzalez visits the SHU inmates, including the defendants, on a daily basis to see if they have any issues.  Counselor Gonzalez reported that not a single defendant in this case has raised to her an issue regarding access to their electronic discovery or ability to prepare for trial. Defendants' contention that their placement in the SHU impedes their ability to review discovery or prepare for trial is meritless.

## IV. <u>DEFENDANTS' MOTIONS FOR ALTERNATIVE RELIEF MUST BE DENIED</u>

The defendants also move, in the alternative, to be released on bail.  This argument clearly fails for many of the same reasons warranting the defendants' placement in the SHU. Having discussed them fully above, we will not belabor those points here.  In short, both the Magistrate Judge and a federal grand jury found probable cause that the defendants engaged in a conspiracy to attack military installations and murder United States military personnel.  The Magistrate Judge also conducted a detention hearing on May 15, 2007, during which he carefully evaluated the factors under 18 U.S.C. § 3142(f), and concluded that detention was necessary to address the defendants' risk of harm to the community or to flee.  Nothing has transpired since that hearing to mitigate the risk that the defendants pose to the community or to flee.  For those reasons, as well as the other points explained above of this brief, the defendants' application for bail must be denied.

21

## V.  <u>CONCLUSION</u>

For the reasons set forth above, the Government respectfully submits that the Court should deny the defendants' motions in their entirety.  A proposed form of Order is submitted herewith.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
United States Attorney


By: _____
WILLIAM E. FITZPATRICK
Deputy United States Attorney


And: _____
MICHAEL A. HAMMER
Assistant U.S. Attorney

Dated: December 11, 2007

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA    :
    :
    v.    :    Criminal No. 07-459 (RBK)
    :
MOHAMAD IBRAHIM SHNEWER,    :
DRITAN DUKA,    :
  a/k/a "Distan Duka,"    :
  a/k/a "Anthony Duka,"    :
  a/k/a "Tony Duka,"    :
ELJVIR DUKA,    :
  a/k/a "Elvis Duka,"    :    **ORDER**
  a/k/a "Sulayman,"    :
SHAIN DUKA, and    :
SERDAR TATAR    :

_____

        This matter having come before the Court on: (1) the motion of defendant Mohamad Shnewer (Rocco C. Cipparone Jr., Esq., appearing) for an Order directing the Warden of the Federal Detention Center in Philadelphia to terminate his placement in administrative detention and for alternative relief; (2) the motion of defendant Serdar Tatar (Richard Sparaco, Esq., appearing) to compel transfer from administrative detention to the general population of the Federal Detention Center, or to be released on bond, or to be permitted to share a cell with a co-defendant; (3) the motion of defendant Dritan Duka (Michael N. Huff, Esq., appearing) to terminate administrative detention and to be placed in general population; (4) the motion of defendant Eljvir Duka (Troy A. Archie, Esq., appearing) to join in the motion made by defendant Serdar Tatar; and (5) the motion of defendant Shain Duka (Michael E. Riley, Esq., appearing) to join in the motion made by defendant Mohamad Shnewer; and the Government (William E. Fitzpatrick, Deputy United States Attorney and Michael A. Hammer, Assistant United States Attorney, appearing) having opposed the defendants' motions; and the Court having considered the defendants' submissions in support of the motions, and the Government's brief and attached

exhibits in opposition to the motions; and the Court also having conducted a hearing on

December 20, 2007, on the defendants' motions; and for good cause shown;

IT IS on this _____ day of December 2007,

ORDERED that the above-referenced motions by the defendants be, and hereby are,

DENIED IN THEIR ENTIRETY.

So Ordered.

_____
Honorable Robert B. Kugler
United States District Judge

2