DOCUMENT ELECTRONICALLY FILED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Robert B. Kugler |
| v. | : | Crim. No. 07-459 (RBK) |
| | : | |
| MOHAMAD IBRAHIM SHNEWER, | : | |
| DRITAN DUKA, | : | |
| a/k/a "Tony Duka," | : | |
| ELJVIR DUKA, | : | |
| a/k/a "Sulayman," | : | |
| SHAIN DUKA, | : | |
| a/k/a "Shaheen," and | : | |
| SERDAR TATAR | : | |

_____

UNITED STATES' OPPOSITION TO: (A) ELJVIR DUKA'S MOTION TO DISMISS
COUNT 1 OF THE SUPERSEDING INDICTMENT; AND (B) DRITAN DUKA'S
MOTION TO DISMISS COUNTS 1, 2, 3, 5, 6, AND 7 OF THE SUPERSEDING
INDICTMENT
_____

CHRISTOPHER J. CHRISTIE
United States Attorney
970 Broad Street
Newark, New Jersey 07102

On the Memorandum:

William E. Fitzpatrick
Deputy United States Attorney
Michael Hammer
Norman Gross
Assistant United States Attorneys
John VanLonkhuyzen
Trial Attorney
Counterterrorism Section
United States Department of Justice
Camden Federal Building &
  U.S. Courthouse
401 Market Street, 4th Floor
Camden, New Jersey 08101
(856) 757-5030

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I.    ELJVIR DUKA CANNOT PREVAIL ON HIS ENTRAPMENT AND DUE PROCESS
      CLAIMS IN A MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING
      INDICTMENT . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   DRITAN DUKA'S CHALLENGES TO THE INDICTMENT ARE MERITLESS . . 10

BACKGROUND TO THE CLAIMS . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT

      A.    COUNT 2 ADEQUATELY PLEADS ATTEMPTED MURDER OF UNITED STATES
            MILITARY PERSONNEL . . . . . . . . . . . . . . . . . . 11

      B.    COUNTS 1 AND 2 ARE NOT MULTIPLICITOUS . . . . . . . . . 15

      C.    COUNTS 3, 5, AND 6 ARE NOT MULTIPLICITOUS . . . . . . . 17

      D.    COUNTS 1, 2, 3, 5, 6, AND 7 ARE NOT DUPLICITOUS . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

i

**TABLE OF AUTHORITIES**

**CASES**

Blockburger v. United States,
284 U.S. 299 (1932) . . . . . . . . . . . . . . . . . . . . . 15, 16

Braverman v. United States,
317 U.S. 49 (1942) . . . . . . . . . . . . . . . . . . . . . . 20

Callanan v. United States,
364 U.S. 587 (1961) . . . . . . . . . . . . . . . . . . . . . . 16

Hamling v. United States,
418 U.S. 87 (1974) . . . . . . . . . . . . . . . . . . . . . 13, 14

Mathews v. United States,
485 U.S. 58 (1988) . . . . . . . . . . . . . . . . . . . . . . . 8

Sherman v. United States,
356 U.S. 369 (1958) . . . . . . . . . . . . . . . . . . . . . 6, 7

Sodders v. Parratt,
693 F.2d 811 (8th Cir. 1982) . . . . . . . . . . . . . . . . . 14

Sorrells v. United States,
287 U.S. 435 (1932) . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Ansaldi,
372 F.3d 118 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . 15

United States v. Besmajian,
910 F.2d 1153 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . 3

United States v. Bin Laden,
91 F. Supp. 2d 600 (S.D.N.Y. 2000) . . . . . . . . . . . . . . 16

United States v. Buchmeier,
255 F.3d 415 (7th Cir. 2001) . . . . . . . . . . . . . . . . . 19

United States v. Cefaratti,
221 F.3d 502 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . 14

United States v. Chipps,
410 F.3d 438 (8th Cir. 2005) . . . . . . . . . . . . . . . . . 15

United States v. Cohen,
444 F. Supp. 1314 (E.D. Pa. 1978) . . . . . . . . . . . . . . . 20

United States v. Crisci,
    273 F.3d 235 (2d Cir. 2001) . . . . . . . . . . . . . . . 19

United States v. DeLaurentis,
    230 F.3d 659 (3d Cir. 2000) . . . . . . . . . . . 3, 4, 5, 6

United States v. Dixon,
    509 U.S. 688 (1993) . . . . . . . . . . . . . . . . . . 16

United States v. El-Gawli,
    837 F.2d 142 (3d Cir. 1988) . . . . . . . . . . . . . . . 8

United States v. Elrawy,
    448 F.3d 309 (5th Cir. 2006) . . . . . . . . . . . . . . 18

United States v. Fedroff,
    874 F.2d 178 (3d Cir. 1989) . . . . . . . . . . . . . . . 8

