C 2
(2|11)08
(RBK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

UNITED STATES OF AMERICA　　　　:

　　　　　　　　　　　　　　　　　　　:　　　HONORABLE ROBERT B. KUGLER

　　　　　　　v.　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　:　　　Criminal No. 07-459 (RBK)

　　　　　　　　　　　　　　　　　　　:

MOHAMAD IBRAHIM SHNEWER,　　　:

DRITAN DUKA,　　　　　　　　　　　:

　a/k/a "Tony Duka,"　　　　　　　　　:

ELJVIR DUKA,　　　　　　　　　　　　:

　a/k/a "Sulayman"　　　　　　　　　　:

SHAIN DUKA,　　　　　　　　　　　　:

　a/k/a "Shaheen," and　　　　　　　　　:

SERDAR TATAR　　　　　　　　　　　:

KUGLER, District Judge:

## FINAL JURY INSTRUCTIONS

**1. ROLE OF JURY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**2. FUNCTION OF COUNSEL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**3. EVIDENCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**4. DIRECT AND CIRCUMSTANTIAL EVIDENCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**5. CREDIBILITY OF WITNESSES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**6. CONSCIOUSNESS OF GUILT FROM FALSE EXCULPATORY STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**7. ADMISSION OF DEFENDANT; MIRANDA WARNINGS** . . . . . . . . . . . . . . . . . . 12

**8. NOT ALL EVIDENCE, NOT ALL WITNESSES NEEDED** . . . . . . . . . . . . . . . . . . 13

9.  PRESUMPTION OF INNOCENCE; BURDEN OF PROOF;
REASONABLE DOUBT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10.  NATURE OF THE INDICTMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11.  THE INDICTMENT - "ON OR ABOUT" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

12.  SEPARATE CONSIDERATION - MULTIPLE DEFENDANTS
CHARGED WITH DIFFERENT OFFENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

13.  STIPULATION OF FACT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

14.  IMPEACHMENT OF WITNESS - PRIOR BAD ACTS
F.R.E. 608(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

15.  IMPEACHMENT OF WITNESS - PRIOR CONVICTION (F.R.E. 609) . . . . . . . . . 21

16.  SPECIFIC INVESTIGATION TECHNIQUES NOT REQUIRED  . . . . . . . . . . . . . . 22

17.  USE OF HIDDEN RECORDING DEVICES AND SEARCHES  . . . . . . . . . . . . . . . 23

18.  OPINION EVIDENCE (EXPERT WITNESSES) . . . . . . . . . . . . . . . . . . . . . . . . . 24

19.  CREDIBILITY OF WITNESSES - LAW ENFORCEMENT OFFICER . . . . . . . . . . 26

20.  CREDIBILITY OF COOPERATING WITNESSES  . . . . . . . . . . . . . . . . . . . . . . . 27

21.  PREPARATION OF WITNESSES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

22.  DEFENDANTS' CHOICE NOT TO TESTIFY  . . . . . . . . . . . . . . . . . . . . . . . . . . 29

23.  DEFENDANT'S PRIOR BAD ACTS OR CRIMES (F.R.E. 404(B))  . . . . . . . . . . . . 30

24.  SUMMARY OF INDICTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

25.  COUNT ONE - CONSPIRACY TO MURDER MEMBERS OF THE UNITED
STATES UNIFORMED SERVICES, THE CHARGE  . . . . . . . . . . . . . . . . . . . . . . . 32

26.  COUNT ONE - THE STATUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

27.  COUNT ONE - ELEMENTS OF THE OFFENSE . . . . . . . . . . . . . . . . . . . . . . . . 34

28.  CONSPIRACY - SUCCESS IMMATERIAL  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

29.  CONSPIRACY - DURATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

30. COUNT ONE - FIRST ELEMENT, EXISTENCE OF THE AGREEMENT . . . . . . . . 37

31. COUNT ONE - SECOND ELEMENT, MEMBERSHIP IN THE AGREEMENT . . . 39

32. COUNT ONE - MENTAL STATES FOR CONSPIRACY . . . . . . . . . . . . . . . . . . . . 41

33. DEFINITION OF "KNOWINGLY" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

34. DEFINITION OF "WILLFULLY" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

35. PROOF OF REQUIRED STATE OF MIND . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

36. MOTIVE EXPLAINED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

37. COUNT ONE - THIRD ELEMENT, OVERT ACTS . . . . . . . . . . . . . . . . . . . . . . 46

38. COUNT ONE - UNDERLYING OFFENSE, MURDER OF MEMBERS OF THE
UNIFORMED SERVICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

39. COUNT ONE - MALICE AFORETHOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

40. COUNT ONE - PREMEDITATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

41. CONSPIRACY - ACTS AND STATEMENTS OF CO-CONSPIRATORS . . . . . . . . 54

42. COUNT TWO - ATTEMPTED MURDER OF MEMBERS
OF THE UNIFORMED SERVICES, THE CHARGE . . . . . . . . . . . . . . . . . . . . . . . 55

43. COUNT TWO - THE STATUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

44. COUNT TWO - CRIMINAL ATTEMPT - ELEMENTS . . . . . . . . . . . . . . . . . . . . 57

45. COUNT TWO - UNDERLYING OFFENSE, MURDER
OF MEMBERS OF THE UNIFORMED SERVICES . . . . . . . . . . . . . . . . . . . . . . . 59

46. COUNTS THREE AND FOUR - POSSESSION AND
ATTEMPTED POSSESSION OF A FIREARM IN FURTHERANCE
OF A CRIME OF VIOLENCE - THE CHARGES . . . . . . . . . . . . . . . . . . . . . . . . . 60

47. COUNTS THREE AND FOUR - THE STATUTE . . . . . . . . . . . . . . . . . . . . . . . . 62

48. COUNTS THREE AND FOUR - ELEMENTS OF THE OFFENSES . . . . . . . . . . . 63

49. COUNT THREE, SECOND ELEMENT - KNOWING
POSSESSION OF A FIREARM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

**50. "FIREARM" DEFINED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

**51. COUNTS THREE AND FOUR, SECOND ELEMENT - KNOWING ATTEMPTED POSSESSION OF A FIREARM** . . . . . . . . . . . . . . . . . . . . 67

**52. COUNT THREE - FORESEEABLE  POSSESSION OF A FIREARM BY A CO-CONSPIRATOR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

**53. COUNTS THREE AND FOUR - "IN FURTHERANCE OF" DEFINED** . . . . . . . . 69

**54. COUNT FIVE - THE CHARGE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

**55. COUNT FIVE - THE STATUTE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

**56. COUNT FIVE - ELEMENTS OF THE OFFENSE** . . . . . . . . . . . . . . . . . . . . . . . 72

**57. COUNT FIVE - KNOWING POSSESSION AND KNOWING ATTEMPTED POSSESSION OF A MACHINE GUN** . . . . . . . . . . . . . . . . . . . . . 73

**58. COUNTS SIX AND SEVEN - THE CHARGES** . . . . . . . . . . . . . . . . . . . . . . . . 74

**59. COUNTS SIX AND SEVEN - THE STATUTE** . . . . . . . . . . . . . . . . . . . . . . . . 76

**60. COUNTS SIX AND SEVEN - ELEMENTS OF THE OFFENSE** . . . . . . . . . . . . . . 77

**61. COUNTS SIX AND SEVEN - KNOWING POSSESSION AND ATTEMPTED KNOWING POSSESSION OF A FIREARM** . . . . . . . . . . . . . . . . . . 78

**62. COUNTS SIX AND SEVEN - FIREARM THAT TRAVELED IN INTERSTATE OR FOREIGN COMMERCE** . . . . . . . . . . . . . . . . . . . . . . . . . . 79

**63. COUNTS SIX AND SEVEN - ALIENS UNLAWFULLY AND ILLEGALLY IN THE UNITED STATES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

**64. ACCOMPLICE LIABILITY: AIDING AND ABETTING (18 U.S.C. § 2(a))** . . . . . . . 81

**65. CAUSING THE CRIMINAL ACTS OF ANOTHER (18 U.S.C. § 2(b))** . . . . . . . . . . 84

**66. ENTRAPMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

**67. DUTY TO DELIBERATE; UNANIMITY OF VERDICT** . . . . . . . . . . . . . . . . . . . 89

**68. VERDICT FORM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

## 1. ROLE OF JURY

Members of the jury, you have seen and heard all the evidence. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence that you have heard and seen in court during this trial. That is your job and yours alone. I play no part in finding the facts. You should not take anything I may have said or done during the trial as indicating what I think of the evidence or what I think about what your verdict should be.

Your second duty is to apply the law that I give you to the facts. My role now is to explain to you the legal principles that must guide you in your decisions. You must apply my instructions carefully. Each of the instructions is important, and you must apply all of them. You must not substitute or follow your own notion or opinion about what the law is or ought to be. You must apply the law that I give to you, whether you agree with it or not.

Whatever your verdict, it will have to be unanimous. All of you will have to agree on it or there will be no verdict. In the jury room you will discuss the case among yourselves, but ultimately each of you will have to make up his or her own mind. This is a responsibility that each of you has and that you cannot avoid.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, or occupation, economic circumstances, or position in life or in the community.

## 2. FUNCTION OF COUNSEL

During the trial, counsel for the Government as well as for the defendants have made numerous arguments and statements before you. When attorneys do this, they are acting well within their rights and indeed living up to their obligation to represent their respective clients. Statements of counsel are for the purpose of attempting to persuade you as to their view of what the evidence has shown or failed to show and, accordingly, should be regarded as arguments but not as evidence. No statement, opinion, unanswered question, or argument by a lawyer in this case is to be considered as evidence. Again, the only evidence that you may consider is that which you have seen and heard by way of the sworn testimony of witnesses, audio recordings, video recordings, documents, and other exhibits that were received into evidence.

