IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

UNITED STATES OF AMERICA,
                Plaintiff,

        v.

MOHAMAD IBRAHIM SHNEWER,
                Defendant.

Crim. No. 07-459 (RBK)

(Honorable Robert B. Kugler)

## DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE AND OR A REDUCTION OF SENTENCE WITH MEMORANDUM OF LAW IN SUPPORT

COMES NOW, Mohamad I. Shnewer, ("Shnewer"), Pro se defendant in the above-styled cause, files his Motion for Compassionate Release and or a Reduction in Sentence with Memorandum of Law in Support thereof.

### I.
### Jurisdiction

This Honorable Court has jurisdiction, pursuant to changes made in law by the First Step Act ("FSA") of 2018, codified as 18 U.S.C. §3582(c)(1)(A), also through the United States Sentencing Guidelines ("USSG") Amendments of 2023. See Exhibit A.

### II.
### Introduction

Defendant Shnewer respectfully submits the instant Memorandum in Support of his Compassionate Release and or Reduction in Sentence, and states the following in support thereof.

As argued and referenced herein, Shnewer bases his motion on the FSA changes made to the USSG §1B1.13 and it's corresponding amendments, 18 U.S.C. §3553(a) ("3553(a)") factors in relation to the below:

(1)

Table of Contents

Page No.

I.     Jurisdiction................................................. 1

II.    Introduction................................................ 1

III.   Case History and Statement of Facts..................... 2-4

       Table of Contents...................................... (i)

IV.    First Step Act ("FSA") of 2018 & Amendments of 2023 U.S.S.G........... 4-5

V.     Legal Standards............................................ 5

VI.    Exhaustion of Administrative Remedies.................. 5-6

VII.   Extraordinary and Compelling Reasons.................. 6-26

VIII.  Disciplinary.............................................. 27

IX.    18 U.S.C. Section 3553(a) Factors.................... 27-36

X.     Conclusion............................................... 37

XI.    Certificate of Service.................................. 37

XII.   Index of Exhibits...................................... (ii)

(i)

§1B1.13 Reduction in Term of Imprisonment
Under 18 U.S.C. §3582(c)(1)(A) (Policy Statement)

(a) IN GENERAL. - Upon motion of the Director of the Bureau of Prisons or the defendant to 18 U.S.C. §3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. §3553(a), to the extent that they are applicable, the court determines that--

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. §3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community; as provided in 18 U.S.C. §3142(g); and

(3) the reduction is consistent with this policy statement...

(b) ...(5) OTHER REASONS. -- The defendant presents any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) UNUSUALLY LONG SENTENCES. --If a defendant received an unusually...

(c) LIMITATIONS ON CHANGES IN LAW. -...

(d) REHABILITATION OF THE DEFENDANT. -...

(e) FORSEEABILITY OF EXTRAORDINARY AND COMPELLING REASONS.-...  See Exhibit A.

All of the above arguments and legal reasonning demonstrate that Shnewer is not a threat to the public or community, and all militate for granting said motion for compassionate release and or a sentence reduction.

III.

Case History - Statement of Facts

In January of 2006, the Federal Bureau of Investigation was notified of a video containing a few young Muslim men shooting weapons at a firing range while proclaiming jihadist-based statements and that because of this, the informant felt

(2)

that these men could be part of a home-grown American terror cell. The FBI then initiated an investigation into these men - one of whom was identified, by the Confidential Informant, as being Mr. Mohamad Ibrahim Shnewer. Over the next 16 months, two cooperating witnesses were employed by the Government to monitor Mr. Shnewer's activities. Mr. Shnewer participated in open discussions on the topic of attacks on military targets in New Jersey, Pennsylvania, and Delaware; he surveilled several Government buildings and military installations; sought - albeit unsuccessfully - to obtain numerous heavy weapons and materials for use in the potential attack; and engaged in small-arms firing practice. Mr. Shnewer's case contained no deadly or dangerously overt action indicative of a substantial step toward carrying out a planned action or attack, yet Mr. Shnewer still received the Terrorism Enhancement which placed him in the same severe Criminal History Category (VI) as the aforementioned cases, which also mandates a sentence guideline to include a term of Life imprisonment. After a two-and-a-half month long jury trial, Mr. Shnewer and his four other co-defendants were all convicted of con-spircing to murder United States military personnel in violation of 18 U.S.C. §1114 and §1117. At sentencing, Mr. Shnewer, along with three of his four co-defendants received the maximum sentence of Life Imprisonment. The fourth co-defendant, Mr. Serdar Tatar, received only a 33-year term of imprisonment.

Shnewer was sentenced to a thirty-year consecutive sentence on 18 U.S.C. §924(c) count (ECF No. 425). On the same date Shnewer filed an appeal of his convictions. The Third Circuit affirmed this Court's judgement as to the murder conspiracy count but vacated the judgement as to Shnewer's conviction under 924(c). U.S. v. Duka, 671 F.3d 329, 356 (3d Cir. 2011). The District Court amended the judgement against Shnewer to reflect only a conviction and sentence of life imprisonment on the murder conspiracy charge (ECF 457). On 11/05/2021, Shnewer filed a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A). (ECF No. 529). Mr. Shnewer filed additional motions with this court in relation to his

(3)

Compassionate Release, namely (1) Motion for Appointment of Counsel (ECF No. 530), (2) two motions for Stay and Abeyance (ECF Nos. 537, 539), and (3) the Reply to the Government's Response (ECF No.) 546). This court denied said Motion for Compassionate Release on July 24, 2023, See <u>U.S. v. Shnewer</u>, 2023 U.S. Dist. LEXIS 126684 (D.NJ). Shnewer, after reading the Court's denial (ECF No. 543), realized that the Court's legal reasoning reflected statements that Shnewer addressed in his timely filed reply. From all appearances the record reflects that the Reply Brief was not filed with the Clerk's Office before this Court rendered its denial. Shnewer filed a motion for Reconsideration which was denied (ECF No. 547). During this timeframe, Shnewer filed his timely Notice of Appeal. The Government has objected to the timeliness, and Shnewer has filed his brief to the Third Circuit Court of Appeals refuting the Government's claim. This motion is currently pending and is determinative of his Direct Appeal.

IV.

## Legal Standard for Judicial Review
## of Compassionate Release and/or a
## Reduction of Sentence

### First Step Act

A District court lacks inherent authority to modify a defendant's sentence after it has been imposed (see 18 U.S.C. §3582(c)), but under §3582(c)(1)(A), as amended by the First Step Act (FCA) of 2018, "the Court, upon motion of the Director of the Bureau of Prisons (BOP), or upon motion of the Defendant after the Defendant has fully exhausted all administrative rights... may reduce the term of imprisonment (and may imposed a term of probation or supervised release with or without conditions that do[es] not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that -

(4)

    (1)(A)  extraordinary and compelling reasons warrant the reduction... [and
            that]
    (2)     the reduction is consistent with applicable policy statements issued
            by the Sentencing Commission... 18 U.S.C. §3582(c)(1)(A)."

(United States v. Babbit, No. 18-cr-384, 2020 U.S. Dist. LEXIS 195976, 2020 WL
6153608, at *19 (E.D.Pa. Oct. 21, 2020).

    The FSA modified §3582(c)(1)(A) with the intent of "increasing the use of
transparency of compassionate release." (Pub. L. No. 115-391, 132 Stat. 5194,
5239).

V.