United States v. Gambino,
    788 F.2d 938 (3d Cir. 1986) . . . . . . . . . . . . . . . 7

United States v. Haddy,
    134 F.3d 542 (3d Cir. 1998) . . . . . . . . . . . . . . 19

United States v. Hess,
    124 U.S. 483 (1888) . . . . . . . . . . . . . . . . . . 14

United States v. Howard,
    918 F.2d 1529 (11th Cir. 1990) . . . . . . . . . . . . . 17

United States v. Irizarry,
    341 F.3d 273 (3d Cir. 2003) . . . . . . . . . . . . . . 16

United States v. Jannotti,
    673 F.2d 578 (3d Cir. 1982) . . . . . . . . . . . . . 7, 8

United States v. Johnson,
    319 U.S. 503 (1943) . . . . . . . . . . . . . . . . . . 21

United States v. Kemp,
    500 F.3d 257 (3d Cir. 2007) . . . . . . . . . . . . 13, 14

United States v. Lakhani,
    480 F.3d 171 (3d Cir. 2007) . . . . . . . . . 2, 7, 8, 9, 10

United States v. Marino,
    868 F.2d 549 (3d Cir. 1989) . . . . . . . . . . . . . . . 8

United States v. Marquardt,
    786 F.2d 771 (7th Cir. 1986) . . . . . . . . . . . . . . 15

United States v. Moloney,
    287 F.3d 236 (2d Cir. 2002) . . . . . . . . . . . . . . 19

iii

<u>United States v. Palmieri</u>,
    21 F.3d 1265 (3d Cir. 1994),
    <u>rev'd on other grounds</u>, 513 U.S. 957 (1994) . . . . . . . . . . . 18

<u>United States v. Panarella</u>,
    277 F.3d 678 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . 3, 13

<u>United States v. Resendiz-Ponce</u>,
    549 U.S. 103, 127 S. Ct. 782 (2007) . . . . . . . . . . . . . . . 13

<u>United States v. Reyes</u>,
    930 F.2d 310 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . 20

<u>United States v. Rodriguez</u>,
    54 Fed. Appx. 739,
    2002 WL 31732265 (3d Cir. 2002) . . . . . . . . . . . . . . . . . 20

<u>United States v. Rodriguez-Moreno</u>,
    526 U.S. 275 (1999) . . . . . . . . . . . . . . . . . . . . . . . 17

<u>United States v. Russell</u>,
    411 U.S. 423 (1973) . . . . . . . . . . . . . . . . . . . . . . . 7, 8

<u>United States v. Sourlis</u>,
    953 F. Supp. 568 (D.N.J. 1996) . . . . . . . . . . . . . . . . . 19

<u>United States v. Sturdivant</u>,
    244 F.3d 71 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . 19

<u>Ware v. United States</u>,
    124 F. Supp. 2d 590 (M.D. Tenn. 2000) . . . . . . . . . . . . . . 17

**FEDERAL STATUTES**

18 U.S.C. § 844(f) . . . . . . . . . . . . . . . . . . . . . . . . . 16

18 U.S.C. § 922(a)(5)(A) . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C. § 1113 . . . . . . . . . . . . . . . . . . . . . . . . . . 11

26 U.S.C. § 5845 (b) . . . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C.A. § 1113 . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C.A. § 1114 . . . . . . . . . . . . . . . . . . . . . . . 11, 12

iv

**RULES**

Fed. R. Crim. P. 7(c)(1) . . . . . . . . . . . . . . . . . . . .  1, 12, 19

Fed. R. Crim. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . 3

**MISCELLANEOUS**

Lafave, Israel, King, and Kerr, <u>Criminal Procedure</u>,
(3d ed. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 7

Third Circuit Model Jury Instructions (Criminal) § 6.18.924B . . . 18

**INTRODUCTION**

Eljvir Duka ("Eljvir") and Dritan Duka ("Dritan") separately move to dismiss various counts of the Superseding Indictment. Eljvir seeks dismissal of the Count 1 conspiracy charge, because of alleged entrapment or outrageous government investigative conduct.  Having provided no evidentiary basis for this motion, it must be rejected at this stage.

Dritan contends that the Count 2 attempted murder charge is not adequately plead in the indictment.  In fact, the allegations of that "speaking" count go well above and beyond the minimal pleading requirements of Fed. R. Crim. P. 7(c).  Dritan also contends that Counts 1, 2, 3, 5 and 6 are multiplicitous and that Counts 1,2, and 7 are duplicitous.  His arguments misconceive the law.  Each count of the indictment charges a single, unique offense, and should not be dismissed.