I further instruct you that if, during the course of this trial, in opening statements, closing arguments, or at any time, any of the attorneys here has put forth a version of the facts that does not square with your own recollection, you are to disregard counsel's version in favor of your own recollections. The attorneys function as advocates who represent the parties before you, the Government and the defendants. Your decision in this case is to be based solely on the evidence or lack of evidence as you find it, assessed against the principles of law governing the charges as I instruct you.

## 3. EVIDENCE

You must make your decision in this case based only on the evidence that you saw and heard in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence from which you are to find the facts consists of the following:

(1)     The testimony of the witnesses;

(2)     Audio recordings, video recordings, documents and other things received as exhibits; and

(3)     Any fact or testimony that was stipulated; that is, formally agreed to by the parties.

The following are <u>not</u> evidence:

(1)     The Indictment;

(2)     Statements and arguments of the lawyers for the parties in this case;

(3)     Questions by the lawyers and questions that I might have asked, except when the witness has adopted facts stated in the question by an affirmative answer to the question;

(4)     Objections by lawyers, including objections in which the lawyers stated facts;

(5)     Any testimony I struck or told you to disregard; and

(6)     Anything you may have seen or heard about this case outside the courtroom.

3

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight if any you believe it deserves. If your experience and common sense tells you that certain evidence reasonably leads to a conclusion, you may reach that conclusion.

As I told you in my preliminary instructions, the rules of evidence control what can be received into evidence. During the trial, the lawyers objected when they thought that evidence was offered that was not permitted by the rules of evidence. These objections simply meant that the lawyers were asking me to decide whether the evidence should be allowed under the rules.

You should not be influenced by the fact that an objection was made or not made. You should also not be influenced by my rulings on objections or any sidebar conferences you may have overheard. When I overruled an objection, the question was answered or the exhibit was received as evidence, and you should treat that testimony or exhibit like any other. When I allowed evidence (testimony or exhibits) for a limited purpose only, I instructed you to consider that evidence only for that limited purpose, and you must do that.

When I sustained an objection, the question was not answered or the exhibit was not received as evidence. You must disregard the question or the exhibit entirely. Do not think about or guess what the witness might have said in answer to the question; do not think about or guess what the exhibit might have shown. Sometimes a witness may have already answered before a lawyer objected or before I ruled on the objection. If that happened and if I sustained the objection, you must disregard the answer that was given.

Although the lawyers may have called your attention to certain facts or factual conclusions that they thought were important, what the lawyers said is not evidence and is not

4

binding on you. It is your own recollection and interpretation of the evidence that controls your decision in this case. Also, do not assume from anything I may have done or said during the trial that I have any opinion about any of the issues in this case or about what your verdict should be.

Furthermore, the videos recovered from defendants' computers were introduced into evidence by the Government to demonstrate motive and intent. Some are not pleasant videos to look at. You should not let them stir up your emotions to the prejudice of the defendants. Your verdict must be based on a rational and fair consideration of all the evidence and not on passion or prejudice against the defendants, the Government, or anyone else connected with this case.

## 4. DIRECT AND CIRCUMSTANTIAL EVIDENCE

Two types of evidence may be used in this trial, "direct evidence" and "circumstantial evidence." You may use both types of evidence in reaching your verdict.

"Direct evidence" is simply evidence which, if believed, directly proves a fact. An example of "direct evidence" occurs when a witness testifies about something the witness knows from his or her own senses — something the witness has seen, touched, heard, or smelled.

"Circumstantial evidence" is evidence which, if believed, indirectly proves a fact. It is evidence that proves one or more facts from which you could reasonably find or infer the existence of some other fact or facts. A reasonable inference is simply a deduction or conclusion that reason, experience, and common sense lead you to make from the evidence. A reasonable inference is not a suspicion or a guess. It is a reasoned, logical decision to find that a disputed fact exists on the basis of another fact.

For example, if someone walked into the courtroom wearing a wet raincoat and carrying a wet umbrella, that would be circumstantial or indirect evidence from which you could reasonably find or conclude that it was raining. You would not have to find that it was raining, but you could.

Sometimes different inferences may be drawn from the same set of facts. The Government may ask you to draw one inference, and the defense may ask you to draw another. You, and you alone, must decide what reasonable inferences you will draw based on all the evidence and your reason, experience and common sense.

You should consider all the evidence that is presented in this trial, direct and circumstantial. The law makes no distinction between the weight that you should give to either

6

direct or circumstantial evidence.  It is for you to decide how much weight if any to give any

evidence.

## 5. CREDIBILITY OF WITNESSES

As I stated in my preliminary instructions at the beginning of the trial, in deciding what the facts are you must decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. Credibility refers to whether a witness is worthy of belief: was the witness truthful? Was the witness's testimony accurate? You may believe everything a witness says, only part of it, or none of it.

You may decide whether to believe a witness based on his or her behavior and manner of testifying, the explanations the witness gave, and all the other evidence in the case, just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

In deciding the question of credibility, remember to use your common sense, your good judgment, and your experience.

In deciding what to believe, you may consider a number of factors:

(1)     The opportunity and ability of the witness to see or hear or know the things about which the witness testified;

(2)     The quality of the witness's knowledge, understanding, and memory;

(3)     The witness's appearance, behavior, and manner while testifying;

(4)     Whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;

(5)     Any relation the witness may have with a party in the case and any effect the verdict may have on the witness;

(6)     Whether the witness said or wrote anything before trial that was different from the witness's testimony in court;

(7)     Whether the witness's testimony was consistent or inconsistent with other evidence that you believe; and

(8)     Any other factors that bear on whether the witness should be believed.

Inconsistencies or discrepancies in a witness's testimony or between the testimony of different witnesses may or may not cause you to disbelieve a witness's testimony. Two or more persons witnessing an event may simply see or hear it differently. Mistaken recollection, like failure to recall, is a common human experience. In weighing the effect of an inconsistency, you should also consider whether it was about a matter of importance or an insignificant detail. You should also consider whether the inconsistency was innocent or intentional.

You are not required to accept testimony even if the testimony was not contradicted and the witness was not impeached. You may decide that the witness is not worthy of belief because of the witness's bearing and demeanor, or because of the inherent improbability of the testimony, or for other reasons that are sufficient to you.

After you make your own judgment about the believability of a witness, you can then attach to that witness's testimony the importance or weight that you think it deserves.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testified or the quantity of evidence that was presented. What is more important than numbers or quantity is how believable the witnesses were, and how much weight if any you think their testimony deserves.

If you believe that a witness knowingly testified falsely concerning an important matter,

9

you may distrust the witness' testimony concerning other matters.  You may reject all of the testimony or you may accept such parts of the testimony that you believe are true and give it such weight as you think it deserves.

# 6. CONSCIOUSNESS OF GUILT FROM FALSE EXCULPATORY STATEMENT

You have heard testimony that defendant Serdar Tatar allegedly made certain statements outside the courtroom to law enforcement authorities, particularly FBI Agent Jay Rycek, in which the defense claims that his conduct was consistent with innocence and not with guilt. The Government claims that those statements are false.

If you find that Serdar Tatar made a false statement or statements in order to direct the attention of the law enforcement officers away from himself, you may, but are not required to, conclude that Serdar Tatar believed that he was guilty. It is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence. You may not, however, conclude on the basis of this alone, that Serdar Tatar is, in fact, guilty of the crimes for which he is charged.

You must decide whether or not this evidence as to Serdar Tatar shows that he believed that he was guilty, and the significance, if any, to be attached to this evidence. In your evaluation, you may consider that there may be reasons – fully consistent with innocence – that could cause a person to give a false statement that he did not commit a crime. Fear of law enforcement, reluctance to become involved, a simple mistake, or some other factor may cause an innocent person to give such a statement or explanation.

# 7. ADMISSION OF DEFENDANT; MIRANDA WARNINGS

There has been evidence that the defendant Serdar Tatar made certain statements on May 7, 2007 to law enforcement officers. In deciding what weight to give to Serdar Tatar's statements, you should first examine with great care whether the statements were made and whether, in fact, they were voluntarily made. I instruct you that you are to give the statements such weight as you feel they deserve in light of all the evidence, including Serdar Tatar himself and the circumstances under which this defendant may have made the statements.

If, after considering the evidence, you determine that statements were made voluntarily, you may give them such weight as you feel they deserve under the circumstances. On the other hand, if you determine that the statements were not made voluntarily, you must disregard them. In determining whether any alleged statements were made voluntarily, you should consider Serdar Tatar's age, training, education, occupation, and physical and mental condition, and his treatment while in custody or under interrogation, as shown by the evidence in the case. Also consider all other circumstances in evidence surrounding the making of the alleged statements.

Finally, I caution you that you may consider Serdar Tatar's statements to these law enforcement officers only in resolving whether Serdar Tatar is guilty or not guilty. You may not consider or discuss this evidence in any way in resolving whether any of the other defendants on trial are guilty or not guilty. Serdar Tatar's statements to the law enforcement officials are evidence only against him, and not against any other defendant.

## 8. NOT ALL EVIDENCE, NOT ALL WITNESSES NEEDED

Although the Government is required to prove the defendants' guilt beyond a reasonable doubt, the Government is not required to present all possible evidence related to the case or to produce all possible witnesses who might have some knowledge about the facts of the case.  In addition, as I have explained, the defendants are not required to present any evidence or produce any witnesses.