## Legal Standards

    If a court finds that a defendant presents extraordinary and compelling reasons
warranting compassionate release, the court then considers whether the defendant
would present "a danger to any other person or to the community," as provided in
18 U.S.C. §3142(g), U.S.S.G. §1B1.13(2), see Babbitt, supra. See also U.S. v.-
Pawlowski, 967 F.3d 327, 330 (3d. Cir. 2020); U.S. v. Aviles, No. 22-2319, 2022 U.S.
App. LEXIS 35399, 2022 WL 17847191, at *2 (3d Cir. Dec. 22, 2022)(Noting that the
§3553(a) factors are "independently dispositive" of an inmate's compassionate
release motion, even where clearly extraordinary and compelling circumstances
warranting release exist).

    When the motion is initiated by the prisoner, rather than the Government,
policy statements by the Sentencing Commission are advisory, rather than binding.
U.S. v. Andrews, 12 F.4th 255, 259 (3d Cir. 2021).

VI.

## Exhaustion of Administrative Remedies

    Before a Defendant can move for Compassionate Release under 18 U.S.C. §3582
(c)(1)(A), they must have "fully exhausted all administrative rights" or must
wait "30 days from the receipt of such a request," in this instance to the USP

(5)

Terre Haute Complex Warden S. Kallis, who denied said request on ___/___/2024. See <u>U.S. v. Roia</u>, 954 F.3d 594, 597 (3d Cir. 2020)(finding a failure to comply with section 3582's exhaustion requirement "presents a glaring roadblock foreclosing comp-release)."

Therefore, Shnewer has met the §3582(c)(1)(A) exhaustion requirement by the use of available administrative remedies. Shnewer's Motion for Compassionate Release and or Reduction of Sentence is ripe for consideration by this Honorable Court at this time.

## VII.

### The Extraordinary and Compelling Reasons
### for Compassionate Release

Generally, "extraordinary" means "[b]eyond what is usual, customary, regular, or common," and a "compelling need" is a "need so great that irreparable harm or injustice would result if not met." <u>U.S. v. Rodriguez</u>, 451 F.Supp.3d 392, 401 (E.D.Pa. 2020)(quoting extraordinary, Black's Law Dictionary (11th Ed. 2019), and then <u>compelling</u> <u>need</u> Black's Law Dictionary (11th Ed. 2019).

Shnewer has stated supra, at pages 2-3, his legal reasons, pursuant to §1B1.13 for a Reduction in Term of Imprisonment under §3582(c)(1)(A).

Now, in order, Shnewer asserts and argues the legal cause for each:

<u>§1B1.13 - §3582(c)(1)(A), Id., supra...</u>

(1) (a); (2) (1)(A); (3) (2); (4) (3); (5) (6); (6) (c); (7) (d); and (8) (e); see pages 2, 3, supra, Exhibit A

(6)

Terre Haute Complex Warden S. Kallis, who denied said request on 01/22/2024.
See <u>U.S. v. Roia</u>, 954 F.3d 594, 597 (3d Cir. 2020)(finding a failure to comply
with section 3582's exhaustion requirement "presents a glaring roadblock fore-
closing comp-release)." See Exhibit B.

Therefore, Shnewer has met the §3582(c)(1)(A) exhaustion requirement by the
use of available administrative remedies. Shnewer's Motion for Compassionate
Release and or Reduction of Sentence is ripe for consideration by this Honorable
Court at this time.

VII.

### The Extraordinary and Compelling Reasons
### for Compassionate Release

Generally, "extraordinary" means "[b]eyond what is usual, customary, regular,
or common," and a "compelling need" is a "need so great that irreparable harm or
injustice would result if not met." <u>U.S. v. Rodriguez</u>, 451 F.Supp.3d 392, 401
(E.D.Pa. 2020)(quoting extraordinary, Black's Law Dictionary (11th Ed. 2019), and
then <u>compelling need</u> Black's Law Dictionary (11th Ed. 2019).

Shnewer has stated supra, at pages 2-3, his legal reasons, pursuant to
§1B1.13 for a Reduction in Term of Imprisonment under §3582(c)(1)(A).

Now, in order, Shnewer asserts and argues the legal cause for each:

### §1B1.13 - §3582(c)(1)(A), Id., supra...

(1) (a); (2) (1)(A); (3) (2); (4) (3); (5) (6); (6) (c); (7) (d); and
(8) (e); see pages 2, 3, supra, Exhibit A

(6)

### Extraordinary & Other Compelling Reasons for
### Reduction in Sentence or Compass. Release

The Defendant argues in his defense, the following cumulative mitigating circumstances for extraordinary and compelling legal reasons for this Honorable Court's granting of Shnewer's requested relief, or any other equitable relief by the Court.

A. Rehabilitation;

B. Renouncement of Previous Ideology and Radicalized Beliefs;

C. Forseeability of Extraordinary and Compelling Reasons, and Other Reasons;

D. Age; and

E. Unusually Long Sentence.

"[R]ehabilitation is not defined in the compassionate release statute, see 18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act ("FSA") or 28 U.S.C. §994(t). When a statute doesn't define a term, the United States Supreme Court has directed to use the word's ordinary meaning. See, e.g. <u>B.P. American Production Company v. Burton</u>, 549 U.S. 84, 91 (2006). According to the American Heritage Dictionary, "rehabilitation is to restore to health, or useful life, as through therapy and education." Merriam Webster's Dictionary of Law defines rehabilitation as meaning "to restore (as a convicted criminal defendant) to a useful and con-structive place in society through therapy, job training, and other counseling." In general, rehabilitation is **anything** that helps you prepare for release and gives you the tools you need to remain in society without offending. Emphasis added.

In the nearly 17 years that have passed, since this instant case began through Shnewer's arrest, and despite having no realistic hope of release, Mr. Shnewer has done everything in his power to rehabilitate himself, as demonstrated by his genuinely exceptional educational accomplishments, and continued efforts

7

towards his rehabilitation. Although Congress provided that rehabilitation alone cannot serve as an "extraordinary and compelling reason" for a sentence reduction, [Shnewer's] educational, and rehabilitative accomplishments are unique and distinctly important because all are such positive activities without any intangible incentive other than self-improvement given his life sentence. See U.S. v. Millan, No. 91-cr-685, 2020 U.S. Dist. LEXIS 59955, at *9 (S.D.N.Y.) April 6, 2020).(While rehabilitation cannot serve as a stand-alone reason for compassionate release), see also, 28 U.S.C. §994(t), U.S. v. McNair, 481 F. Supp. 3d 362, 370 (D.N.J. 2020) (quoted in U.S. v. Herviera-Genao, 2023 U.S. App. LEXIS 7811 (3d. Cir. 2023). However, Shnewer requests this Court to review the totality of his rehabilitation efforts, and see Shnewer is not the same man this Court sentenced on 4/29/2009, at the age of 24 years old. In U.S. v. Sarno, 37 F.4th 1249, 1252, 1253 (7th Cir. 2022)(...according to 28 U.S.C. §994(t) rehabilitation may be combined with other factors; therefore "successful rehabilitation may... be considered as one among other factors.") See U.S. v. Vaugh, No. 22-2427, 2023 U.S. App. LEXIS 6171 (7th Cir. March 05, 2023).