**ARGUMENT**

I.   **ELJVIR DUKA CANNOT PREVAIL ON HIS ENTRAPMENT AND DUE PROCESS CLAIMS IN A MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT.**

**(POINT II OF ELJVIR'S AMENDED BRIEF IN SUPPORT OF OMNIBUS PRE-TRIAL MOTIONS, DOCKET 181)**

Eljvir Duka moves to dismiss Count 1 of the indictment (and only Count 1) on the grounds of outrageous government

1

investigative practices and entrapment.[1]  Citing nothing, he

asserts that:

> The evidence shows that the Government ran roughshod
> over the defendant's most basic and fundamental First
> Amendment Constitutional protections to entrap him.

Eljvir Duka's Amended Brief In Support of Omnibus Pre-Trial

Motions ("EDB") at p. 20.

The most obvious problem with this claim is that no

"evidence" has yet been presented in this case, and Eljvir does

not even request an evidentiary hearing to test his claims.

Rather, he asks this Court to dismiss Count 1 based on the

assertions of his lawyer in his papers.  This claim fundamentally

misconceives the law.

---

[1]    The Third Circuit recently summarized the differences
between the trial defense of entrapment and the due process
prohibition against outrageous governmental investigative conduct
as follows:

> Despite their common intellectual origin . . . the two
> defenses are not identical and require distinct
> inquiries to apply properly.  On the one hand, the
> defense of due process focuses exclusively on the
> conduct of the Government.  If that conduct is "so
> outrageous" as to be "shocking to the universal sense
> of justice," then the Due Process Clause can function
> as an absolute bar on the Government from invoking
> judicial processes to obtain a conviction.  The defense
> of entrapment, on the other hand, focuses on the
> defendant himself: if the defendant was predisposed to
> commit the crime, then it cannot be said that the
> Government is responsible, notwithstanding the
> egregiousness of its conduct.

United States v. Lakhani, 480 F.3d 171, 177-78 (3d Cir. 2007)
(internal citations and some internal punctuation omitted).

A count that fails to allege all of the elements of an offense or otherwise fails to provide constitutionally sufficient notice to the defense may be subject to dismissal under Fed. R. Crim. P. 12(b)(2); see United States v. Panarella, 277 F.3d 678, 682 (3d Cir. 2002).  Eljvir does not raise any such challenge. Instead, he claims that he is entitled to pre-trial dismissal based on an alleged defense to the charges.  This is impermissible.

"In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment."  United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990).  Additionally, the court may not consider any factual averments beyond those in the indictment. United States v. DeLaurentis, 230 F.3d 659, 660-61 (3d Cir. 2000). Turning to the superseding indictment, Count 1 charges a jihadist-inspired conspiracy to commit mass murder of American soldiers through an armed attack on the United States Army Base at Ft. Dix, in Burlington County, New Jersey:

> The defendants . . . were inspired by, among others, al Qaeda, a foreign terrorist organization which sponsored, managed and financed terrorist attacks against the United States and its citizens, including the terrorist attacks of September 11, 2001, the attack on the U.S.S. Cole, and attacks on United States military forces fighting in Iraq and Afghanistan, to form a conspiracy to kill United States military personnel stationed in New Jersey and elsewhere.

Superseding Indictment, Count 1, ¶ 3.

The object of the conspiracy was:

to kill United States military personnel by, among
other methods, engaging in armed paramilitary
attacks on government and military installations in
New Jersey and elsewhere.

Id., ¶ 5.

Count 1 specifies ten "means and methods" of the

conspiracy:

- to obtain, view, and distribute digital video discs ("DVDs")
  that espoused jihadist propaganda and that were produced by
  al Qaeda and others, and that depict violent attacks on
  American military personnel;

- to recruit other persons to violent jihadist ideology;

- to acquire and possess firearms, including four firearms
  identified in the indictment;

- to conduct small arms training in Pennsylvania using those
  firearms;

- to conduct tactical training using paint-ball guns;

- to identify American government and military installations
  to attack;

- to surveil potential targets of armed attacks, including Ft.
  Dix;

- to acquire a map of Ft. Dix;

- to conceal the conspiracy and the identities of the
  conspirators from law enforcement officials; and

- to attempt to acquire machine guns and semi-automatic
  assault weapons for use in their planned attacks.

Id., ¶¶ 6-15.

The Overt Acts section of Count 1 describes in detail how

the defendants plotted and practiced, over a period of at least

4

sixteen months, to carry out an armed ambush on American soldiers who were stationed at Ft. Dix. The conspirators were already engaged in the plot before it was discovered by law enforcement officials. During the week of January 3, 2006, the conspirators conducted small arms training at a shooting range in Gouldsboro, Pennsylvania. Id., ¶ 16(a). It was not until approximately three months later that a cooperating witness (CW-1) first met defendant Mohamad Shnewer, who gave CW-1 a DVD which "displayed violent jihadist images as the narrator attempted to recruit the viewer to engage in jihadist activities." Id., ¶ 16(c).