# 9. PRESUMPTION OF INNOCENCE; BURDEN OF PROOF; REASONABLE DOUBT

Each of the defendants has pleaded not guilty to the offenses with which he is charged. Each defendant is presumed to be innocent. He started the trial with a clean slate, with no evidence against him. The presumption of innocence stays with each defendant unless and until the Government has presented evidence that overcomes that presumption by convincing you that a particular defendant is guilty of a particular offense charged beyond a reasonable doubt. The presumption of innocence requires that you find a particular defendant not guilty, unless you are satisfied that the Government has proved guilt beyond a reasonable doubt.

The presumption of innocence means that each of the defendants has no burden or obligation to present any evidence at all or to prove that he is not guilty. The burden or obligation of proof is on the Government to prove that each defendant is guilty, and this burden stays with the Government throughout the trial.

In order for you to find a particular defendant guilty of an  offense with which he is charged, the Government must convince you that the defendant is guilty beyond a reasonable doubt. That means that the Government must prove each and every element of the offense charged beyond a reasonable doubt. A defendant may not be convicted based on suspicion or conjecture, but only on evidence proving guilt beyond a reasonable doubt.

Proof beyond a reasonable doubt does not mean proof beyond all possible doubt or to a mathematical certainty. Possible doubts or doubts based on conjecture, speculation, or hunch are not reasonable doubts. A reasonable doubt is a fair doubt based on reason, logic, common sense, or experience. It is a doubt that an ordinary reasonable person has after carefully weighing all of the evidence, and is a doubt of the sort that would cause him or her to hesitate to act in matters of

importance in his or her own life.  It may arise from the evidence, or from the lack of evidence, or from the nature of the evidence.

If, having now heard all the evidence, you are convinced that the Government has proved each and every element of an offense charged against a particular defendant beyond a reasonable doubt, you must return a verdict of guilty for that offense against that defendant.  However, if you have a reasonable doubt about one or more of the elements of the offense charged, then you must return a verdict of not guilty for that offense against that defendant.

## 10. NATURE OF THE INDICTMENT

As you know, each of the defendants are charged in the Indictment with several federal criminal offenses. As I explained at the beginning of trial, an indictment is just the formal way of specifying the exact crime or crimes the defendants are accused of committing. An indictment is simply a description of the charge or charges against a defendant. It is an accusation only. An indictment is not evidence of anything, and you should not give any weight to the fact that the defendants have been indicted in making your decision in this case. You will have a copy of the indictment with you for organizational purposes only.

## 11. THE INDICTMENT - "ON OR ABOUT"

You will note that the Indictment charges that the offenses were committed "on or about" a certain date or dates. The Government does not have to prove with certainty the exact dates of the alleged offenses. It is sufficient if the Government proves beyond a reasonable doubt that an offense was committed on a date reasonably near the date or dates alleged.

## 12. SEPARATE CONSIDERATION – MULTIPLE DEFENDANTS CHARGED WITH DIFFERENT OFFENSES

Each of the defendants is charged with several different offenses. I will explain to you in more detail shortly which defendants are charged with which offenses. Before I do that, however, I want to emphasize several things.

The number of offenses charged is not evidence of guilt, and this should not influence your decision in any way. Also, in our system of justice, guilt is personal and individual. You must separately consider the evidence against each defendant on each offense charged, and you must return a separate verdict for each defendant for each offense. For each defendant and each offense, you must decide whether the Government has proved beyond a reasonable doubt that a particular defendant is guilty of a particular offense.

Your decision on any one defendant or any one offense, whether guilty or not guilty, should not influence your decision on any of the other defendants or offenses. Each offense and each defendant should be considered separately.

## 13. STIPULATION OF FACT

The Government and the defendants have agreed that the following facts are true. You may therefore treat these facts as having been proved. You are not required to do so, however, since you are the sole judge of the facts.

(1)    At all times relevant to this Superseding Indictment defendant Eljvir Duka was an alien who was illegally and unlawfully in the United States.

(2)    At all times relevant to this Superseding Indictment defendant Shain Duka was an alien who was illegally and unlawfully in the United States.

(3)    From in or about January 2005 through in or about February 2005, defendant Serdar Tatar applied to join the United States Navy. Defendant Tatar's application to join the United States Navy was denied in or about February 2005.

(4)    If called to testify, John Reynolds of Fort Dix Army Navy & Paintball Store located at 7945 Route 130 South, Pennsauken, NJ 08109 would testify as follows:

1. On or about January 20, 2007, someone purchased paintball supplies from Fort Dix Army Navy Store using a credit card issued on the account of QAD'R, Inc., d/b/a National Roofing.

2. The purchase consisted of six (6) cases of Paintballs @ $36.99 and the fill up of ten (10) tanks of air for the paintball guns.

## 14.  IMPEACHMENT OF WITNESS – PRIOR BAD ACTS (F.R.E. 608(b))

You have heard evidence that Mahmoud Omar and Besnik Bakalli, two witnesses,

admitted that they committed improper acts which you heard about during the testimony.  You

may consider this evidence, along with other pertinent evidence, only in deciding whether to

believe Mr. Omar and Mr. Bakalli and how much weight to give their testimony.

## 15.  IMPEACHMENT OF WITNESS – PRIOR CONVICTION (F.R.E. 609)

You heard evidence that Mahmoud Omar was previously convicted of a crime punishable by more than one year in jail.  You may consider this evidence, along with other pertinent evidence, in deciding whether or not to believe Mr. Omar and how much weight to give his testimony.

21

## 16. SPECIFIC INVESTIGATION TECHNIQUES NOT REQUIRED

During the trial you heard testimony of witnesses that the Government did not use specific investigative techniques. You may consider these facts in deciding whether the Government has met its burden of proof. However, there is no legal requirement that the Government use any of these specific investigative techniques or all possible techniques to prove its case.

Your concern, as I have said, is to determine whether or not the evidence admitted in this trial proves each defendant's guilt beyond a reasonable doubt with respect to each count with which each defendant is charged.

## 17.  USE OF HIDDEN RECORDING DEVICES AND SEARCHES

Some of the evidence presented to you was collected by the Government as a result of the use of hidden audio and video recording devices.  Other evidence was collected by the use of searches by law enforcement officers.  These are all lawful methods that the Government may employ in an investigation of suspected criminal activity.  Because these methods are lawful, you should disregard any opinions of your own about whether the method is proper.  You should treat the evidence collected as a result of the hidden recording devices and the searches just like any other evidence.

## 18. OPINION EVIDENCE (EXPERT WITNESSES)

The rules of evidence ordinarily do not permit witnesses to state their own opinions about important questions in a trial, but there are exceptions to these rules.

In this case, you heard testimony from a number of witnesses who offered opinions. Those witnesses, and the subjects of their opinion testimony, were as follows:

Richard Vasquez – Firearms operability

Issa Fakhoury – Arabic linguistics expert

Robert Antoon – Arabic linguistics expert

Ghassan Hajjar – Arabic linguistics expert

Bujar Taraku – Albanian linguistics expert

Donald J. Price – Computer forensic examiner

Scott Schillinger – Computer forensic examiner

Evan Kohlmann – Terrorism

Thomas Smith – Computer Science and Information Technology

Because of their knowledge, skill, experience, training, or education in their fields of expertise, they were permitted to offer opinions in that field and the reasons for those opinions.

The opinions these witnesses gave should receive whatever weight if any you think appropriate, given all the other evidence in the case. In weighing this opinion testimony you may consider the particular witness's qualifications, the reasons for the witness's opinions, and the reliability of the information supporting the witness's opinions, as well as the other factors discussed in these instructions for weighing the testimony of witnesses. You may disregard the opinions entirely if you decide that a particular witness's opinions were not based on sufficient

knowledge, skill, experience, training, or education. You may also disregard the opinions if you conclude that the reasons given in support of the opinions are not sound, or if you conclude that the opinions are not supported by the facts shown by the evidence, or if you think that the opinions are outweighed by other evidence, or any other reason you deem appropriate.

## 19. CREDIBILITY OF WITNESSES – LAW ENFORCEMENT OFFICER

You have heard the testimony of several law enforcement officers, including police officers and federal agents.  The fact that a witness is employed as a law enforcement officer does not mean that his testimony deserves more or less consideration or greater or lesser weight than that of any other witness.

You must decide, after reviewing all the evidence, whether you believe the testimony of each of the law enforcement witnesses and how much weight, if any, it deserves, just as you would with any other witness.

## 20. CREDIBILITY OF COOPERATING WITNESSES

You have heard evidence that two persons who testified as prosecution witnesses in this case, Mahmoud Omar and Besnik Bakalli, received and expect to receive certain benefits from the Government in exchange for testifying.

The testimony of such witnesses was received in evidence and may be considered by you. The Government is permitted to present the testimony of someone who has or will receive a benefit from the Government in exchange for his testimony, but you should consider the testimony of such witnesses with great care and caution. In evaluating the testimony of such witnesses, you should consider this factor along with the others I have called to your attention. Whether or not a witness's testimony may have been influenced by the Government's promise is for you to determine. You may give the testimony of such witnesses whatever weight you think it deserves.

27

## 21. PREPARATION OF WITNESSES

During the trial, you have heard testimony that the Assistant U.S. Attorneys and law enforcement agents interviewed certain Government witnesses in order to prepare them for trial. No adverse inference should be drawn from that conduct. Indeed, the Assistant U.S. Attorneys, defense counsel and the investigating law enforcement agents have a right, duty, and obligation to conduct such interviews, and to prepare this case as thoroughly as possible. They might have been derelict in the performance of their duties if they had not questioned the witnesses as the investigation progressed and during their preparation for this trial. Indeed, it would be negligent on the part of any lawyer not to interview or attempt to interview a witness whom he or she called to testify.