Shnewer would show unto this Court that his post-sentencing conduct confirms that he no longer represents a danger to society, and that he has been substantially rehabilitated and continues to do so. See also U.S.S.G. §1B1.13(2). What has been most germane for Shnewer's rehabilitation has been his (1) Spiritual growth and foundation, and (2) successful completion with accolades and awards from his LCP program teachers. The Life Connection Program (LCP) is the longest FSA Residential Evidence Based Recidivism Program ("EBRR") offered, and recognized by Congress for rehabilitation, and reduction in recidivism needs. See Exhibit C

(A) Shnewer enrolled in the LCP at U.S.P. Terre Haute (IN) in January, 2022, remained in the program during the COVID-19 lockdowns, and graduated in September 2023. See Exhibit D

8

The Life Connections Program is a faith-based reentry program designed to address religious beliefs and value systems. Participants are connected with a community mentor at the institution and/or with a faith-based community organization at their release destination. The Life Connections Program is an 18-month residential program, which instructs and engages participants in the following EBRR needs areas:

(1) Over 365 hours in cognitions;

(2) 30 hours in antisocial peers;

(3) Over 45 hours in mental health;

(4) 10 hours of finance;

(5) Over 95 hours in family planning;

(6) Over 40 hours in anger and hostility classes;

(7) Over 15 hours in general education;

(8) Over 35 hours in trauma;

(9) Over 200 hours in work-related areas;

(10) Over 150 hours in substance abuse;

(11) Over 500 hours in community service;

(12) Over 11 seminars;

(13) A combined 27 courses and workbooks; and

(14) Over 72 hours of other elective courses. See Exhibit  E

Equally, the LCP is a faith-based program that is highly regarded and selective with a "strict curriculum aimed at (i) development and maturation of normative values and responsibilities and (ii) to better prepare incarcerated men and women for reentry to society. (Graduates of the Life Connections Program have a recidivism rate lower than 10%). See United States v. Jackson, 2020 U.S. Dist. LEXIS 17735 (U.S.D.C. NM Feb. 4, 2020); United States v. Rutowski, No. CR11-147, 2022 WL 1597382 (Dist. Haw. May 19, 2022)(Reducing the sentence of a

9

defendant who demonstrated rehabilitation through LCP); United States v. Fuller, No. 6:06-cr-998, 2022 WL 1101801 (Dist. S.C. Apr. 12, 2022)(noting the skills achieved through the LCP and reducing sentence with these accomplishments in mind); United States v. Tate, 07-259(i), 2019, 2020 WL 7185648 (E.D.Mich. Dec 7, 2020 )(expressing confidence that the defendant is not likely to recidivate given completion of the Life Connections Program); United States v. Crowe, 2020 U.S. Dist. LEXIS 228674 (E.D. Mich. Nov. 6, 2020)(noting defendant's many accomplishments, including completion of LCP, "far outweigh his limited disciplinary record" court "declines to find Crowe dangerous on account of his PATTERN score" and grants compassionate release); United States v. Bass, 514 F.Supp.3d 977, 2021 U.S. Dist. LEXIS 11719 (E.D. Mich. Jan. 22, 2021)("There is no question Bass's offenses were horrific", but in regards to the completion of LCP, "what is most remarkable about Bass's rehabilitative efforts is that they are purely self-motivated... facing two life sentences without the possibility of parole... no hope for release or any external reasons to tackle his drug addiction, mentor his peers, earn a GED, learn how his crimes impacted his victims. Undeterred, he dedicated his incarceration to self-reflection, building a strong moral character." "Barring sentence reduction because it contradicts the original sentence, would render the statute inoperative"); Gall v. United States, 552 U.S. 38, 59, 128 S.Ct. 586, 169 L.Ed.2d 445, (2007)(citing 18 U.S.C. §3553(a)(2)(B)-(C))(finding that defendant's "self-motivated rehabilitation" supported the conclusion that incarceration was not necessary for deterrence and public protection purposes).

The Defendant asserts that his recent record in prison provides a more "up-to-date picture of his history and characteristics" and demonstrates that "he will not engage in future criminal conduct, a factor courts are required to consider when imposing a sentence" (citing 18 U.S.C. §3553(a)(1), (a)(2)(B)-(C), see Pepper v. United States, 562 U.S. 476, 491, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011)).

10

Shnewer has completed over 1200 hours of therapeutic EBRR programming, receiving instruction in over 25 course subjects and or workbooks, 11 seminars, and over 83 hours of elective courses in the Life Connections Program alone. These EBRR courses have assisted Shnewer in reestablishing the proper foundational tools to overcome his past ideology, radicalization, irrational thinking, and immaturity.

Mr. Shnewer is committed to being an active participant-member in his family, including his nieces and nephews. Whether this commitment is by phone, letters, email or visitation. What has assisted immensely in this area are the mandatory LCP classes taught in:

(1) Inside-Out Dads;

(2) Family Life Connections Workbook;

(3) Transitional Issues;

(4) Parenting - Phase I; and

(5) Victim Impact.

It is Shnewer's intention to "stop the cycle - before it starts', with his nieces and nephews that contributed to the Defendant's instant offenses.

A major component of the Senior Trimester (last 6 months of LCP), involves workforce skills development and reentry preparation for a productive life upon release. The LCP's Workforce Development curriculum entails the following mandatory classes - courses:

(1) Resume/Cover-letter Writing & Interview classes;

(2) Re-entry Simulation;

(3) Mock Job Fair;

(4) Creation of a Continued Education Plan;

(5) Obtaining a Community Resource Packet;

(6) Setting Re-entry goals and budgets;

(7) Re-entry mentorfellowship and preparation;

(8) Senior Seminar presentation;

(9) Transitional Issues; and

(10) Offender Workforce Development Seminar.

The LCP also requires each particpant to take, in addition to the 500 mandatory EBRR hours, a minimum of 72 hours of elective courses prior to their graduation. Shnewer has completed the following elective - rehabilitation classes:

(1) 4 Spiritual Laws;

(2) Accountability;

(3) ACE Courses (48 Hours);

(4) Recreation Aide Training;

(5) Inside Out Dads; and

(6) Living Skills

To further reinforce the LCP effect on Shnewer's rehabilitation efforts, it's been (5) five years since he has incurred any disciplinary infractions.

Next, Shnewer would show the Court the rehabilitative effects the LCP has personally had on him, so that he won't be in the statistic of 64%, which is the current percentage to recidivate of BOP offenders released.

## The LCP's Rehabilitive Reflection
## By Shnewer And LCP Staff

What follows below are details of Shnewer's personal reflections, and LCP staff, accomodations on various courses attended during the LCP, and their respective insight and impact on Shnewer's rehabilitation.

Each person attending the LCP has a Spiritual Guide mentor, for the length of the program, and meets in classroom settings for at least 4 hours per week. What follows are the words of Shnewer's Spiritual Guide teacher.

Mr. Bashar Murad, has been working with the FBOP since 1997, and first met Shnewer in 2009, while in the CMU at USP - Marion, Illinois.

At the graduation ceremony for Cohort 30, on 9/6/2023, Mr. Murad gave Shnewer a Spiritual Guide Award, representing, for among other reasons:

(1) Being a humble person;

(2) Being an open-minded person;

(3) An honest person who admits his wrongs, and accepts the truth easily;

(4) Being a responsible, and above average student, and

(5) Self-discipline, harmless, equanimity, good manners.

Mr. Murad, who's known Shnewer since 2009, also attested to his mental and spiritual growth, not being a harm to others, and an advocate for his release to his community, and family. See Exhibit  F

Next, Life Coach - LCP Mentor, Mrs. Stacy Birk who taught Shnewer Addiction Recovery Classes and others, presented Mr. Shnewer an award at graduation for most outstanding student, and saw the maturity, growth, spirituality, and how [Shnewer] turned his irrational thoughts into rational ones. See Exhibit  G

Who better to teach and see offender's rehabilitation efforts than those dedicated FBOP staff who instruct it? What you see reflected by the LCP staff over 18 months, is the man whom Shnewer has evolved into, 17 years into his Life sentence. Shnewer, simply put, is not the immature 20 year old who committed these serious crimes, and was given a Life sentence in 2009.

The following recommendations and character letters are from, in order, (A) LCP Staff, (B) BOP Staff, and (C) LCP students and or community members, attesting to Shnewer's character: See Exhibit H.