During the next year, CW-1 and a second cooperating witness, CW-2, regularly met with or spoke to each of the defendants, and surreptitiously recorded their conversations. The defendants spoke to the cooperating witnesses about their plans to attack American soldiers in the United States, and took concrete steps to carry out the attack.[2]

---

[2] See id., ¶¶ 16(d) and (e) (Shnewer shares with CW-1 and CW-2 jihadist DVDs, which depicted armed attacks against American soldiers, and included footage of speeches by al Qaeda leader Usama Bin Laden and Sheikh Omar Abdul Rahman, the Egyptian cleric convicted of plotting the attack on the New York City World Trade Center in February 1993);

¶ 16(f) (Serdar Tatar concealed firearms so that they would be available to the conspirators for an armed attack);

¶¶ 16(g)-(k) (Shnewer conducted surveillance of numerous United States military facilities in the Philadelphia area);

¶¶ 16(l)-(m) (Tatar provided a map of Ft. Dix to CW-1 for use by
(continued...)

One searches Count 1, or the entire superseding indictment for that matter, in vain for a shred of support for Eljvir's entrapment or due process claims.  Because his claims find no comfort in the indictment, Eljvir resorts to a violation of the Third Circuit's teaching in DeLaurentis.  He contends that

> the defendants were induced or persuaded by agents, CW-1 and CW-2, to prepare to commit a crime that they had no previous intent to commit under the banner of their newly acquired Islamic beliefs and practices.  This was primarily accomplished through persistent techniques of persuading the defendants (through methods of radical religious conversion) that they were among a chosen few Muslims who had a duty to sacrifice themselves in the name of Allah.

EDB 20.  As DeLaurentis teaches, this Court may not consider Eljvir's unsupported factual assertions, based on nothing in the still undeveloped factual record.  230 F.3d at 660-61.

Stated differently, Eljvir's entrapment claim, if available, is premature and addressed to the wrong fact-finder.  "[T]he issue of whether a defendant has been entrapped is for the jury

---

[2](...continued)
the conspirators);

¶ 16(o) (Tatar lied to law enforcement officials about that map);

16(q)-(v) (in early February 2007, the conspirators engaged in small arms training and viewed jihadist videos at the Poconos);

¶¶ 16(w)-(y) (in February and March 2007, the conspirators engaged in tactical training with paint-ball equipment in Cherry Hill New Jersey);

¶¶ 16(y)-(dd) (from March through May, 2007, the conspirators arranged to acquire machine guns through CW-1).

as part of its function of determining the guilt or innocence of the accused." Sherman v. United States, 356 U.S. 369, 377 (1958).[3] This is because, using the "subjective approach" to entrapment that applies in federal criminal prosecutions,[4] "determining matters of credibility and assessing subjective responses to the stimulus of police encouragement are particularly within the ken of the jury." 2 Lafave, Israel, King, and Kerr, Criminal Procedure (3d ed. 2007), § 5.3(b), p. 582.

At the very least, this Court cannot find that defendants were entrapped as a matter of law before the first witness is sworn.[5]  Entrapment is a "'relatively limited defense' that may

---

[3]  See also Lakhani, 480 F.3d at 179 ("[A]lthough there may be instances where the undisputed facts establish the entrapment defense as a matter of law ..., [it] is generally a jury question.")(quoting United States v. Jannotti, 673 F.2d 578, 597 (3d Cir. 1982)); cf. United States v.  Gambino, 788 F.2d 938, 944 (3d Cir. 1986) (noting that "[w]here the evidence is undisputed that the defendant had no predisposition to commit the crimes. . . and was induced to do so only by the trickery, persuasion or fraud of the government, entrapment is established as a matter of law," but finding that the jury properly rejected the defense on the facts of that case).

[4]  See United States v. Russell, 411 U.S. 423, 440 (1973); Sherman, 356 U.S. at 373; Sorrells v. United States, 287 U.S. 435, 451 (1932).

[5]  The United States will offer substantial evidence at trial that will negate any plausible argument of entrapment. Consensual recordings and other evidence will establish that the defendants had considered, discussed, and in the case of Shnewer, even saved money for an armed attack well before they ever met either CW-1 or CW-2.  The evidence will also show that the

(continued...)

defeat a prosecution only 'when the Government's deception actually implants the criminal design in the mind of the defendant.'" <u>United States v. Fedroff</u>, 874 F.2d 178, 181 (3d Cir. 1989) (quoting <u>United States v. Russell</u>, 411 U.S. 423, 435-36 (1973)). The lack of an evidentiary basis for the claim is fatal, because it is the defendant, not the prosecution, who bears the initial burden of producing some evidence of inducement by a government agent. <u>United States v. El-Gawli</u>, 837 F.2d 142, 145 (3d Cir. 1988). If the defendant fails to meet that burden, the Court should not even submit the entrapment defense to the jury. <u>E.g.</u>, <u>United States v. Marino</u>, 868 F.2d 549, 554 (3d Cir. 1989) ("the trial judge did not err in refusing to give an entrapment charge; Marino's evidence of inducement was insufficient to have warranted such a charge").[6] In that regard, "evidence that Government agents merely afforded an opportunity or facilities for the commission of the crime would be insufficient to warrant" an entrapment instruction. <u>Mathews v.</u>

---

[5](...continued)
defendants had already acquired several firearms, and had attempted to acquire others, before they met the cooperators. Finally, the evidence will show that certain of the defendants acquired and viewed jihadist recruiting videos produced by al Qaeda and other terrorist organizations without prompting by either cooperator. Shnewer, for one, offered to allow the cooperators to view the videos.