28

## 22. DEFENDANTS' CHOICE NOT TO TESTIFY

The defendants did not testify in this case.  A defendant has an absolute constitutional right not to testify.  The burden of proof remains with the prosecution throughout the entire trial and never shifts to the defendant.  The defendant is never required to prove that he is innocent.  You must not attach any significance to the fact that the defendants did not testify.  You must not draw any adverse inference against them because they did not take the witness stand.  Do not consider, for any reason at all, the fact that the defendants did not testify.  Do not discuss that fact during your deliberations or let it influence your decision in any way.

## 23. DEFENDANT'S PRIOR BAD ACTS OR CRIMES (F.R.E. 404(B))

You have heard testimony that defendant Mohamad Shnewer discussed the possibility of attacking civilian targets, such as the Philadelphia Airport, the White House, and the United States Capitol Building.

The defendants are not charged with conspiring or attempting to attack any civilian targets. This evidence of conduct that is not part of the criminal charges was admitted only for a limited purpose. You may consider this evidence only for the purpose of deciding whether the defendants had the intent to attack the military targets identified in the Indictment, such as Fort Dix. Do not consider this evidence for any other purpose. You may not consider this evidence as proof that the defendants have a bad character or any propensity to commit crimes. Specifically, you may not use this evidence to conclude that because the defendant may have committed the other act, they must also have committed the acts charged in the Indictment.

Of course, it is for you to determine whether you believe this evidence and, if you do believe it, whether you accept it for the purpose offered. You may give it such weight as you feel it deserves, but only for the limited purpose that I described to you.

Remember that the defendants are on trial here only for the charges set forth in the Indictment. Do not return a guilty verdict unless the Government proves the crimes charged in the Indictment beyond a reasonable doubt.

## 24. SUMMARY OF INDICTMENT

I shall explain the specific elements of the charges to you in detail.

## 25.  COUNT ONE - CONSPIRACY TO MURDER MEMBERS OF THE UNITED STATES UNIFORMED SERVICES, THE CHARGE

Count 1 of the Indictment charges that from on or about January 3, 2006 to on or about May 7, 2007 all five defendants conspired to kill officers and employees of the United States and of an agency in the Executive Branch of the United States Government, namely, members of the uniformed services, while such officers and employees were engaged in and on account of the performance of official duties, and persons assisting such officers and employees in the performance of such duties and on account of that assistance, contrary to Title 18, United States Code, Section 1114.

## 26. COUNT ONE - THE STATUTE

Title 18, United States Code, Section 1117 provides in pertinent part:

If two or more persons conspire to violate section . . . 1114 of this title, and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished.

Title 18, United States Code, Section 1114, provides:

Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished.

## 27. COUNT ONE - ELEMENTS OF THE OFFENSE

It is a federal crime for two or more persons to agree or conspire to commit any offense against the United States, even if they never actually achieve their objective. A conspiracy is a kind of criminal partnership.

In order for you to find any of the defendants guilty of conspiracy to commit murder of members of the uniformed services of the United States, you must find that the Government proved beyond a reasonable doubt each of the following three elements:

First: That two or more persons agreed to murder members of the uniformed services of the United States, as charged in the Indictment. I will explain the elements of murder of members of the uniformed services of the United States to you shortly;

Second: That the defendant you are considering knowingly and willfully joined the agreement or conspiracy knowing of its objective, to murder members of the uniformed services of the United States; and

Third: That at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.

I will explain each of these elements in more detail.

## 28. CONSPIRACY - SUCCESS IMMATERIAL

The Government is not required to prove that any of the members of the conspiracy were successful in achieving any or all of the objectives of the conspiracy. You may find the defendant you are considering guilty of conspiracy if you find that the Government proved beyond a reasonable doubt the elements I have explained, even if you find that the Government did not prove that any of the conspirators actually committed any other offense against the United States. Conspiracy is a criminal offense separate from the offense that was the objective of the conspiracy; conspiracy is complete without the commission of that offense.

## 29. CONSPIRACY – DURATION

A conspiracy ends when the objectives of the conspiracy have been achieved or when all members of the conspiracy have withdrawn from it.  However, a conspiracy may be a continuing conspiracy and if it is, it lasts until there is some affirmative showing that it has ended or that all its members have withdrawn.  A conspiracy may be a continuing one if the agreement includes an understanding that the conspiracy will continue over time.  Also, a conspiracy may have a continuing purpose or objective and, therefore, may be a continuing conspiracy.

## 30. COUNT ONE - FIRST ELEMENT, EXISTENCE OF THE AGREEMENT

The first element of the crime of conspiracy is the existence of an agreement. The Government must prove beyond a reasonable doubt that two or more persons knowingly and willfully arrived at a mutual understanding or agreement, either spoken or unspoken, to work together to achieve the overall objective of the conspiracy, to murder members of the uniformed services of the United States.

The Government does not have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding. The Government also does not have to prove that all the members of the conspiracy directly met, or discussed between themselves their unlawful objective, or agreed to all the details, or agreed to what the means were by which the objective would be accomplished. The Government is not even required to prove that all the people named in the Indictment were, in fact, parties to the agreement, or that all members of the alleged conspiracy were named, or that all members of the conspiracy are even known. The Government does not have to prove that the full conspiracy existed between January 3, 2006 and May 7, 2007. The Government only needs to prove beyond a reasonable doubt that the conspiracy existed at any time between January 3, 2006 and May 7, 2007. What the Government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at a unity of purpose, that is some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective. I instruct you however that a government informant cannot be a co-conspirator; therefore, there can be no conspiracy between one defendant and a government informant (that is, either Mahmoud Omar or Besnik Bakalli).

37

You may consider both direct evidence and circumstantial evidence in deciding whether the Government has proved beyond a reasonable doubt that an agreement or mutual understanding existed. You may but are not required to find the existence of a conspiracy based on evidence of related facts and circumstances which prove that the activities of the participants in a criminal venture could not have been carried out except as the result of a preconceived agreement, scheme, or understanding.

## 31. COUNT ONE - SECOND ELEMENT, MEMBERSHIP IN THE AGREEMENT

If you find that a criminal agreement or conspiracy existed, then in order to find a particular defendant guilty of conspiracy you must also find that the Government proved beyond a reasonable doubt that the defendant you are considering knowingly and willfully joined that agreement or conspiracy during its existence. The Government must prove that the defendant you are considering knew the goal or objective of the agreement or conspiracy and voluntarily joined it during its existence, intending to achieve the common goal or objective and to work together with the other alleged conspirators toward that goal or objective.

The Government need not prove that the defendant you are considering knew everything about the conspiracy or that he knew everyone involved in it, or that he was a member from the beginning. The Government also does not have to prove that the defendant you are considering played a major or substantial role in the conspiracy.

You may consider both direct evidence and circumstantial evidence in deciding whether the defendant you are considering joined the conspiracy, knew of its criminal objective, and intended to further the objective. Evidence which shows that the defendant you are considering only knew about the conspiracy, or only kept "bad company" by associating with members of the conspiracy, or was only present when it was discussed or when a crime was committed, is not sufficient to prove that the defendant you are considering was a member of the conspiracy even if the defendant you are considering approved of what was happening or did not object to it. Likewise, evidence showing that the defendant you are considering may have done something that happened to help a conspiracy does not necessarily prove that he joined the conspiracy. You may, however, consider this evidence, with all the other evidence, in deciding whether the

Government proved beyond a reasonable doubt that the defendant you are considering joined the

conspiracy.

## 32. COUNT ONE - MENTAL STATES FOR CONSPIRACY

In order to find a particular defendant guilty of conspiracy you must find that the Government proved beyond a reasonable doubt that the defendant you are considering knowingly and willfully joined the conspiracy, knowing of its objective and intending to help further or achieve that objective. That is, the Government must prove: (1) that the defendant you are considering knew of the objective or goal of the conspiracy, (2) that the defendant you are considering joined the conspiracy intending to help further or achieve that goal or objective, and (3) that the defendant you are considering and at least one other alleged conspirator shared a unity of purpose toward that objective or goal.

You may consider both direct evidence and circumstantial evidence, including the words, conduct, or lack of conduct of the defendant you are considering, and other facts and circumstances, in deciding whether the defendant you are considering had the required knowledge and intent.

## 33. DEFINITION OF "KNOWINGLY"

The offense of conspiracy to murder members of the United States uniformed services charged in the Indictment requires that the Government prove that the defendant you are considering acted "knowingly" with respect to the second element of the offense. This means that the Government must prove beyond a reasonable doubt that a particular defendant was conscious and aware of the nature of his actions and of the surrounding facts and circumstances, as specified in the definition of the offense charged.

In deciding whether a particular defendant acted "knowingly," you may consider evidence about what that defendant said, what he did and failed to do, how he acted, and all the other facts and circumstances shown by the evidence that may prove what was in his mind at that time.

The requirement of acting knowingly applies to certain other counts in the indictment. When I instruct you that another count requires proof that the defendant acted knowingly, the definition of that term provided here applies to that other count as well.

42

## 34. DEFINITION OF "WILLFULLY"

The offense of conspiracy to murder members of the United States uniformed services charged in the Indictment requires the Government to prove that the defendants acted "willfully" with respect to the second element of that offense.  This means the Government must prove beyond a reasonable doubt that the defendant you are considering knew his conduct was unlawful and intended to do something that the law forbids.  That is, to find that a particular defendant acted "willfully," you must find that the evidence proved beyond a reasonable doubt that the defendant  acted with a purpose to disobey or disregard the law.  "Willfully" does not, however, require proof that a defendant  had any evil motive or bad purpose other than the purpose to disobey or disregard the law.

"Willfully" does not require proof that the actor knew of the existence and meaning of the statute making his conduct criminal.

The requirement of acting willfully applies to certain other counts in the indictment.  When I instruct you that another count requires proof that the defendant acted willfully, the definition of that term provided here applies to that other count as well.