A. (1) Iman M. Bashar (LCP Spiritual Guide):

"When one doesn't have the light of the right knowledge, or the light of the spirit, he does not see his faulty cognition or cognitive biases,...he doesn't see his faulty reasoning or irrational thinking,...he doesn't see his ulterior wrong selfish motives,...yet he thinks that he is right in every way, and others are wrong all the time...He also perceives them as

being the cause of all his suffering and failures! Thus, he becomes a hostile person to everyone who is not siding with him.

Worse than this, is when he becomes addicted to his faulty thinking that is driving his faulty behavior. But the worst of all is when he wants to lead others to his faulty wrong ways so they may validate his faulty behavior, and so he may exploit them to support his selfish agenda, and to use them to fight those who are in the light.

The purpose of the Life Connections Program is to, bring those who are ready, out of the Hell of darkness to the bliss of light! This program may cause a lot of inconveniences, for one may have to critique himself, the teacher may critique him, and others in the program who care about him would critique him too, but surely the prize is worth the effort... For if one is honest about growing,...if he becomes receptive to such constructive criticism,...and if he be willing to put the effort to change himself, then he would be born again into the light after he was corrupted by the evil forces. Otherwise, he would be left suffering the Hell of living in darkness.

I pray for all of you to seriously benefit from this great,...one-of-a-kind, ...holistic program...for it is once in a life time free opportunity. And I pray for me and all of you to become leaders towards the light. Amen."

(2) Mrs. Stacy Birk (LCP Life Coach)

"Mr. Schnewer came to this program with a goal in mind, and that was to mature and grow not only with his mindset but spiritually as well. He has matured into a calm, peaceful, and spiritual person. He took his irrational ways of thinking and turned them around into rational thoughts. He recognized the importance of his faith and the role it plays in the continued growth he exhibits."

B. (3) Chaplain R. Roloff (Supervisory Chaplain USP-TH)

"I certify that Mr. Mohamad Shnewer (61283-066) has been a regular participant in Religious Services programming while he has been housed both at USP Marion, Illinois and FCC Terre Haute, Indiana. During the sixteen years I have served as a Chaplain at the afore-mentioned institutions, Mr. Shnewer has been a positive influence within the religious preference communities he has been a part of. Over the period of time that I have known him he has often served as a point-of-contact for me to work with in order to meet his religious

14

preference group's weekly needs and various special holy days requests."

(4) Mr. Stephen J. Harvey

"I first met Mr. Shnewer when He was transferred the Communication Management Unit at FCC Terre Haute, during his time in the restrictive unit I worked as a Correctional Officer and was around Mr. Shnewer 40+ hours a week for a two-year period, during this time I watched a young man enter a prison setting and choose to take a path of learning and also helped other inmates prepare for GED testing. Mr Shnewer also on many occasions acted as a peace maker in the unit, going between different groups of inmates in times of unrest to keep the unit calm, this was no easy feat considering the unit houses Low level custody inmates as well as Max custody inmates all in one unit."

(5) Mr. B. Chevrier (Recreation Specialist)

"Working in corrections I have witnessed many individuals who refuse to learn and are incapable of change. Sadly the only benefit these individuals provide is job security. Fortunately, Mr. Shnewer is not one of those individuals. I believer, after having known Mr. Shnewer and working beside him for an extended period of time that when released he will be a productive member of society."

(6) Ms. Courtney Scheid (Re-entry Affairs Coordinator)

"As a Rec Orderly, Mr. Schnewer showed up to work promptly and regularly and was always willing to work extra if need be. No matter the task he was given, Mr. Shnewer ensured the task was completed and it was done to his full ability."

(7) Mr. Mitchell Reberger (Laundry Supervisor)

"I believe inmate Shnewer is deserving of a second chance despite the severity of his crime. If given a second chance, I am confident inmate Shnewer would lead a crime free productive life."

(8) Azim Khamisa
Founder of Turiq Khumisa Foundation (TKF)

"I know Mr. Shnewer from his attendance at my seminar on the Journey of Forgiveness, which he was attended now twice, through the Life Connections Program.

The latest seminar is being held at the USP Terre Haute prison on July 13, 2023. Also, Mr Shnewer has written my foundation seeking it's assistance.

A little about myself is that I started a foundation after the murder of my son, by a 14 year old gang member at that time Tony 1995, in the state of California. Please visit our Foundation's website for more information, if needed, at www.tkf.org.

I'd respectfully request that you strongly consider Mr. Shnewer's rehabilitation efforts over the past 16 years, his outward expression of remorse, and continual evolution to forgive, show remorse, find peace, and redemption in his life."

C. (9) Mr. Adam Swift:

"Like so many of the LCP community members we are housed with, Mr. Shnewer is dedicated to his own personal and spiritual development and exhibits this in his daily life. As a Graduate of this highly respected program, Mr. Shnewer is an example to others - especially toward those outside of the community - of how one can live their day-to-day life centralized around our six core values: Responsibility, Honesty, Caring, Humility, Open-Mindedness, and Willingness."

(10) Mr. Charles Swanson:

"Even before completing the program, Mohamad became a unique, positive addition to the Life Connections Program's community. He consistently used his limited time during leisure opportunities to assist his fellow Program Participants."

(11) Mr. Ronald W. Zenga:

"My name is Ronald W. Zenga." "I am a U.S. Navy veteran who retired after 20 years of service during which I spent 9.5 years deployed or stationed overseas." "You may be wondering how a Catholic and a Muslim, how a Navy combat veteran and a man accused of supporting terrorism can be friends. Well, its really quite simple: We share the same values. We both love God and we both love our families." "I have always found Mr. Shnewer to be an honest, moral, and compassionate person."

(12) Mr. Saiyd Muhammad:

"As a Muslim, I can also attest to the fact that he [Mr. Shnewer] no longer

16

has any radical ideology or exremist ideals. In fact, he was just a young immature man who was manipulated by adult men who were working with, and for, the FBI." "Mohamad even speaks out against radical Islam. Mr. Shnewer is without question rehabilitated and has recently graduated with honors from the Life Connections Program here at USP Terre Haute."

(13) Mr. Jeff Mobley:

"Mr. Shnewer, as I know him today is a strong leader who leads by example with humility. Although he has made mistakes in life, he has learned from them, and he is a better man now in spite of them. He has a lot to offer to his community and it would be a shame to keep him from that potential by him sitting in a prison for the rest of his life. He is not a threat to anyone. On the contrary, his presence in his local community could very well change it forever for the good."

(14) Mr. Kevin Watson:

"I have no understanding of the man he [Mr. Shnewer] was prior to his incarceration. But the man I see before me today is a man I wholeheartedly believe is worthy of all life's greatest gifts: Love, Truth, Peace, Freedom, and Justice. I have great faith in Mohamad Shnewer's future and I'm sure the men of the Life Connections Program share these exact sentiments."

(15) Personal Letter from Mohamad I. Shnewer:

"The Life Connections Program has impacted me in many ways. The most significant and life changing are as follows:

Early in the program there is a simple yet profound seminar; which is called "Building Blocks To a Healthy Community." In this seminar I witnessed how one bad actor in a community sucks the oxygen out of the entire community. When trust is broken, it's very hard to repair and the impact is great even when it happens in an unconsequential game it still has a great negative feeling let alone had it been a significant event that took place where people or their property were hurt.

Throughout the Spiritual Guide Imam Bashar Murad was a great aid and influence to me. I've known and dealt with Imam Murad since May of 2009, though I got to really know him and benefit from his teaching at the LCP. I had to spend no less than 4 hours a week for the nearly 21 months of programming.