[6] "Once properly raised by the defendant, 'the [G]overnment has the burden to disprove the whole (entrapment) defense beyond a reasonable doubt.'" <u>Lakhani</u>, 480 F.3d at 179 (quoting <u>Jannotti</u>, 673 F.2d at 597.

United States, 485 U.S. 58, 66 (1988).

To the extent that Eljvir is claiming that the indictment should be dismissed for outrageous government investigative conduct, the absence of a factual predicate likewise precludes relief on that claim at this stage. The likelihood that Eljvir could establish a due process violation even after a full trial is exceedingly remote. Although the defense is "available in this Circuit," in theory, it presents an almost insurmountable burden for a defendant:

> The judiciary is extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause. We have said that this principle is to be invoked only in the face of "the most intolerable government conduct," not each time the government acts deceptively or participates in a crime that it is investigating. Moreover, due process should not be used in this context merely as a device to circumvent the predisposition test [of] the entrapment defense. In this spirit, we have been admonished not to exercise a "Chancellor's foot" veto over law enforcement practices of which we might not approve.

United States v. Lakhani, 480 F.3d 171, 180 (3d Cir. 2007) (internal citations omitted).

In Lakhani, the Court of Appeals rejected a due process claim, following trial and conviction, even though government agents served as both buyers and sellers of shoulder-launched rockets, inducing the defendant to buy the rocket from one undercover agent and sell it to another, and even though a government agent first suggested the illegal arms deal to

9

Lakhani, not the other way around.  Eljvir does not even allege that government officials in this case were nearly as enmeshed in the criminal plot as they were in <u>Lakhani</u>.  Accordingly, there is no basis to dismiss Count One on that ground.[7]

**II.   DRITAN DUKA'S CHALLENGES TO THE INDICTMENT ARE MERITLESS.**

**(POINTS II-V OF DRITAN'S BRIEF IN SUPPORT OF OMNIBUS PRE-TRIAL MOTIONS, DOCKET 167)**

**<u>BACKGROUND TO THE CLAIMS.</u>**

Dritan seeks the dismissal of various counts of the indictment on the grounds of insufficient pleading, multiplicity, or duplicity. The following chart describes those four motions:

| POINT IN DUKA'S OMNIBUS MOTION | CHALLENGED COUNTS | CLAIMED DEFICIENCY |
|---|---|---|
| II | **Count 2** (attempted murder of United States armed services personnel) | insufficiently pled |

---

[7] Eljvir spends much of his argument regarding this point quoting, not the law or any evidence, but a report issued by a non-government entity.  EDB 23-25.  The portions of the report quoted by Eljvir do not even address this case, much less claims of entrapment or outrageous government investigative conduct. The report would appear to have no bearing on this motion.

| III | Counts **1** (conspiracy to murder United Sates armed services personnel) and **2** (attempted murder of United States armed services personnel) | multiplicitous |
| --- | --- | --- |
| IV | Counts **3** (possession and attempted possession of firearms in furtherance of a crime of violence), **5** (unlawful possession of machine guns), and **6** (possession of a firearm by an illegal alien) | multiplicitous |
| V | Counts **1** (conspiracy to murder United Sates armed services personnel), **2** (attempted murder of United States armed services personnel), **3** (attempted possession of firearms in furtherance of a crime of violence), **5** (unlawful possession of machine guns)**, 6** (possession of firearms by an illegal alien), and **7** (possession of firearms by an illegal alien) | duplicity |

**ARGUMENT.**

**A.  COUNT 2 ADEQUATELY PLEADS ATTEMPTED MURDER OF UNITED STATES MILITARY PERSONNEL.**

**(POINT II(II) OF DRITAN'S BRIEF IN SUPPORT OF OMNIBUS PRE-TRIAL MOTIONS, DOCKET 167)**

Count 2 of the indictment charges all defendants with attempting to murder United States military service personnel, in in violation of 18 U.S.C.A. § 1114.[8]  That statute provides that:

> Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any

---

[8]  Dritan mistakenly states that Count 2 charges only a violation of 18 U.S.C. § 1113, which is only a penalty provision, and does not define an offense.