43

## 35. PROOF OF REQUIRED STATE OF MIND

Often the state of mind with which a person acts at any given time cannot be proved directly, because one cannot read another person's mind and tell what he or she is thinking. However, a defendant's state of mind can be proved indirectly from the surrounding circumstances. Thus, to determine a particular defendant's state of mind at a particular time, you may consider evidence about what that defendant said, what he did and failed to do, how he acted, and all the other facts and circumstances shown by the evidence that may prove what was in that defendant's mind at that time. It is entirely up to you to decide what the evidence presented during this trial proves, or fails to prove, about a particular state of mind.

You may also consider the natural and probable results or consequences of any acts that a particular defendant knowingly did, and whether it is reasonable to conclude that he intended those results or consequences. You may find, but you are not required to find, that a particular defendant knew and intended the natural and probable consequences or results of acts he knowingly did. This means that if you find that an ordinary person in a defendant's situation would have naturally realized that certain consequences would result from his actions, then you may find, but you are not required to find, that the defendant did know and did intend that those consequences would result from his actions. This is entirely up to you to decide as the finders of the facts in this case.

## 36. MOTIVE EXPLAINED

Motive is not an element of the offense with which any of the defendants are charged. Proof of bad motive is not required to convict. Further, proof of bad motive alone does not establish that a defendant is guilty and proof of good motive alone does not establish that the defendant is not guilty. Evidence of a defendant's motive may, however, help you find the defendant's intent.

Intent and motive are different concepts. Motive is what prompts a person to act. Intent refers only to the state of mind with which the particular act is done.

Personal advancement and financial gain, for example, are typical motives for much of human conduct. Here, the Government claims that religious or political principles supplied the defendants with a motive to engage in this particular conduct. However, these motives may prompt one person to intentionally do something perfectly acceptable while prompting another person to intentionally do an act that is a crime.

45

## 37. COUNT ONE - THIRD ELEMENT, OVERT ACTS

With regard to the fourth element of conspiracy  overt acts – the Government must prove beyond a reasonable doubt that during the existence of the conspiracy at least one member of the conspiracy performed at least one of the overt acts described in the Indictment, for the purpose of furthering or helping to achieve the objective of the conspiracy.

The Indictment alleges certain overt acts. The Government does not have to prove that all of these acts were committed or that any of these acts were themselves illegal. Also, the Government does not have to prove that the defendant you are considering personally committed any of the overt acts. The Government must prove beyond a reasonable doubt that at least one member of the conspiracy committed at least one of the overt acts alleged in the Indictment and committed it during the time that the conspiracy existed, for the purpose of furthering or helping to achieve the objective of the conspiracy. You must unanimously agree on which overt act, or acts were committed.

The overt acts alleged in Count 1 of the indictment are as follows:

(a)  In or about the week of January 3, 2006, MOHAMAD IBRAHIM SHNEWER, DRITAN DUKA, ELJVIR DUKA, SHAIN DUKA and SERDAR TATAR engaged in firearms training in Gouldsboro, Pennsylvania.

(b)  In or about the week of January 3, 2006, SERDAR TATAR purchased the Mossberg shotgun in Pennsylvania.

(c)  On or about April 28, 2006, MOHAMAD IBRAHIM SHNEWER provided a DVD to COOPERATING WITNESS-1, an individual SHNEWER believed shared his violent jihadist philosophy. The DVD, upon which SHNEWER had written "DVD Islam," displayed

46

violent jihadist images as the narrator attempted to recruit the viewer to engage in jihadist activities.

(d)     On or about May 26, 2006, MOHAMAD IBRAHIM SHNEWER provided his laptop computer to COOPERATING WITNESS-1 in order for COOPERATING WITNESS-1 to view an al Qaeda recruitment video which featured speeches by, among others, Usama Bin Laden and Sheikh Omar Abdal Rahman, as well as a video which glorified the terrorist attacks of September 11, 2001.

(e)     On or about July 29, 2006, MOHAMAD IBRAHIM SHNEWER showed COOPERATING WITNESS-2, an individual SHNEWER believed shared his violent jihadist philosophy, videos depicting armed attacks on United States military personnel.

(f)     On or about August 1, 2006, SERDAR TATAR transferred his ownership of two weapons, namely the Mossberg shotgun and the Beretta rifle, to a third party in order to prevent those weapons from being traced to TATAR or other members of the conspiracy.

(g)     On or about August 11, 2006, MOHAMAD IBRAHIM SHNEWER conducted surveillance of the United States Army Base at Fort Dix and McGuire Air Force Base.

(h)     On or about August 11, 2006, MOHAMAD IBRAHIM SHNEWER conducted surveillance of the United States Army Base at Fort Monmouth.

(i)     On or about August 11, 2006, MOHAMAD IBRAHIM SHNEWER conducted surveillance of the Lakehurst Naval Air Station.

(j)     On or about August 13, 2006, MOHAMAD IBRAHIM SHNEWER conducted surveillance of the Dover Air Force Base.

(k)     On or about August 13, 2006, MOHAMAD IBRAHIM SHNEWER conducted

surveillance of the United States Coast Guard Base in Philadelphia, Pennsylvania.

(l)     On or before November 28, 2006, SERDAR TATAR acquired a map of the United States Army Base at Fort Dix, labeled "Cantonment Area Fort Dix, NJ," knowing the map was to be used by members of the conspiracy to plan and coordinate an attack on Fort Dix.

(m)     On or about November 28, 2006, SERDAR TATAR provided the map of Fort Dix to COOPERATING WITNESS-1, intending that the map be used by members of the conspiracy to plan and coordinate an attack on Fort Dix.

(n)     On or about December 3, 2006, SERDAR TATAR cautioned MOHAMAD IBRAHIM SHNEWER against placing too much trust in COOPERATING WITNESS-1.

(o)     On or about December 7, 2006, SERDAR TATAR falsely stated to law enforcement officers that he had never provided a map of Fort Dix to anyone.

(p)     On or about December 29, 2006, MOHAMAD IBRAHIM SHNEWER took possession of the map of Fort Dix from COOPERATING WITNESS-1 and hid the map in a secret location.

(q)     On or about January 31, 2007, DRITAN DUKA, ELJVIR DUKA and SHAIN DUKA collected weapons, including the Mossberg shotgun, the Beretta rifle, the Yugoslavian SKS semiautomatic rifle, and the Beretta pistol to be used during firearms training in Pennsylvania.

(r )     On or about February 1, 2007, DRITAN DUKA, ELJVIR DUKA and SHAIN DUKA traveled by car from New Jersey to Pennsylvania to engage in firearms training.

(s)     On or about February 2, 2007, DRITAN DUKA, SHAIN DUKA and ELJVIR DUKA engaged in firearms training in Gouldsboro, Pennsylvania.

48

(t)     On or about February 4, 2007, MOHAMAD IBRAHIM SHNEWER traveled by car to Gouldsboro, Pennsylvania to engage in firearms training.

(u)     On or about February 4, 2007, MOHAMAD IBRAHIM SHNEWER, DRITAN DUKA, ELJVIR DUKA and SHAIN DUKA viewed terrorist training DVDs and videos depicting, among other things, the death and dismemberment of United States military personnel.

(v)     On or about February 5, 2007, MOHAMAD IBRAHIM SHNEWER, DRITAN DUKA, SHAIN DUKA and ELJVIR DUKA engaged in firearms training in Gouldsboro, Pennsylvania.

(w)     On or about February 26, 2007, DRITAN DUKA and ELJVIR DUKA engaged in tactical training in Cherry Hill, New Jersey using paint-ball guns and equipment.

(x)     On or about March 15, 2007, DRITAN DUKA and SHAIN DUKA engaged in tactical training in Cherry Hill, New Jersey using paint-ball guns and equipment.

(y)     On or about March 15, 2007, DRITAN DUKA gave COOPERATING WITNESS-1 a business card, on the back of which DUKA had written "A-K 47 Kalichnikov," a Russian-made semiautomatic and/or fully automatic assault weapon, indicating the type of weapons DUKA wanted to acquire.

(z)     On or about March 16, 2007, MOHAMAD IBRAHIM  SHNEWER told COOPERATING WITNESS-1 that he wanted to purchase an AK-47 semiautomatic and/or fully automatic assault weapon.

(aa)     On or about March 28, 2007, DRITAN DUKA reviewed a list of weapons, which included AK-47 Kalishnikov semiautomatic assault weapons and M-16 machine guns, purportedly for sale by an individual he believed to be a black market weapons

49

dealer.

    (bb)    On or about April 6, 2007, DRITAN DUKA agreed to purchase multiple AK-47 Kalishnikov semiautomatic assault weapons, M-16 fully automatic machine guns, and four handguns, from an individual he believed to be a black market weapons dealer.

    (cc)    On or about April 27, 2007, MOHAMAD IBRAHIM SHNEWER agreed to purchase an AK-47 Kalishnikov semiautomatic assault weapon from an individual he believed to be a black market weapons dealer.

    (dd)    On or about May 7, 2007, DRITAN DUKA and SHAIN DUKA traveled to a location in Cherry Hill, New Jersey to take possession of the three AK-47 Kalishnikov semiautomatic assault weapons, the four M-16 fully automatic machine guns, and the four handguns ordered by DRITAN DUKA on April 6, 2007.

## 38. COUNT ONE - UNDERLYING OFFENSE, MURDER OF MEMBERS OF THE UNIFORMED SERVICES

As I stated earlier, the object or goal of the alleged conspiracy was the crime of murder of members of the uniformed services of the United States. Because the defendants are not charged with murder, and indeed because no murder was committed, the Government does not of course have to prove that the defendants committed any such murder. Nevertheless, in order for you to properly consider the charge of conspiracy to murder members of the United States uniformed services, I must instruct you about the elements of that crime. The Government is not required to prove those elements in this case, but the Government is required to prove that each of the defendants entered into an agreement to commit that crime.