During the Spirituality phase of Imam Murad's classes I feel like I found life, I got to find my spirituality which in turn added light and life to my heart. I discovered that rituals even religious ones were void of spirituality and consciousness were void of any spiritual or outward benefit.

Imam Bashar also helped guide me through Religious Tolerance and the Interfaith cooperation. These phases were eye openers for me, because even though I've gotten involved in various interfaith events in the community, I feel I sold myself and community out short for not placing more importance and effort into such activities. I feel Muslims have so much to offer our communities, and at the same time have a lot to learn from other parts of our respective communities.

"Victim Impact" and "Obligation to Right the Wrong" really showed in real life how my actions or even potential actions impacted others, and how difficult it is to repair those wrongs. I spent long nights going over my actions throughout life, and praying that Allah heals the people I hurt, makes them whole, allows them to find pleasure in life, oh Allah give them peace of mind, help and guide them through their lives, and let them find it in their hearts to forgive me.

The life coach we have in the program gave each of us back our self worth. Mrs. Stacey Birk showed us that we were all worth the hard work and effort we put into improving our lives. I along with other graduates put together a proposal to the LCP Chaplain who runs the program to improve the quality of life in the program. This was a very empowering, so it inspired me to come up with an initiative to deal with violent protests that were happening in the local community. Mrs. Birk had explained to us earlier that she helped the Mayor in our community get elected. Thus, I proposed that they have a town hall with the Mayor to discuss people's grievances, hear each other out, try to find humanity in each other, understand each other's points of view, to find common ground, and work together towards a just solution.

I shared this "initiative" and "my vision" with Mrs. Birk, the Mayor of Terre Haute, IN, with AUSA Mr. Norman Gross, this court (Honorable Robert Kugler), as well as my family, and others.

These are just a small sample size of my rehabilitation, that the LCP has taught me.

18

## B. Shnewer's Renouncement of His Previous Ideology and Radicalized Beliefs

The first step of growth is identifying the irrational thinking, thoughts, behaviors, and beliefs that proceeded the action. In Shnewer's case, the irrational ideology, and deradicalization had to be identified, before the rehabilitation could begin.

The Federal Courts have stated before, "there are no established programs in our criminal justice system or in the BOP itself to rehabilitate individuals charged or convicted of crimes related to terrorism." See United States v. Jumaev, 2018 U.S. Dist. LEXIS 119916, FN 11 (Dist. of Colorado, July 18, 2018).

Notwithstanding, the LCP curriculum in and of itself, and the rehabilitation obtained by Shnewer, see supra, but his own efforts at religious conversion from his prior religious beliefs, unlearning the previous religious belief system taught to an immature youth, whose childish actions of jihadis stemmed from a multiple of factors:

(1) Shnewer's own misinterpretations of the Holy Qur'an;

(2) Succumbing to peer pressure; and

(3) Wrongly perceived and believed - fight for social-religious injustice in the world.

These all lead to Shnewer's instant offenses. However, Shnewer is not a young man, or naive or immature any longer. This renouncement is even magnified with his Initiative and Vision plans proposal that he has submitted to local community leaders, this Court, AUSA (Norman) Gross, and as Exhibits ( I ). These proposals directly contradict who he once was, and show where his mindset and identity lie. Clearly, rehabilitation through the LCP spiritually, and these propsals show that Shnewer has renounced any previous ideology and or radicalized beliefs.

## C. Forseeability of Extraordinary and Compelling Reasons, COVID-19, Other Reasons and Prison Conditions Shnewer has Faced

COVID-19 took a disproportionately heavy toll on incarcerated people. Over 300 incarcerated people died in BOP custody of COVID-19. See Iowa Coll. of Law Fed. Crim. Def. Clinic, 302 Deaths in BOP Custody, an incalculable loss (Jan. 31, 2022), http://perma.cc/Q535-TN8L.

As was widely publicized in the press as well as addressed in legal filings (both compassionate release litigation and civil rights lawsuits against the BOP), throughout the pandemic the BOP ignored its responsibility to its vulnerable prison populations, and hundreds of people lost their lives as a result. See generally Sharon Dolovich, The Coherence of Prison Law, 135 Harv. L. Rev. F. (2022) (arguing that the Eighth Amendment provided an inadequate tool for addressing widespread failures of prisons and prison officials to contain the COVID-19 virus).

The next area in prison conditions Shnewer has faced, nor was it forseeable to the court, has been the prolonged stretches of soitary confinement due to his (1) instant crimes, (2) CMU housing, (3) COVID-19 - BOP lockdowns, and (4) Segregated Housing Unit placement (SHU). See Exhibit J , Timeline.

While it may seem commonplace in the FBOP, the cumulative "solitary confine-ments" as Shnewer has experienced, rises to the level of "extraordinary and compell-ing."

Some courts have begun to recognize the effects of solitary confinement are so severe, and that the experience of solitary confinement is so punutive, that sentence reductions may be warranted in certain circumstances based upon the experience of solitary confinement. See, United States v. Kibble, 992 F.3d 326,

336 (4th Cir. 2021)(Gregory, C.J. concurring)("conditions[including solitary confinement] not contemplated by the original sentencing court, undoubtedly increase a prison sentence's punitive effect"); see also <u>United States v. Marshall</u>, 604 F.Supp.3d 277, 284, 289 (E.D.Pa. 2022)(defendant's life w/o the possibility ...long-term soitary confinement and significant rehabilitation, taken together, constituted "extraordinary circumstances supporting compassionate release); <u>United States v. Macfarlane</u>, 438 F.Supp.3d 125, 127 (D.Mass.2020)(granting) sentence modification in part because the "two-week confinement in solitary confinement in solitary quarantine in a higher security facility is the equivalent of two months in the Camp to which he was originally assigned"). Shnewer, based on the supporting exhibits, states that, including solitary confinement, SHU time, CMU assignment, and COVID-19 lockdown - quarantine times, he has spent 10½ to 14½ years in "solitary confinement" conditions.

In addition, one of the amendments to the Compassionate Release is a "catch-all" provosion that would encompass long-term solitary confinement - as well as other extraordinary conditions - based claims. Specifically, Shnewer may meet the compassionate release standard if he presents a "circumstance or combination of circumstances that when considered by themselves or together" are "similar in gravity" to the ones argued herein. See Final Amendments (Apr. 27, 2023), §1B1.13 (b)(5). Because of the toll that solitary confinement takes on individuals, it is not difficult to imagine a scenario in which a court may determine that a person's experience of solitary confinement, and the harms that such conditions have inflicted, are "similar in gravity" to, for example, severe medical neglect or abuse at the hands of BOP officials. Further, research shows that release may be the only way for many people to move past the trauma that prolonged solitary confinement inflicts, thereby warranting early release as the remedy. Julian Adler, Prison Decarceration and the Mental Health Crisis: A Call to Action, 34 Fed. Sent. R.

233, 234 (2022)("second-look mechanisms like compassionate release may be the only way to meaningfully redress the pathogenic effects of incarceration - be it the exacerbation of preexisting mental illness or the pathological toll of imprisonment, including the extreme harms of solitary confinement").

From Shnewer's subjugation to "psychological" torture while at Philadelphia FDC, of sleep deprivation techniques, being targeted by BOP staff, because of his instant crimes, while at both (Marion ILL and Terre Haute) CMU's to the targeting by BOP staff for minor disciplinary infractions such as "sharing or feeding" other Muslims, or "praying" with too many Muslims. All of these prison conditions have made Shnewer's Life sentence more punitive than could have been anticipated by this Court at sentencing. See attached Declaration, Timeline Exhibits  K .