11

member of the uniformed services) while such officer or
employee is engaged in or on account of the performance
of official duties, or any person assisting such an
officer or employee in the performance of such duties
or on account of that assistance, shall be punished--

> (1) in the case of murder, as provided under
> section 1111;
>
> (2) in the case of manslaughter, as provided
> under section 1112; or
>
> (3) in the case of attempted murder or
> manslaughter, as provided in section 1113.

18 U.S.C.A. § 1114.[9]

According to Dritan, Count 2:

> fails to state any fact in support of the attempt
> element of the crime.  In other words, no facts are
> presented to allege that the defendants took any
> substantial step toward the commission of the crime of
> murder.  Thus, this count should be dismissed as
> insufficient.

Dritan Duka Brief in Support of Omnibus Pre-Trial Motions ("DDB")

at 7.  This claim fails.

Dritan bears a heavy burden to demonstrate that Count 2

fails to adequately charge a violation of § 1114.  Under Fed. R.

---

[9]  Section 1113, in turn, provides:

> Except as provided in section 113 of this title,
> whoever, within the special maritime and territorial
> jurisdiction of the United States, attempts to commit
> murder or manslaughter, shall, for an attempt to commit
> murder be imprisoned not more than twenty years or
> fined under this title, or both, and for an attempt to
> commit manslaughter be imprisoned not more than seven
> years or fined under this title, or both.

18 U.S.C.A. § 1113.

Crim. P. 7(c)(1), an indictment must contain only a "plain, concise and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient so long as it

> (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. Moreover, no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.

United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007) (internal citations omitted); accord, Hamling v. United States, 418 U.S. 87, 117 (1974) (similar standard under Constitutional notice requirements). On a motion to dismiss, the court must consider the entire indictment. Panarella, 277 F.3d at 694, 690 n.7.

As the Supreme Court recently explained:

> [T]he Federal Rules were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure. While detailed allegations might well have been required under commonlaw pleading rules, they surely are not contemplated by Rule 7(c)(1).

United States v. Resendiz-Ponce, 549 U.S. 103, 127 S. Ct. 782, 789 (2007) (internal citations omitted).

Here, ¶ 2 of Count 2 charges that Dritan and the other four defendants did:

> knowingly and willfully attempt to kill officers and

13

employees of the United States . . . namely members of the uniformed services, while such officers and employees were engaged in and on account of the performance of official duties, and persons assisting such officers and employees in the performance of such duties and on account of that assistance.

An allegation such as this which tracks the statutory language and contains "a statement of the facts and circumstances as will inform the accused of the specific offense," as Count 2 plainly does, is generally sufficient to satisfy Rule 7(c). Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487 (1888)); United States v. Cefaratti, 221 F.3d 502, 507 (3d Cir. 2000). Contrary to Dritan's claim, the law does not require that the indictment allege specific facts which show that "the defendants took any substantial step toward the commission of the crime of murder." See Sodders v. Parratt, 693 F.2d 811, 812 (8th Cir. 1982) (information which charged that defendant, on a particular date and at a particular place, "did then and there purposely and with deliberate premeditated malice attempt to kill Judith Sodders, contrary to the form of the statutes," sufficiently charged the crime of attempted murder).

Even if there was such a requirement, it would be fulfilled here. As Dritan notes, ¶ 1 of Count 2 incorporates by reference ¶¶ 1-3 and 5-16 of Count 1, charging conspiracy to murder members of the United States military. The allegations, described herein at footnote 2, and in Count 1, ¶¶ 16 (d)-(dd), describe the substantial steps undertaken by the defendants with sufficient

14

particularity to satisfy Rule 7(c).  <u>See</u> <u>Kemp</u>, 500 F.3d at 280

(indictment quoted the statutory language, and the "specific

factual allegations . . . were sufficient to alert [defendants]"

about the government's theory of the case).

**B.  COUNTS 1 AND 2 ARE NOT MULTIPLICITOUS.**

**(POINT II(III) OF DRITAN'S BRIEF IN SUPPORT OF OMNIBUS**
**PRE-TRIAL MOTIONS, DOCKET 167).**

Dritan next contends that Counts 1 (charging conspiracy to

murder American soldiers) and 2 (charging attempt to murder

American soldiers) are multiplicitous, because they arise from

the same factual allegations.  He contends that the United States

must elect to proceed to trial on one of those counts, but cannot

proceed on both.  This argument misconstrues the law.