The crime of murder of members of the United States uniformed services has four elements:

One, the defendant unlawfully caused the death of one or more members of the uniformed services of the United States;

Two, the defendant did so with malice aforethought and not in the heat of passion;

Three, the killing or killings were premeditated; and

Four, the victim or victims were killed while engaged in his/her official duties, or on account of the performance of his/her official duties as a member of the uniformed armed services of the United States.

The defendant does not have to know that the victim was a member of the uniformed services of the United States.

51

### 39. COUNT ONE - MALICE AFORETHOUGHT

As used in these instructions, the term "malice aforethought" means either to kill another person deliberately and intentionally or to act with callous and wanton disregard for human life.

## 40. COUNT ONE - PREMEDITATION

As used in these instructions, the word "premeditation" means with planning or deliberation.  The passage of time is a factor which you may consider in attempting to determine if a defendant acted with "premeditation."  The amount of time needed for premeditation of a killing can depend on the person and the circumstances.  The time must be long enough after forming the intent to kill, however, for the killer to have been fully conscious of the intent and to have considered the killing.

That concludes my instructions regarding the crime of murder of members of the United States uniformed services.  I will now give you additional instructions regarding the crime of conspiracy.

## 41.  CONSPIRACY – ACTS AND STATEMENTS OF CO-CONSPIRATORS

Evidence has been admitted in this case that certain defendants or other persons who are alleged to be co-conspirators of the defendants did or said certain things.  The acts or statements of any member of a conspiracy are treated as the acts or statements of all the members of the conspiracy, if these acts or statements were performed or spoken during the existence of the conspiracy and to further the objectives of the conspiracy.

Therefore, you may consider as evidence against any of the defendants any acts done or statements made by any members of the conspiracy, during the existence of and to further the objectives of the conspiracy.  You may consider these acts and statements even if they were done and made in a particular defendant's  absence and without his knowledge.  As with all the evidence presented in this case, it is for you to decide whether you believe this evidence and how much weight if any to give it.

Acts done or statements made by an alleged co-conspirator before a particular defendant joined the alleged conspiracy may also be considered by you as evidence against that defendant.  However, acts done or statements made before the alleged conspiracy began or after it ended may only be considered by you as evidence against the person who performed that act or made that statement.

## 42. COUNT TWO - ATTEMPTED MURDER OF MEMBERS OF THE UNIFORMED SERVICES, THE CHARGE

Count 2 of the Indictment charges that all five defendants, from on or about January 3, 2006 to on or about May 7, 2007, did knowingly and willfully attempt to kill officers and employees of the United States and of an agency in the Executive Branch of the United States Government, namely, members of the uniformed services, while such officers and employees were engaged in and on account of the performance of official duties, and persons assisting such officers and employees in the performance of such duties and on account of that assistance.

In violation of Title 18, United States Code, Section 1114, and Title 18, United States Code, Section 2.

## 43. COUNT TWO - THE STATUTE

Title 18, United States Code, Section 1114 provides:

Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished.

## 44. COUNT TWO - CRIMINAL ATTEMPT - ELEMENTS

A criminal attempt to commit the crime of murder of members of the United States uniformed services may occur even though the defendant did not actually complete that crime.

In order to find a particular defendant guilty of attempt to murder members of the uniformed services, you must find that the Government proved beyond a reasonable doubt each of the following two elements:

First: That the defendant you are considering intended to commit the crime of murder of members of the United States uniformed services, as I have previously defined that offense; and

Second: That the defendant you are considering knowingly and willfully performed an act constituting a substantial step toward the commission of the crime of murder of members of the United States uniformed services, which strongly corroborates or confirms that defendant intended to commit that crime.

With respect to the first element of attempt, you may not find any defendant guilty of attempt to commit murder of members of the United States uniformed services merely because he thought about it. You must find that the evidence proved beyond a reasonable doubt that a particular defendant's mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, you may not find any defendant guilty of attempt to commit murder of members of the United States uniformed services merely because he made some plans to or some preparation for committing that crime. Instead, you must find that a particular defendant took some firm, clear, undeniable action to accomplish his intent to commit murder of members of the uniformed services. However, the substantial step element

57

does not require the Government to prove that the defendant did everything except the last act

necessary to complete the crime.

**45. COUNT TWO - UNDERLYING OFFENSE, MURDER OF MEMBERS OF THE UNIFORMED SERVICES**

In my instructions regarding Count 1, conspiracy to murder members of the United States uniformed services, I gave you instructions about the crime that was the object or goal of the conspiracy, murder of members of the uniformed services. In Count 2, the crime that the defendants allegedly attempted to commit is the same crime that they allegedly conspired to commit in Count 1. My instructions for Count 1 regarding the crime of murder of members of the uniformed services are equally applicable to the crime of attempted murder charged in Count 2.

## 46.  COUNTS THREE AND FOUR - POSSESSION AND ATTEMPTED POSSESSION OF A FIREARM IN FURTHERANCE OF A CRIME OF VIOLENCE - THE CHARGES

Counts 3 and 4 of the Indictment charge different defendants with slightly different versions of the offense of possession of a firearm in furtherance of a crime of violence.  In particular, Count 3 charges that defendants Dritan Duka, Eljvir Duka, and Shain Duka did knowingly and willfully possess and attempt to possess firearms, namely,

one Colt Model M16A1, .223 caliber, machine gun, serial number 4442140;

one Colt Model M16A1, .223 caliber, machine gun, serial number 5442530;

one Colt Model M16A1, .223 caliber, machine gun, serial number 9463259;

one Colt Model M16A1, .223 caliber, machine gun, serial number 9504441;

one Polytech, Model AKS-762, 7.62x39 millimeter caliber, semiautomatic rifle, serial number PS87–762-0919;

one Norinco, Model AK47, 7.62x39 millimeter caliber, semiautomatic rifle, serial number 56-202945; and,

one Norinco, Model AK47, 7.62x39 millimeter caliber, semiautomatic rifle, serial number 604820;

in furtherance of a crime of violence for which the person may be prosecuted in a court of the United States, namely, the conspiracy to murder members of the United States military, contrary to Title 18, United States Code, Section 1114, in violation of Title 18, United States Code, Section 1117, as charged in Count 1 of the Indictment, and the attempted murder of members of the United States military, in violation of Title 18, United States Code, Section 1114, and Title 18, United States Code, Section 2, as charged in Count 2 of the Indictment.

In violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(1)(B)(ii), and Title 18, United States Code, Section 2.

Count 4 of the Indictment charges that from on or about March 16, 2007 to on or about May 7, 2007, defendant Mohamad Shnewer alone did knowingly and willfully attempt to possess firearms, namely, one AK-47 machine gun and/or semiautomatic assault weapon, in furtherance of a crime of violence for which the person may be prosecuted in a court of the United States, namely, the conspiracy to murder members of the United States military, contrary to Title 18, United States Code, Section 1114, in violation of Title 18, United States Code, Section 1117, as charged in Count 1 of the Indictment, and the attempted murder of members of the United States military, in violation of Title 18, United States Code, Section 1114, and Title 18, United States Code, Section 2, as charged in Count 2 of the Indictment.

In violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(1)(B)(ii), and Title 18, United States Code, Section 2.

## 47. COUNTS THREE AND FOUR - THE STATUTE

Title 18 of the United States Code, Section §924(c)(1)(A) provides in part:

[A]ny person who . . . in furtherance of any [crime of violence . . . for which the person may be prosecuted in a court of the United States], possesses a firearm, shall [be punished].

## 48. COUNTS THREE AND FOUR - ELEMENTS OF THE OFFENSES

In order to find a defendant guilty of Counts 3 or 4, you must find that the Government proved each of the following three elements beyond a reasonable doubt with respect to that defendant:

First:  That the defendant you are considering committed either the crime of conspiracy to murder members of the United States uniformed services as charged in Count 1 of the Indictment, or the crime of attempted murder of members of the United States uniformed services, as charged in Count 2 of the Indictment; and

Second:  That with respect to Count 3, the defendant you are considering knowingly possessed or attempted to possess a firearm in furtherance of this crime, and with respect to Count 4, that defendant Mohamad Shnewer knowingly attempted to possess a firearm in furtherance of this crime.

Third:  If you find the defendant you are considering knowingly possessed or knowingly attempted to possess the firearm, you must consider whether the possession or attempted possession was in furtherance of the crimes charged in Count 1 or Count 2 of the Indictment.

63

## 49. COUNT THREE - SECOND ELEMENT - KNOWING POSSESSION OF A FIREARM

With respect the second element of Count 3, the Government must prove that the defendant you are considering knowingly possessed or knowingly attempted to possess a particular firearm described in the Indictment. Knowing possession of a firearm means that the defendant you are considering possessed the firearm purposely and voluntarily, and not by accident or mistake. It also means that the defendant you are considering knew the object was a firearm.

To "possess" means to have something within a person's control. The Government does not have to prove that the defendant you are considering physically held the firearm, that is, had actual possession of it. As long as the firearm was within that defendant's control, he possessed it. If you find that the defendant you are considering either had actual possession of the firearm or had the power and intention to exercise control over it, even though it was not in that defendant's physical possession - that is, that defendant had the ability to take actual possession of the object when he wanted to do so - you may find that the Government has proven possession. Possession may be momentary or fleeting.

The law also recognizes that possession may be sole or joint. If one person alone possesses a firearm, that is sole possession. However, more than one person may have the power and intention to exercise control over a firearm. This is called joint possession. If you find that the defendant you are considering had such power and intention, then he possessed the firearm even if he possessed it jointly with another.

On the other hand, mere proximity to the firearm or mere presence on the property where it is located or mere association with the person who does control the firearm or the property, is

insufficient to support a finding of possession.