### D. Shnewer's Age at the Time of the Instant Offenses

Recently, December 14, 2023, the U.S. Sentencing Commission held a hearing seeking comments on several proposed Amendments, one specific to Shnewer if passed at the May 2024 hearing, and made law on November 1, 2024, would be the Youthful Individuals Amendment. See USSC.gov (Federal Register Notice of Final 2023-2024 Priorities (Aug. 24) "Prompted by evolving brain development research, the Commission also proposed changes that would ...expand consideration of an individual's youthful age at sentencing." See newsletter @ lisa-legalinfo.com (12/17/2023). This proposed amendment, if passed, would directly effect Shnewer at the time of his instant crime, and sentencing. See Exhibit L.

Shnewer was 20 years old when these crimes originated, at that time, as the empirical data and research will bear out, Shnewer was young, underdeveloped mentally, physically, and spiritually. The Supreme Court has recognized this mitigating circumstance, See Graham v. Florida, 560 U.S. 48 (2010), and its

progeny caselaw, plus, recently the (D.C.) District of Columbia's passing of §24-403.03 Modification of Imposed Term of Imprisonment for violation of law Committed before 25 Years of Age.

### E. Unusually Long Sentence, (6), supra:

Defendant would next contend, the change in law brought about by Allenye v. United States, 570 U.S. 99, 133 S.Ct. 2157 (2013); see also Michael Curtis Reynolds v. Warden Victorville USP, 619 Fed.Appx. 55 (3d Cir. 2015), which was not available for this court's use at the time of Shnewer's trial or sentencing, be considered for the terrorism enhancement, see U.S.S.G. §3A1.4, requested and used by the USA, and within the PSR.

The Terrorism Enhancement when applied, "takes a wrecking ball" to the initial Guidelines range. George D. Brown, Punishing Terrorists: Congress, the Sentencing Commission, the Guidelines, and the Courts, 23 Cornell, J.L. & Pub. Pol'y 517, 520 (2014). It functions by both increasing the offense level at least 12 levels and elevating the defendant to the highest Criminal History Category, irrespective of his or her actual criminal history.

Shnewer's ultimate sentence received was driven by the Terrorism Enhancement provision, which triggers dramatically-enhanced penalties at sentencing, catapulting his offense level by 12 points and ratcheting the criminal history category to the highest level, Category VI.

In Shnewer's case, the effect of the enhancement on his guidelines sentence was unconscionable. His offense level jumped from 33 to 45, (his final base offense level was 51, due to the official victim enhancement) and his criminal history category went from the lowest (1) to the highest (VI). As a result his Guidelines sentence called for life imprisonment, instead of 135-168 months (Level 33 Category I). See U.S.S.G. Ch. 5 Pt A (sentencing table). This Guidelines calculation-heavily

weighted by the terrorism enhancement-undoubtedly influenced the sentence Shnewer received. U.S. v. Moreland, 437 F.3d 424, 434 (4th Cir 2006)("The farther a sentencing court) diverges from the advisory guidelines range, the more compelling the reasons for the divergence must be.")

Shnewer had no prior arrest, no prior criminal history, he committed his crimes as a young man (20-22 yrs. old), an age associated with increase impulsivity and law-breaking. See, e.g., J.C. Oleson, Risk in Sentencing: Constitutionaly Suspect Variables and Evidence-Based Sentencing. 64 SMU L. Rev. 1329, 1361-62 (2011) (describing criminological research that individuals between 15-25 are at the greatest risk of committing crimes).

A defendant's criminal history category reflects something different than the Terrorism Enhancement. The Supreme Court in Nichols v. U.S., 511 U.S. 738, 751, 114 S.Ct. 1921, 128 L.Ed. 745 (1994) (Sauter, J. Concurring)("Prior convictions... serve under the Guidelines to place the defendant in one of six 'criminal history; categories; the greater the number of prior convictions, the higher the category... the Guidelines seek to punish those who exhibit a pattern of 'criminal conduct'."); U.S.S.G. Chapter Four, Criminal History and Criminal Livelihood, Part A-Criminal History Introductory Commentary (..."Repeated criminal behavior is an indication of a limited likelihood of successful rehabilitation".); see also U.S.S. Commission (www.ussc.gov/researchpublications/criminal-history-category-and-usparole-commission-salient. (goals for criminal history instrument are "to predict recidivism" and "reflect offender culpability" in the form of "harsher punishment for offenders with aggravated prior criminal backgrounds:).

The terrorism enhancement, increased Shnewer's sentence from offense level 33 to 45, (exclusing other enhancements - total 51). Shnewer's jury did not find this element that increased his sentence. Without this enhancement, Shnewer would

24

of been facing an offense level of 39, and facing a sentence of 262-327 months, not the Life sentence this court ultimately sentenced Shnewer to.

The jury instructions within the 3rd Circuit, at the time of Shnewer's trial failed to instruct the jury on this element - that increased said sentence to life. Therefore, the jury was never submitted with this §3A1.4 instruction whether Shnewer was also guilty of the terrorism enhancement.

For this legal change in the law claim, Shnewer requests that this Honorable Court strongly consider a reduction in Shnewer's sentence in-line with Offense Level 39, Criminal History Category I - United States Sentencing Guidelines sentence.

Therefore, Shnewer argues for this court to ascertain now 17 years later, would the unusually long sentence received in 2009, and (that Shnewer has served at least 10 years on), be the same sentence under Allenye, supra, now, or did this produce a gross disparite sentence between the sentence being served and the sentence likely to be imposed at sentencing? Does post Allenye, stll mandate a 12 point enhancement without the jury finding this element that increased Shnewer's sentence to LIFE?

Shnewer requests this court consider this change in law as a reason to reduce the instant sentence, pursuant to the USSG Amendment (2023), change in Law/Unusually Long Sentence Category.

In closing, Shnewer puts forth several arguments that he asserts demonstrate compelling and extraordinary reasons for sentence reduction and comport with Sentencing Commission Policy. Specifically, Defendant contends he should receive a reduction in sentence because (1) of his continual rehabilitation efforts, (2) the fact of his age at the time of the offense, and at sentencing, plus, the Commission's proposing this change in consideration in the May 2024 hearing, (3) Unusually Long Sentence, (4) Harsh Prison Conditions - Other Reasons, and (5) most importantly - his renouncement of his prior radicalized, and religious ideology, plus, (6) requests the USSG Section 5K2.0 catchall provision, the previous arguments in combination have the cumulative effect of making Shnewer's case exceptional.

## VIII.

### Disciplinary

Shnewer, while serving his entire 17 years of his life sentence at maximum custody prisons, such as:

(1) FDC Philadelphia (Administrative Segregation);

(2) Central Monitoring Units (CMU);

    (A) Terre Haute, IN; and

    (B) Marion, IL;

(3) Oklahoma Transit Center - Special Housing Unit ("SHU"); and

    Canaan U.S.P. (SHU); and

(4) U.S.P. - Terre Haute, IN;

has incurred multiple disciplinary infractions. However, Shnewer has remained disciplinary free for the past 5 years.

These infractions were all minor, with one being for assault.

The lack of incurring any further infractions in the last 5 years is directly attributable to Shnewer's continuing rehabilitative efforts, spirituality, and are whom his character is today.

In March 2024, he will be recommended by his Unit Team for reduction in custody level from maximum to medium custody. Thusly, showing that the disciplinary incidents are not deterring Shnewer's rehabilitative plans. See Exhibit M .