An indictment that charges a single offense in different

counts is multiplicitous.  <u>See</u> <u>United States v. Ansaldi</u>, 372 F.3d

118, 125 (2d Cir. 2004) (indictment charging multiple drug

conspiracies based on a single criminal agreement was

multiplicitous).[10]  Dritan's claim fails because multiplicity

does not occur if each challenged count requires proof of facts

that the other counts do not.  <u>See</u> <u>Blockburger v. United States</u>,

---

[10]  Mulitiplicitous counts are improper because they may
result in multiple sentences for a single offense, in violation
of the Double Jeopardy Clause.  <u>See</u> <u>United States v. Chipps</u>, 410
F.3d 438, 447 (8th Cir. 2005).  They also may prejudice the
defendant in the eyes of the jury, by creating the impression
that he committed more crimes than he actually did.  <u>See</u> <u>United</u>
<u>States v. Marquardt</u>, 786 F.2d 771, 778 (7th Cir. 1986).

15

284 U.S. 299, 304 (1932) ("The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.") (citations omitted); see United States v. Dixon, 509 U.S. 688, 696 (1993) (citations omitted) (confirming that the Blockburger test is the proper standard for determining whether the Double Jeopardy Clause bars multiple punishments).  See also Callanan v. United States, 364 U.S. 587, 591-95 (1961) (indictment charging conspiracy to obstruct commerce by extorting money and obstructing commerce by extortion was not multiplicitous).[11]

Conspiracy to commit murder and attempted murder are different crimes involving different elements and can be separately charged in a single indictment.  "Conspiracy requires proof of an agreement between two or more people, while attempt does not; attempt requires proof that a substantial step has been

_____

[11] Thus, in United States v. Bin Laden, the court found that multiple charges growing out of the same embassy bombings were not multiplicitous where each charge required an element that the others did not.  In particular, 18 U.S.C. § 844(f), prohibiting malicious destruction of government property, required proof that government property was a target of the bombings, which was not required by any of the other charged statutes.  Section 2332a required proof that a weapon of mass destruction was used in the attacks on the United States Embassies, which was not an element of any of the other charged offenses.  Finally, the § 930(c) murder counts required proof of a "killing," an element not required by any of the other provisions.  91 F. Supp. 2d 600, 615-16 (S.D.N.Y. 2000).

16

taken towards completion of the crime, while conspiracy does
not." United States v. Howard, 918 F.2d 1529, 1533 (11th Cir.
1990) (conspiracy to kidnap charge and attempted kidnaping charge
were not multiplicitous,); see generally Ware v. United States,
124 F. Supp.2d 590, 601 (M.D. Tenn. 2000) (conspiracy to
distribute drugs and attempt to possess the same drugs with the
intent to distribute were not multiplicitous).  Dritan's
multiplicity claim should be rejected.

**C.  COUNTS 3, 5, AND 6 ARE NOT MULTIPLICITOUS.**

**(POINT II(IV) OF DRITAN'S BRIEF IN SUPPORT OF OMNIBUS
PRE-TRIAL MOTIONS, DOCKET 167).**

Dritan's multiplicity challenge to Counts 3 (possession and
attempted possession of firearms in furtherance of a crime of
violence), 5 (unlawful possession of machine guns), and 6
(possession of a firearm by an illegal alien) fail for the same
reason that his multiplicity challenge to Counts 1 and 2 fails:
each of those counts contains at least one element that the other
two do not.  Count 3 requires proof that a defendant possessed a
firearm "during and in relation to" a crime of violence, see
United States v. Rodriquez-Moreno, 526 U.S. 275, 280 (1999);
Third Circuit Model Jury Instructions (Criminal) § 6.18.924B;
Counts 5 and 6 do not.  Count 5 requires proof that the
defendants possessed "machine guns," as that term is defined in
26 U.S.C. § 5845 (b), the other two do not.  See United States v.
Palmieri, 21 F.3d 1265, 1272 (3d Cir. 1994), rev'd on other

17

grounds, 513 U.S. 957 (1994).  Count 6 requires proof that the

defendants were unlawfully in the United States when they

possessed the firearms, see United States v. Elrawy, 448 F.3d

309, 312-13 (5th Cir. 2006) ("in the context of § 922(g)(5)(A), .

. . an alien 'illegally or unlawfully in the United States' is an

alien whose presence within the United States is 'forbidden or

not authorized by law,'"); the other two do not.  Thus, Dritan's

multiplicity claim regarding those counts also fails.

### D.  COUNTS 1, 2, 3, 5, 6, AND 7 ARE NOT DUPLICITOUS.

### (POINT II(V) OF DRITAN'S BRIEF IN SUPPORT OF OMNIBUS PRE-TRIAL MOTIONS, DOCKET 167).

Finally, Dritan contends that Counts 1 (conspiracy to murder

American soldiers) and 2 (attempted murder of American soldiers),

on one hand, and the four firearms offenses with which he is

charged,[12] on the other hand, are "duplicitous."  This is so, he

claims, because Dritan's possession of the firearms in the latter

counts are alleged as overt acts in the Count 1 conspiracy, which

is incorporated by reference in the Count 2 attempted mass

murders.  Again, Dritan has misconstrued the law.