Proof of ownership of the firearm is not required.

## 50. "FIREARM" DEFINED

For purposes of Counts 3, 4, 6 and 7 of the Indictment, the term "firearm" means any weapon which is designed to, or may readily be converted to, expel a projectile by the action of an explosive; and the term includes the frame or receiver of any such weapon.

The term "ammunition" means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm.

## 51. COUNTS THEE AND FOUR, SECOND ELEMENT - KNOWING ATTEMPTED POSSESSION OF A FIREARM

With respect to Counts 3 and 4, in order to find a particular defendant guilty of knowing attempted possession of a particular firearm as the second element of Counts 3 or 4, you must find that the defendant you are considering intended to possess the firearm, and that the defendant also knowingly and willfully performed an act constituting a substantial step towards the possession of the firearm. My instructions for Count 2 regarding proof of the intent to do a certain thing and regarding a substantial step apply to the knowing attempted possession of a firearm for purposes of the charges in Counts 3 and 4.

## 52. COUNT THREE - FORESEEABLE POSSESSION OF A FIREARM BY A CO-CONSPIRATOR

Even though a particular defendant did not personally possess the firearm, that defendant may be found guilty of violating § 924(c) if you find that a co-conspirator knowingly possessed a firearm during and in relation to the conspiracy, in furtherance of or as a natural, foreseeable consequence of the conspiracy, and that the defendant you are considering was a member of the conspiracy at the time.

## 53. COUNTS THREE AND FOUR - "IN FURTHERANCE OF" DEFINED

Possession or attempted possession "in furtherance of" means for the purpose of assisting in, promoting, accomplishing, advancing, or achieving the goal or objective of either conspiracy to murder members of the United States uniformed services as charged in Count 1 of the indictment, or attempted murder of members of the uniformed services as charged in Count 2 of the Indictment.

Mere presence of a firearm at the scene of a crime is not enough to find possession in furtherance of the charged conspiracy or the charged attempted murder. The firearm's presence may be coincidental or entirely unrelated to the underlying crimes. Some factors that may help you determine whether possession of a firearm furthers the charged crimes of violence include, but are not limited to:

1. the type of criminal activity that is being conducted;

2. accessibility of the firearm;

3. the type of firearm;

4. whether the defendant possesses the firearm legally or illegally;

5. whether the firearm is loaded; and

6. the time and circumstances under which the firearm is found.

## 54. COUNT FIVE - THE CHARGE

Count 5 of the Indictment charges defendants Dritan Duka and Shain Duka with knowingly possessing and attempting to possess machine guns, namely,

one Colt Model M16A1, .223 caliber, machine gun, serial number 4442140;

one Colt Model M16A1, .223 caliber, machine gun, serial number 5442530;

one Colt Model M16A1, .223 caliber, machine gun, serial number 9463259; and,

one Colt Model M16A1, .223 caliber, machine gun, serial number 9504441.

In violation of Title 18, United States Code, Section 922(o), and Title 18, United States Code, Section 2.

## 55. COUNT FIVE - THE STATUTE

Title 18, United States Code, Section 922(o)(1), makes it a Federal crime or offense for anyone to possess a machine gun.

Title 26, United States Code, Section 5845(b), defines a "machine gun" as any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.

The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person.

## 56. COUNT FIVE - ELEMENTS OF THE OFFENSE

In order to convict either Dritan Duka or Shain Duka on Count 5, the United States must prove the following facts beyond a reasonable doubt as to the particular defendant:

First:  That the defendant knowingly possessed or knowingly attempted to possess a "machine gun," as defined above; and

Second:  That the defendant knew, or was aware of, the essential characteristics of the firearm which made it a "machine gun" as defined above.

## 57. COUNT FIVE – KNOWING POSSESSION AND KNOWING ATTEMPTED POSSESSION OF A MACHINE GUN

To establish the second element of the offense, the Government must prove that the defendant you are considering knowingly possessed or knowingly attempted to possess a machine gun identified in the Indictment.  My definitions of the terms  "knowing possession" and "attempted knowing possession" regarding the offenses charged in Counts 3 and 4 of the Indictment applies equally to Count 5 of the Indictment.

## 58. COUNTS SIX AND SEVEN - THE CHARGES

Counts 6 and 7 of the Indictment each charge a particular group of defendants with the possession and attempted possession of a firearm by an illegal alien.  Count 6 of the Indictment charges defendants Dritan Duka and Shain Duka as follows:

On or about May 7, 2007, in Camden County, in the District of New Jersey and elsewhere, the defendants Dritan Duka and Shain Duka, being aliens who were illegally and unlawfully in the United States, did knowingly possess and attempt to possess in and affecting commerce firearms, namely,

one Colt Model M16A1, .223 caliber, machine gun, serial number 4442140;

one Colt Model M16A1, .223 caliber, machine gun, serial number 5442530;

one Colt Model M16A1, .223 caliber, machine gun, serial number 9463259;

one Colt Model M16A1, .223 caliber, machine gun, serial number 9504441;

one Polytech, Model AKS-762, 7.62X39 millimeter caliber, semiautomatic rifle, serial number PS87-762-0919;

one Norinco, Model AK47, 7.62X39 millimeter caliber, semiautomatic rifle, serial number 56-202945; and,

one Norinco, Model AK47, 7.62X39 millimeter caliber, semiautomatic rifle, serial number 604820.

In violation of Title 18, United States Code, Section 922(g)(5), and Title 18, United States Code, Section 2.

Count 7 of the Indictment charges defendants Dritan Duka, Eljvir Duka, and Shain Duka as follows:

From on or about January 31, 2007 to on or about February 1, 2007, in Camden County, in the District of New Jersey and elsewhere, the defendants Dritan Duka, Eljvir Duka, and Shain Duka, being aliens who were illegally and unlawfully in the United States, did knowingly possess in and affecting commerce ammunition and firearms, namely,

one Mossberg, Model 500, 12 gauge, pump action shotgun, serial number P380768;

one Beretta, Model CX4 Storm, 9 millimeter caliber rifle, serial number CX02876;

one Yugoslavian Model SKS, 7.62X39 millimeter caliber, semiautomatic rifle, serial number F-151946; and,

one Beretta, Model 92FS, 9 millimeter caliber pistol, serial number BER341463.

In violation of Title 18, United States Code, Section 922(g)(5), and Title 18, United States Code, Section 2.

## 59. COUNTS SIX AND SEVEN - THE STATUTE

Title 18, United States Code, Section 922(g) reads as follows:

(g) It shall be unlawful for any person--

      (5) who, being an alien--

            (A) is illegally or unlawfully in the United States

    to . . . possess in or affecting commerce, any firearm

76

## 60. COUNTS SIX AND SEVEN - ELEMENTS OF THE OFFENSE

In order to convict either Dritan Duka or Shain Duka on Count 6, the United States must prove the following facts beyond a reasonable doubt as to the particular defendant:

First:  That the defendant you are considering knowingly possessed or knowingly attempted to possess a firearm identified in the Indictment in or affecting interstate commerce, as charged; and

Second:  That before the defendant you are considering  possessed or attempted to possess the firearm the defendant was an alien who was illegally or unlawfully in the United States.

## 61. COUNTS SIX AND SEVEN - KNOWING POSSESSION AND ATTEMPTED KNOWING POSSESSION OF A FIREARM

In my instructions regarding the charges in Counts 3 and 4 of the Indictment, I explained the elements of "knowing possession of a firearm" and "knowing attempted possession of a firearm." I instruct you that those explanations apply equally to the charges in Counts 6 and 7 of the Indictment.

## 62. COUNTS SIX AND SEVEN - FIREARM THAT TRAVELED IN INTERSTATE OR FOREIGN COMMERCE

The Government must prove beyond a reasonable doubt that the firearms specified in Counts 6 and 7 of the Indictment were in or affecting interstate or foreign commerce. This means that the Government must prove that at some time before or during a particular defendant's possession of a particular firearm, the firearm had traveled in interstate or foreign commerce.

It is sufficient for the Government to satisfy this element by proving that at any time prior to the date charged in the Indictment, or on or about the date charged in the Indictment, the firearm crossed a state line or the border of the United States. The Government does not need to prove that the defendant under consideration himself carried it across a border, or to prove who carried it across or how it was transported. It is also not necessary for the Government to prove that the defendant knew that the firearm had traveled in interstate or foreign commerce.

In this regard, there has been evidence that the firearm in question was manufactured in a state other than New Jersey or in a foreign country. You are permitted to infer from this fact that the firearm traveled in interstate or foreign commerce; however, you are not required to do so.

79

## 63. COUNTS SIX AND SEVEN - ALIENS UNLAWFULLY AND ILLEGALLY IN THE UNITED STATES

An alien is "any person not a citizen or national of the United States." The term "national of the United States" includes not only a citizen, but also a person who, though not a citizen of the United States, owes permanent allegiance to the United States.

Aliens who are unlawfully or illegally in the United States includes any alien who unlawfully or illegally entered the United States without being admitted by an immigration officer.

If an alien is illegally or unlawfully in the United States, his mere filing of an application to obtain lawful permanent residence status in the United States does not make his presence in the United States legal and or lawful. Similarly, the filing of an application for asylum does not alter the status of an alien who is illegally or unlawfully in the United States while the application is pending review.

## 64. ACCOMPLICE LIABILITY: AIDING AND ABETTING (18 U.S.C. § 2(a))

Counts 2 through 6 of the Indictment charge each of the defendants charged in those counts under Section 2 of Title 18 of the United States Code.  Section 2 of Title 18 provides as follows:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

With respect to Section 2(a), a person may be guilty of an offense because he personally committed the offense himself or because he aided and abetted another person in committing the offense.  A person who has aided and abetted another person in committing an offense is often called an accomplice.  The person whom the accomplice aids and abets is known as the principal.