### IX.

### 18 U.S.C. §3553(a) Factors

Section 3553(a) Factors

Section 3582(c)(1)(A) requires a court to consider whether a sentence reduction is warranted under the factors detailed in 18 USC §3553(a) before granting a sentence reduction. Section 3553(a) instructs district courts to "impose a sentence 'sufficient, but not greater than necessary' to accomplish the goals of sentencing." Kimbrough v US, 552 US 85 (2007)(quoting 18 USC §3553(a))). Similar to the Section 3142(g) factors, the applicable Section 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for -

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines -

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g)[18 USC § 3742(g)], are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement -

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g)[18 USCS § 3742(g)], is in effect on the date the defendant is sentenced.[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Shnewer argues that the sentencing factors in 18 USC §3553(a)("3553(a)") weigh in his favor for either a reduction of his Life sentence, or compassionate release, and that he no longer poses a danger to his community or anyone - if released, or

if this Court greatly reduces his current Life sentence. The Court must "consider
[] the applicant's individualized arguments and evidence," U.S. v. Newton, 996 F.3d
485, 488 (7th Cir. 2021).

The 3553(a) factors provide that each District Court (Judge) contemplating a
Motion for Compassionate Release must take into consideration the sentencing factors
provided, supra.

Shnewer, the man who committed these crimes 17 plus years ago, at the age of
20 years old, the man who this Honorable Court sentenced to Life, and last saw in
2009, is not that same man.

The Defendant will address, in order, the 3553(a) factors, Id. supra, so as
to assist this court in it's review within the Compassionate Release decision-
making process.

## §3553(a)(1) - Nature and Circumstances of the Offense

Mr. Shnewer's crimes were set forth earlier in his motion. This crime committed
17 years ago was serious, however, Shnewer has taken full accountability for these
actions, nor has he tried to minimize his role or actions. This crime was the act
of a youth of 20 years of age who was impulsive, and shows the immaturity of Shnewer
at that time in his life.

However, 17 plus years later, "evidence of postsentencing rehabilitation may
plainly be relevant to the history and characteristics of the defendant." Pepper v.
United States, 562 U.S. 476, 491, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011) citing 18
USC §3553(a)(1). "[S]everal courts have... considered a defendant's rehabilitation
in granting compassionate release."

## §3553(a)(1) - The Defendant's History and Characteristics

Shnewer has no prior criminal history. He is not violent, nor was anyone injured
in his offenses. His disciplinary history shows he shoved an inmate, a minor infrac-
tion, nor has Shnewer lost any statutory goodtime through disciplinary.

Defendant's current characteristics, and history show unto this Court Shnewer does not pose a danger to the community, nor anyone else. Shnewer has taken rehabilitative steps to better himself while in prison, and is committed to his rehabilitation and readiness to reenter society.

Although Shnewer has had no reason to believe that he would be release from prison during his lifetime, he has continued to develop skills that he may utilize in becoming a productive member of society. As reflected by his transcripts, Shnewer has completed over 1,200 hours of education in the LCP, and other topics, including job readiness, personal wellness, spiritual growth, and cognitive-behavioral programs.

Rather than dwelling on his life sentence, Shnewer has continually worked to better himself while in prison, and since outgrown his "impulsive behaviors" as a 22 year old that led to his crimes. This Court as in United States v. Ezell, 518 F.Supp.3d 851 (EPA, 02/11/2021),(should recognize that young offenders who dedicate themselves to self-improvement while in prison have the potential to become fully rehabilitated upon release, significantly diminishing the likelihood of recidivating). Shnewer has aged-out of violent crime. Shnewer, through his rehabilitation, understands the serious nature of his crimes, remorse for his actions, and a commitment to doing better.   .

Shnewer has understood his impact on society and potential victims, but has matured since his early 20's, and thinks in a completely different mindset, since he's come to prison. He expresses his remorse through his rehabilitation and actions.

In doing so, the Defendant prays that the objectives, as outlined in sentencing, as §3553(a) and 18 U.S.C. §3142(g) contend, have been accomplished almost 20 years later, (17 calendar years, 32 months of goodtime if eligible).

As in U.S. v. Clausen, No. CR-00-291-2, 2020 U.S. Dist. LEXIS 13170 (E.D.PA., 7-24-2020), and Ezell, supra, Id @ 861, at 8 (collecting cases)("Courts have no

obligation to reduce the sentence in a way that provides immediate release from prison"), thus, Shnewer would request a reduction in his sentence to 300 months (25 years), so as to further assist Shnewer and his family in planning for the defendant's ultimate release.

Defendant argues that a reduction in sentence to 300 months is appropriate on the grounds of his time already spent in prison, and time left to serve, to allow additional goals in education and rehabilitation to be accomplished.

## Need to Promote Respect for the Law, §3553(a)-(2)(A):

The public expects, and Congress delivered significant statutory sentences, and enhancements (§3A1.4 ) for Defendant's violating 18 USC§1117. Shnewer's jury, and this Court at sentencing delivered exactly that, by sentencing Shnewer, at the age of 24 to Life w/o the possibility of parole, a de facto death sentence, for a young man who was in his early 20's when the offenses started.

The Defendant argues 17 years later (almost 20 with good time), if granted his Compassionate Release, it would not undermine the goals of sentencing, if the LIFE sentence was reduced to 25 years, considering the seriousness of the offense, the desire to promote respect for the law, and send a message of deterrence to others.

## Need to Deter Criminal Conduct by Defendant and Others, §3553(a)-(2)(B):

The almost 20 years (with good time) he's served, Shnewer would hope this deters others who might contemplate to commit similar crimes. In US v. Edwards, 2019 U.S. Dist. LEXIS 146571 (N.D. ILL. 08/08/2019) the Honorable Harry D. Leinenweber stated "Edwards has been incarcerated over 20 years. That time served is sufficient for purposes of both general and specific deterrence. This Court has repeatedly empha- sized that if someone is not chastened by the prospect of several decades in prison, then it is unlikely that he will be deterred by any additional time." @*9; see also

USA v. Hughes, No. 97 CR 670 (citing U.S. Department of Justice, Five Things About Deterrence. See also Valerie Wright, Ph.D., Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment, THE SENTENCING PROJECT 7 (2010)(presenting findings from a study of nationally representative sample of prisoners demonstrating "an increased likelihood that lower-risk offenders will be more negatively affected by incarceration," and that "reduced sentences may reduce recidivism rates").

### Public Protection from Defendant, §3553(a)-(2)(C):

Shnewer's crimes were committed in his early 20's and were serious, however, there was no violence, nor were there any injuries. After this Court's review of the §3553 factors, the current characteristics and history, no violence committed while imprisoned, the court should find that there is no-risk of Shnewer engaging in further criminal conduct, nor a threat to anyone in society upon his release.

### To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner, §3553(a)-(2)(D)

The U.S. Sentencing Commission Chairman - U.S. District Judge Carlton Reeves, stated at the outset of the (June 2023) U.S.S.G hearing, "Many of the witnesses speaking today will talk about the cost of any decision we make. Let me reassure you: we take pains to consider all these costs. We consider the time judges and their staffs will have to expend dealing with filings for reduced sentences. We consider the additional resources expended on reentry and supervision. But we also consider the financial cost of continuing to incarcerate someone, which stands at roughly $44,000 per person per year with the BOP which is more than the annual cost of supervision, and which increases year after year. And we consider a cost that has little to do with docket sizes or dollars and cents: the moral price of incarcerating someone for longer than necessary.

31

As my former colleague Judge George Hazel so aptly put it, "Liberty is the norm; every moment of incarceration should be justified." Emphasis added.

Shnewer, has greatly advanced who he once was at 22 years old, to now at 38. His spiritual, educational and rehabilitation efforts should be rewarded and justified by a "reduction in his sentence". The cost, nor justification for continuing to incarcerate Shnewer, no longer can be necessary, as his extraordinary and compelling reasons show.