Duplicity is the improper joining of distinct and separate

offenses in a single count.  United States v. Haddy, 134 F.3d

---

[12]  Those are Counts **3** (attempted possession of firearms in
furtherance of a crime of violence), **5** (unlawful possession of
machine guns)**, 6** (possession of firearms by an illegal alien) and
**7** (possession of firearms by an illegal alien).

542, 548 (3d Cir. 1998).[13]  <u>See also</u> <u>United States v. Sturdivant</u>, 244 F.3d 71, 79 (2d Cir. 2001) (count charging one drug-trafficking offense for two separate drug transactions was duplicitous because the transactions were not connected by a conspiracy charge); <u>United States v. Buchmeier</u>, 255 F.3d 415, 423-25 (7th Cir. 2001) (count charging acquisition of firearms for two separate transactions was duplicitous).[14]

The accumulation of firearms as a "manner and means" of the conspiracy does not result in a duplicitous count.  "A count of an indictment is not duplicitous if the alleged acts therein were part of a transaction constituting a single continuing offense." <u>United States v. Cohen</u>, 444 F. Supp. 1314, 1320 (E.D. Pa. 1978).

---

[13]  Duplicitous indictments obscure the specific charges and can violate the defendant's constitutional right to notice of the charges against him.  <u>See</u> <u>United States v. Crisci</u>, 273 F.3d 235, 238 (2d Cir. 2001).  They also hinder the defendant's ability to plead double jeopardy in a subsequent prosecution.  <u>United States v. Moloney</u>, 287 F.3d 236, 239 (2d Cir. 2002).

[14]  To determine whether a count in an indictment is duplicitous, a court must determine the "allowable unit of prosecution."  <u>Haddy</u>, 134 F.3d at 548.  An indictment is not duplicitous where it does not charge different offenses in the same count, but instead charges different methods of completing the same offense in one count.  <u>United States v. Sourlis</u>, 953 F. Supp. 568, 573-74 (D.N.J. 1996) (rejecting a claim that a conspiracy charge was duplicitous because it alleged a scheme to commit bank fraud against three separate financial institutions). Further, the Federal Rules of Criminal Procedure specifically authorize charging two different methods of committing a crime in a single count.  <u>See</u> Fed. R. Crim. P. 7(c)(1) ("It may be alleged in a single count that the means by which the defendant committed the offense are unknown or the defendant committed it by one or more specified means.").

The conspiracy (the criminal agreement) is one crime, "'however diverse its objectives.'"  United States v. Reyes, 930 F.2d 310, 312 (3d Cir. 1991) (quoting Braverman v. United States, 317 U.S. 49, 54 (1942)); see also United States v. Rodriquez, 54 Fed. Appx. 739, 751, 2002 WL 31732265, *10 (3d Cir. 2002) (not precedential).

Because each of the overt acts or "methods and means" of the conspiracy are logically connected to the agreement, the conspiracy count is not duplicitous merely because it identifies such acts.  Cohen, 444 F. Supp. at 1320 (conspiracy count was not duplicitous because it charged multiple incidents of receiving extortionate payments; "the  alleged acts and payments were part of a transaction constituting the single continuing offense of . . . conspiracy").  Were it otherwise, a plain vanilla conspiracy count that did not allege any criminal acts committed in furtherance of the conspiracy would escape a duplicity challenge, whereas a more particularized description of the same conspiracy would paradoxically run afoul of the rule.  But such a result would thwart one of the goals of the duplicity doctrine: to enhance the level of notice to the defendant.

Dritan's duplicity challenge to Count 2 simply mirrors his duplicity challenge to Count 1, and fails for the same reason. His unlawful possession of the weapons specified in Counts 3, 5, 6, and 7 was undertaken in furtherance of the attempted mass

20

murders.  The attempted mass murder was a single, albeit on-going offense that included numerous "substantial steps," including the acquisition and possession of firearms.  See generally United States v. Johnson, 319 U.S. 503, 515 (1943) (indictment charging willful attempts to evade the payment of income taxes was not duplicitous, where "[t]he false return filed on March 15th was only one aspect of what was a process of tax evasion;" and "[t]here was only one offense in each count, and all who shared in its execution [were guilty], whatever may have been the different roles of leadership and subordination among themselves").  Dritan's duplicity claim fails.

**CONCLUSION**

For all of the foregoing reasons, Dritan's and Eljvir's motions to dismiss various counts of the superseding indictment should be denied.

<div style="margin-left:40%">

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
United States Attorney

/s Norman Gross

By: WILLIAM E. FITZPATRICK
    Deputy U.S. Attorney
    MICHAEL HAMMER
    NORMAN GROSS
    Assistant U.S. Attorneys
    JOHN VANLONKHUYZEN
    Trial Attorney
    Counterterrorism Section
    United States Department of Justice

</div>

Date: July 18, 2008
      Camden, New Jersey

21