In this case, the Government alleges that, with respect to each of Counts 2 through 6, the particular defendants charged in a particular count aided and abetted the other defendants charged in that count.  For instance, in Count 2 of the Indictment, all five defendants are charged as both principals and as accomplices.  In order to find a particular defendant guilty of an offense with which he is charged because he aided and abetted another defendant in committing that offense, you must find that the Government proved beyond a reasonable doubt each of the following four requirements with respect to the alleged accomplice:

81

First:  That another defendant was a principal in the offense, which means that he committed the particular offense under consideration by committing each of the elements of that offense charged, as I have explained those elements to you in these instructions.

Second:  That the defendant you are considering as a possible accomplice knew that the offense under consideration was going to be committed or was committed by the principal,

Third:  That the defendant you are considering as a possible accomplice did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the offense under consideration and with the intent that the principal commit the offense, and

Fourth:  That the defendant you are considering as a possible accomplice did, in some way, aid, assist, facilitate, encourage the principal to commit the offense.  The Government is not required to prove that the acts of an  accomplice were themselves be against the law.

Evidence that a defendant was merely present during the commission of an offense is not enough for you to find him  guilty as an accomplice.  In addition, if the evidence shows that a defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was that defendant's intent and purpose to aid,

82

assist, encourage, facilitate or otherwise associate himself with the offense, you may not find that defendant guilty of the offense as an accomplice. The Government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by the principal as something the defendant wished to bring about and to make succeed.

## 65. CAUSING THE CRIMINAL ACTS OF ANOTHER (18 U.S.C. § 2(b))

With respect to Section 2(b) of Title 18, a person may be guilty of an offense because he personally committed the offense himself or because he willfully caused another person to commit acts which would constitute the offense if the acts had been performed by that person directly.

In this case, each of the defendants charged in Counts 2 through 6 are alleged to have committed the offenses charged in those counts because he is alleged to have caused another defendant to commit the acts which would constitute the offenses charged in those counts if the acts had been performed by that defendant directly. To find a defendant guilty of a particular offense charged in Counts 2 through 6 because he caused another defendant to commit the acts constituting that offense, you need not find that defendant committed any of the acts himself. You must, however, find that the Government proved beyond a reasonable doubt each of the following three requirements:

First: That acts constituting the offense charged were committed by another defendant;

Second: That the defendant under consideration had the mental state required for the offense that he caused the other defendant to commit; and

Third: That the defendant under consideration willfully caused the other defendant to commit the acts constituting the offense under consideration. To find that a particular defendant "caused" this other person to commit those acts, you must find that the Government proved beyond a

84

reasonable doubt that the defendant under consideration brought about those acts.

As I stated, the Government must prove beyond a reasonable doubt that another defendant committed the acts constituting the offense.  However, it is not necessary for you to find that the other defendant is himself guilty of the offense as a matter of criminal law.  For example, there may be a situation in which a person commits all of the acts which comprise a federal crime, but is not responsible for the crime because of, for example, mental impairment or youth, or is not guilty of the crime because he or she acted innocently, and did not have the mental state required to commit that crime.  Nevertheless, the defendant under consideration may be guilty of causing that crime, under the instructions I have given to you, where that defendant did intend that the crime be committed and willfully caused the criminal acts to be committed by another person.

## 66. ENTRAPMENT

Mohamad Shnewer and only Mohamad Shnewer has raised as one defense that he was entrapped by Mahmoud Omar, an agent of the Government, to commit the offenses charged in the indictment. A defendant may not be convicted of a crime if he was entrapped by the Government to do the acts or crimes charged. Entrapment occurs when a person who was not predisposed to commit the crime does so as a result of the Government agent's inducement. The Government is permitted to use undercover operations, deception, and other means of providing opportunities for an unwary criminally-minded person to commit a crime, but the law does not permit the Government to induce an unwary innocent person into committing a criminal offense.

The defense of entrapment includes two inquiries:

First, did the Government induce Mohamad Shnewer to commit the offense(s)?

Second, was Mohamad Shnewer predisposed, that is, ready and willing to commit the offense before he was first approached by the Government agent Omar?

It is the Government's burden to prove beyond a reasonable doubt that Mohamad Shnewer was not entrapped. It is not Mohamad Shnewer's burden to prove that he was entrapped. Thus, you may find Mohamad Shnewer guilty of any offense charged only if you find that, in addition to proving the elements of that offense, the Government also proved beyond a reasonable doubt either (1) that Mohamad Shnewer was predisposed, meaning that Mohamad Shnewer was ready and willing to commit the offense before the Government agent Omar first spoke to him about the alleged crime(s); or (2) that the Government agent did not induce the commission of the offense. The Government only needs to prove beyond a reasonable doubt one of these things to prove that the defendant was not entrapped.

86

The Government may show that a defendant was predisposed, or inclined, to commit the crime charged if the Government proves the defendant was ready and willing to break the law. The Government may prove this predisposition: (1) by showing an already formed design on the part of the defendant to commit the crime for which he is charged; or (2) by showing the defendant's willingness to commit the crime for which he is charged as shown by his ready response to the inducement. The Government must prove that the defendant was predisposed before his exposure to a Government agent.

In evaluating whether a defendant was predisposed, you may consider the following relevant factors: the character or reputation of the defendant; whether he had already formed an intent or design to commit the offenses charged; whether the suggestion of the criminal activity was initially made by the Government agent; defendant's motive; whether he was reluctant to commit the offense, and his reluctance was overcome only by repeated Government inducement; and the nature of the inducement or persuasion supplied by the Government agent.

The Government may also disprove entrapment in another way: by showing that a defendant was not induced by law enforcement officers or their agents to commit the crime. Inducement by a government agent can take many forms, including persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship.

However, a solicitation, request, or approach by an agent of the Government to engage in criminal activity, standing alone, is not inducement to commit a crime. Nor is the mere fact standing alone that a Government agent first suggested the criminal activity enough to show inducement. If a Government agent merely afforded an opportunity or facilities for the

87

commission of a crime, that would not constitute inducement.  The Government may use undercover operations and trickery to detect and arrest people engaged in criminal activities, so long as the agents are merely providing the opportunity for the commission of the offense to people predisposed to commit the crime.  A Government agent or informant may properly pretend to be a criminal and offer to take part in a crime.

In sum, if you find unanimously that the Government has proven beyond a reasonable doubt either that a defendant was predisposed to commit the crime charged or that a Government agent did not induce the defendant to commit the offense, you cannot acquit the defendant on the basis of entrapment.  And remember at all times the Government has the burden of proving beyond a reasonable doubt the elements of the crimes charged.

## 67. DUTY TO DELIBERATE; UNANIMITY OF VERDICT

That concludes my instructions explaining the law regarding the testimony and let me explain some things about your deliberations in the jury room, and your possible verdicts.

First, it is my custom to ask the juror in seat number one to serve as the spokesperson for the jury. This person will speak for the jury here in court. However, the views and vote of the spokesperson are entitled to no greater weight than those of any other juror.

Second, I want to remind you that your verdict, whether it is guilty or not guilty, must be unanimous. To find defendants guilty of an offense, every one of you must agree that the United States has overcome the presumption of innocence with evidence that proves each element of that offense beyond a reasonable doubt. To find defendants not guilty, every one of you must agree that the United States has failed to convince you beyond a reasonable doubt.

Third, if you decide that the United States has proved defendants guilty, then it will be my responsibility to decide what the appropriate punishment should be. You should never consider the possible punishment in reaching your verdict.

Fourth, as I have said before, your verdict must be based only on the evidence received in this case and the law I have given to you. You should not take anything I may have said or done during trial as indicating what I think of the evidence or what I think your verdict should be. What the verdict should be is the exclusive responsibility of the jury.

Fifth, now that all the evidence is in, the arguments are completed, and once I have finished these instructions, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each

other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that — your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.  Listen carefully to what the other jurors have to say, and then decide for yourself if the United States has proved the defendants guilty beyond a reasonable doubt.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  You should all feel free to speak your minds.

Sixth, once you start deliberating, do not talk about the case to the court officials, or to me, or to anyone else except each other.  If you have any questions or messages, your spokesperson should write them down on a piece of paper, sign them, and then give them to the court official who will give them to me.  I will first talk to the lawyers about what you have asked, and I will respond as soon as I can.  In the meantime, if possible, continue with your deliberations on some other subject.

If you want to see any of the exhibits that were admitted in evidence, you may send me a message and, if I can legally do so, I will have those exhibits provided to you.

One more thing about messages.  Do not ever write down or tell anyone how you or anyone else voted.  That should stay secret until you have finished your deliberations.  If you have occasion to communicate with the Court while you are deliberating, do not disclose the number of jurors who have voted to convict or acquit on any offenses.

## 68. VERDICT FORM

A verdict form has been prepared that you should use to record your verdicts.

Take this form with you to the jury room. When you have reached your unanimous verdicts, the spokesperson should write the verdicts on the form, date and sign it, return it to the courtroom and give the form to my courtroom deputy to give to me. If you decide that the government has proved Mohamad Shnewer, Dritan Duka, Eljvir Duka, Shain Duka, or Serdar Tatar guilty of any or all of the offenses charged beyond a reasonable doubt, say so by having your spokesperson mark the appropriate place on the form. If you decide that the government has not proved Mohamad Shnewer, Dritan Duka, Eljvir Duka, Shain Duka, or Serdar Tatar guilty of some or all of the offenses charged beyond a reasonable doubt, say so by having your spokesperson mark the appropriate place on the form.

All exhibits except for the firearms will be brought into your deliberation room. If you want to view the guns, please request it by a note and I will have an officer bring it or them into the deliberation room and show it or them to you.