## Kinds of Sentences Available, §3553(a)-(3):

This sentence was not a concern for the Court post 9-11, and America's War on Terror Campaign. However, almost two (2) decades later, with Compassionate Release available to the Court, post Allenye, supra caselaw well developed, and other options available to the Court, see Alternative Release Plan, Exhibit _N_ . This Court can reduce his sentence, allow him to live with family-on Supervised Release, or just deport him, if the Court desires, but there's alternatives.

## The Range Recommended by the Sentencing Guidelines, §3553(a)(4)(A):

This Court pursuant to §3582(c)(1)(A), and Allenye, supra, can reduce Shnewer's sentence to 25 years, a sentence that will keep him in prison for 5 more years, and continue his rehabilitation plans.

## Any Pertinent Policy Statement Guidelines, §3553(a)(5):

The United States Sentencing Commission has expanded Compassionate Release reasonings by passing the new §1B1.13 guidelines, supra, plus, contemplated Amendments in May 2024, (ex. Youth...), made law-effective Nov. 1, 2024. Shnewer has argued herein multiple guidelines that are applicable to his instant case for this Court's review.

<u>The Need to Avoid Unwarranted Sentence Disparities Among</u>
<u>Defendant's With Similar Records Who Have Been Found</u>
<u>Guilty of Similar Conduct, §3553(a)(6):</u>

A disparity in sentencing in the instant case was that one (1) of Shnewer's codefendants (Tatar), received a significantly lower sentence than Shnewer's LIFE sentence to Tatar's (396 months) or 33 years. When in reality the "actions" of each person were the same, but, Tatar's words, invoking Jihad only once, as opposed to numerous times by the other three co-defendants. See Sentencing Transcripts of Tatar.

Next, Shnewer refers this Honorable Court to the instant charges, facts, events, and sentences of the following cases:

(1) U.S. v. Cromitie, No. 09-CR-558-01-(CM)(2nd Cir.);

(2) U.S. v. Kabir, No. ED-CR-12-00092-(B)-VAP, 51 F.4th 820 (9th Cir. 2022);

(3) U.S. v. Haseon, (Sheri's co-defendant), see infra 742 F.3d 104 (11th Cir. 2014), 2014 U.S. App. LEXIS 2104;

(4) U.S. v. Tatar, 671 F.3d 329, 2011 U.S. App. LEXIS 25868 (N.J. 2011)(3d Cir.);

(5) U.S. v. Amawi, El-Hindi, and Mazloum, 695 F.3d 457 (6th Cir. 2012);

(6) U.S. v. Alhaggagi, 372 F.Supp.3d 1005 (2019)

See Exhibits  O  and  P , Comparative Analysis of similar 18 USC §1117 convictions with Terrorism Enhancents, and Graph of Similar Cases.

What is most notable for disparity purposes, is that of all the aforementioned cases, only Shnewer and (2) two of his co-defendants received LIFE sentences, the rest-sentences of 300-540 months.

The "Terrorism Enhancement" ("TE"), which drive most of the above sentences, were not backed by any empirical evidence. See U.S. v. Jumaev, No. 12-cr-00033-JLK, 2018 U.S. Dist. LEXIS 11916, 2018 WL 3490886, @*10, Id. @ 15 (D.Colo. July 18, 2018)

(citing U.S. v. Salim, 690 F.3d 115, 126 (2d Cir. 2012)). The "TE" is perceived as draconian, an over-representation of a defendant's criminal history, nor a "true reflection" or fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time..." Rita v. U.S., 127 S.Ct. 2456, 338 U.S. 350, 168 L.Ed. 2d 2003 (2007). The "TE" takes a wrecking ball to this carefully crafted artifice. It is fundamentally at odds with the design of the Guidelines. See U.S. v. Mehanna, No. 09-1017-AO (D.Mass.2012).

There is some evidence that first time terrorism offenders are no more likely to reoffend than individuals who commit other crimes. The very limited data suggests that defendants convicted of terrorism offenses do not recidivate at higher rates than those convicted of other crimes." Sameer Ahmed, Is History Repeating Itself? Sentencing Young American Muslims in the war on terror, 126 Yale L.J. 1520, 1550 2017 ("the legitimacy of the guidelines is derived from the belief that they are based on reliable data and principles."). Ahmed writes that "(o)f" the more than 300 prisoners who have completed their terrorism sentences since 2001, "there were only" a handful of cases in which released inmates had been rearrested, a note of relapse far below that of most federal inmates:, id, (quoting Scott Shane, Beyond Guantanamo, a Web of Prisons for Terrorism Inmates. N.Y. Times; Dec. 10, 2011.

For the above arguments, Shnewer requests a reduction in his sentence that is in line with the defendants who received sentences of 300 months, not the disparate sentence he received of LIFE without the possibility of parole for a man who committed his offenses at 22 years old.

## The Need to Provide Restitution to Any Victims, §3553(a)(7)

Shnewer, as reflected in Exhibit  Q  , is current in his BOP-Financial Responsibility Program, nor has he ever been in refusal status. Therefore, this also shows

his character, and responsibility.

Finally, Shnewer submits the following U.S. Sentencing Commission's latest Compassionate Release Data Report for Fiscal Years 2020-2022, and Fiscal year 2023 2nd Quarter, respectively.

What is germane from these reports to the instant case are the following in relation to Shnewer's Motion:

I. (A) Original Sentence Length For Offenders
   Receiving Compassionate Releast - Figure 2
   (Offenders with 20 years or more are
   the highest category to receive release
   at 29.2%
   [Shnewer has a LIFE sentence] See Exhibit ___R___ .

Reasons Given by Sentencing Courts for Granted Motions - Table 10 FY 2020

(B) #5

| | No. Granted | Percentage Granted |
|---|---|---|
| Rehabilitation | 52 | 2.4% |

(C) Table 12 Fiscal Year 2021- Reasons...

| | | |
|---|---|---|
| #5 Rehabilitation | 115 | 4.7% |

(D) Table 14 Fiscal Year 2022- Reasons...

| | | |
|---|---|---|
| #4 Rehabilitation | 82 | 9.17% |

(E) Table 10 Fiscal Year 2023 - 2nd Quarter

| | | |
|---|---|---|
| #1 Rehabilitation | 50 | 14.0% |

Shnewer has served more than 19 plus years with good time credits. The time served Shnewer contends, that this time served reflects the seriousness of his offenses, promotes respect for the law, provides just punishment, and is a sufficient deterrent. Shnewer has expressed remorse for his crimes.

Upon review by this Court, Shnewer no longer poses a danger to the safety of the community due to his argued, and cited claims herein, and should favor his reduction in his sentence.

35

## X.

### Conclusion

WHEREFORE, PREMISES CONSIDERED, Mr. Shnewer prays that a reduction of his sentence to 240 months, with a term of supervised release - determined by the Court. These terms will deter similar conduct, would serve as a warning to others, and protect the public from any future crimes on his behalf. Equally, the Defendant asserts that this sentence would satisfy the retribution, deterrence, incapacitation, and rehabilitation requirements of §3553(a), Id.

It is for the totality of the enclosed referenced and argued extraordinary and compelling factors that this Honorable Court should GRANT said request for relief.

Respectfully Submitted

Mr. Mohamad I. Shnewer
Pro se

### XI.

### Certificate of Service

Defendant, placed the instant action for Compassionate Release and or a Reduction of Sentence in the prison mailbox at USP Terre Haute, postage prepaid, for mailing, on this 8th day of February 2024 to the below party:

Clerk, United States District Court
Camden Visinage
PO Box 2797
Camden, NJ 08101

Mohamad I. Shnewer
Pro se

36